## No. 23-10994

In the United States Court of Appeals

for the Fifth Circuit

_____

Spectrum WT; Barrett Bright; Lauren Stovall,

*Plaintiffs-Appellants,*

v.

Walter Wendler; Dr. Christopher Thomas; John Sharp;
Robert L. Albritton; James R. Brooks; Jay Graham; Tim
Leach; Bill Mahomes; Elaine Mendoza; Michael J.
Plank; Cliff Thomas; Demetrius L. Harrell, Jr.;
Michael A. Hernandez, III,

*Defendants-Appellees*

_____

On Appeal from the United States District Court for
the Northern District of Texas Case No. 2:23-cv-00048

_____

## BRIEF OF APPELLEES JOHN SHARP AND CHRISTOPHER THOMAS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney
General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Division Chief, General Litigation
Division

ALLISON M. COLLINS
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Allison.Collins@oag.texas.gov
*Counsel for Defendants- Appellees*

CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellants:**

Spectrum WT; Barrett Bright; Lauren Stovall

**Trial and Appellate Counsel for Plaintiffs-Appellants:**

JT Morris
Conor T. Fitzpatrick
Foundation for Individual Rights and Expression
700 Pennsylvania Ave., S.E., Ste. 340
Washington, D.C. 20003

Adam B. Steinbaugh
Jeffrey D. Zeman
Foundation for Individual Rights and Expression
510 Walnut St., Suite 1250
Philadelphia, PA 19106

**Defendants-Appellees:**

Dr. Christopher Thomas, John Sharp, Robert L. Albritton, James R. Brooks, Jay Graham, Tim Leach, Bill Mahomes, Elaine Mendoza, Michael J. Plank, Cliff Thomas, Demetrius L. Harrell, Jr., Michael A. Hernandez III, and Walter Wendler.

**Trial and Appellate Counsel for Defendants-Appellees:**

Allison M. Collins, Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548


**Trial and Appellate Counsel for Defendant-Appellee Walter Wendler:**

Joseph N. Mazzara
Charles Kenneth Eldred
Office of the Attorney General of Texas
P.O. Box 12548
Capitol Station
Austin, TX 78711

**<u>Other interested parties:</u>**

West Texas A&M University
Texas A&M University System

## TABLE OF CONTENTS

Certificate of Interested Persons ........................................................... 2

Table of Contents ............................................................................... 4

Index of Authorities .......................................................................... 6

Statement Regarding Oral Argument ................................................... 10

Issues presented ............................................................................... 11

Statement of the Case ....................................................................... 12

    I.  Facts Pertaining to Chancellor Sharp and Dr. Thomas. ............................ 12

       A.  Chancellor John Sharp. .............................................................. 12

       B.  Dr. Christopher Thomas. ........................................................... 13

    II.  Procedural History and the District Court's Ruling. .................................. 15

Summary of the Argument .................................................................. 18

Standard of Review ........................................................................... 21

Argument ......................................................................................... 22

    I.  Plaintiffs Fail to Adequately Brief Their Claims against Chancellor Sharp and Dr. Thomas. ................................................................................. 22

    II.  The District Court's Denial of Plaintiffs Requested Preliminary Injunction Was Not an Abuse of Discretion. ..................................................... 24

       A.  Plaintiffs are unlikely to succeed on the merits of their claims against Chancellor Sharp and Dr. Thomas. ................................................ 26

          1.  Plaintiffs' Section 1983 claims are improperly based on vicarious liability. ................................................................................ 26

          2.  Plaintiffs lack standing. .............................................................. 28

             a.  Injury-in-Fact ..................................................................... 29

             b.  Traceability ........................................................................ 34

             c.  Redressability ...................................................................... 37

          3.  Chancellor Sharp and Dr. Thomas are likely entitled to sovereign immunity. ............................................................................. 40

III. Plaintiffs Have Not Shown Imminent Irreparable Harm if Chancellor Sharp and Dr. Thomas Are Not Enjoined, and the Balance of the Equities Supports the District Court's Decision. ...................................................................... 43

Prayer .......................................................................................................... 46

Certificate of Compliance ....................................................................... 47

Certificate of Service ................................................................................ 48

## INDEX OF AUTHORITIES

### Cases

*Air Evac EMS Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*,
    851 F.3d 507 (5th Cir. 2017) ...................................................................41

*Allen v. Wright*,
    468 U.S. 737 (1984) .............................................................................37

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................27

*Atchafalaya Basinkeeper v. U.S. Army Corps of Eng'rs*,
    894 F.3d 692 (5th Cir. 2018) ...................................................................21

*Bennett v. Spear*,
    520 U.S. 154 (1997) .............................................................................34

*Bluefield Water Ass'n, Inc. v. City of Starkville*,
    577 F.3d 250 (5th Cir. 2009) ...................................................................25

*California v. Texas,*
    141 S. Ct. 2104 (2021) .................................................................... 34, 37

*Chacon v. Granata,*
    515 F.2d 922 (5th Cir. 1975) .................................................................. 44

*City of Austin v. Paxton,*
    943 F.3d 993 (5th Cir. 2019) ...................................................................41

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013).................................................................. 28, 32, 33, 34

*Coleman v. Houston Indep. Sch. Dist.,*
    113 F.3d 528 (5th Cir. 1997) ...................................................................27

*Collins v. Yellen,*
    141 S. Ct. 1761 (2021) ...........................................................................37

*Crawford v. Hinds Cnty. Bd. of Supervisors*,
    1 F.4th 371 (5th Cir. 2021) ......................................................................32

*Danos v. Jones,*
    652 F.3d 577 (5th Cir. 2011) .................................................................. 42

*Daves v. Dallas Cnty., Tex.,*
    22 F.4th 522 (5th Cir. 2022) ....................................................................34

*Doe v. Taylor Indep. Sch. Dist.,*
    15 F.3d 443 (5th Cir. 1994) ....................................................................27

*E.T. v. Paxton,*
    19 F.4th 760 (5th Cir. 2021) ....................................................................37

*Edelman v. Jordan*,
    415 U.S. 651 (1974) .................................................................... 40

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
    762 F.2d 464 (5th Cir. 1985) ..................................................... 22

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................... 29

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ................................................................38

*Hawaii v. Gordon*,
    373 U.S. 57 (1963) ...................................................................... 42

*Hoover v. Morales*,
    164 F.3d 221 (5th Cir. 1998) ......................................................21

*John Doe #1 v. Veneman*,
    380 F.3d 807 (5th Cir. 2004) ......................................................38

*Jordan v. Fisher*,
    823 F.3d 805 (5th Cir. 2016) ......................................................25

*K.P. v. LeBlanc*,
    729 F.3d 427 (5th Cir. 2013) ..................................................... 40

*L&A Contracting Co. v. S. Concrete Servs.*,
    17 F.3d 106 (5th Cir. 1994) ....................................................... 22

*Larson v. Domestic & Foreign Com. Corp.*,
    337 U.S. 682 (1949) .................................................................... 42

*Liverpool, N.Y. & Phil. S.S. Co. v. Comm'rs of Emigration*,
    113 U.S. 33 (1885) ......................................................................32

*Lujan v. Def's of Wildlife*,
    504 U.S. 555 (1992) .................................................................... 28

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ....................................................................43

*Missouri v. Biden*,
    83 F.4th 350 (5th Cir. 2023) ...............................................25, 44

*Morris v. Livingston*,
    739 F.3d 740 (5th Cir. 2014) ..................................................... 41

*Munaf v. Geren*,
    553 U.S. 674 (2008) .................................................................... 24

*Murthy v. Missouri*,
    No. 23-411, 2023 WL 6935337 (U.S. Oct. 20, 2023) ................25

*NiGen Biotech, L.L.C. v. Paxton,*
  804 F.3d 389 (5th Cir. 2015) ......................................................41

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984) .................................................................... 40

*Pierce v. Tex. Dep't of Crim. Just.,*
  37 F. 3d 1146 (5th Cir. 1994) .....................................................27

*Procter & Gamble Co. v. Amway Corp.,*
  376 F.3d 496 (5th Cir. 2004) ..................................................... 22

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
  113 S. Ct. 684 (1993) ..................................................................41

*Richardson v. Tex. Sec'y of State,*
  978 F.3d 220 (5th Cir. 2020) ..................................................... 42

*Scott v. Schedler,*
  826 F.3d 207 (5th Cir. 2016) .....................................................38

*Speech First, Inc. v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) ............................................... 28, 29

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ................................................................... 28

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ......................................................................38

*Stringer v. Whitley,*
  942 F.3d 715 (5th Cir. 2019) .....................................................37

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ................................................................... 29

*Tex. All. for Retired Ams. v. Scott,*
  28 F.4th 669 (5th Cir. 2022) ......................................................37

*Texas v. United States,*
  523 U.S. 296 (1998) ................................................................... 44

*Thomas v. Union Carbide Ag. Prods. Co.,*
  473 U.S. 568 (1985) ................................................................... 44

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) ................................................................31

*U.S. v. Thames,*
  214 F.3d 608 (5th Cir. 2000) ..................................................... 22

*United States v. Beaumont,*
  972 F.2d 553 (5th Cir. 1992) ..................................................... 22

*United States v. Martinez,*
    263 F.3d 436 (5th Cir. 2001) ................................................................. 22

*United States v. Students Challenging Regul. Agency Procs.* (SCRAP),
    412 U.S. 669 (1973) ..............................................................................32

*United States v. Torres–Aguilar,*
    352 F.3d 934 (5th Cir. 2003) ................................................................. 22

*Univ. of Tex. v. Camenisch,*
    451 U.S. 390 (1981) ..............................................................................25

*Warth v. Seldin,*
    422 U.S. 490 (1975)............................................................................... 44

*White v. Carlucci,*
    862 F.2d 1209 (5th Cir. 1989) ...............................................................21

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) ................................................................................ 40

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) .............................................................................25, 43

*Women's Med. Ctr. of NW Houston v. Bell,*
    248 F.3d 411 (5th Cir. 2001) .................................................................21

*Zapata v. Smith,*
    437 F.2d 1024 (5th Cir. 1971) ............................................................... 42

## Other Authorities

https://www.tamus.edu/legal/policy/policy-and-regulation-library/ ...........................35

instagram.com/wtamuspectrum/ ...............................................................................15

## Rules

Fed R. App. P. 28(a)(9)(A) ...................................................................................... 22

## STATEMENT REGARDING ORAL ARGUMENT

Chancellor Sharp and Dr. Thomas do not believe oral argument would be beneficial because the district court did not abuse its discretion in denying preliminary injunctive relief against them. The merits of Plaintiffs' First Amendment claims against Chancellor Sharp and Dr. Thomas are not discussed on appeal and are dubious at best. Plaintiffs do not raise novel issues of law or errors in the trial court's decision to deny relief as to Chancellor Sharp and Dr. Thomas, instead focusing exclusively on the preliminary injunction requirements as each pertains to another Defendant. However, if the Court determines that oral argument is warranted, these Defendants respectfully request an opportunity to participate.

## ISSUES PRESENTED

1.   Plaintiffs did not adequately brief their alleged entitlement to preliminary injunctive relief against Chancellor Sharp and Dr. Thomas. Have Plaintiffs waived consideration of these arguments on appeal?

2.   The district court found that Plaintiffs were unlikely to succeed on the merits of their claims against Chancellor Sharp and Dr. Thomas and had not shown imminent, irreparable harm absent a preliminary injunction. Did the district court act within its discretion in denying Plaintiffs' amended motion for preliminary injunction against these Defendants?

STATEMENT OF THE CASE

**I.  Facts Pertaining to Chancellor Sharp and Dr. Thomas.**

    **A. Chancellor John Sharp.**

John Sharp is the Chancellor for the Texas A&M University System. ROA.218. Plaintiffs assert that Chancellor Sharp violated their First Amendment rights because he did not somehow stop or intervene when President Wendler cancelled their 2023 drag show. ROA.215, 218. Plaintiffs speculate that this shows Chancellor Sharp's intent to let Wendler's viewpoint discrimination (ROA.243), and Wendler's allegedly unconstitutional prohibition against drag shows on campus (ROA.248) continue.

But Chancellor Sharp was not involved in Wendler's decision because his responsibilities do not include the day-to-day operations of each component university and agency of the A&M System. ROA.546. The Texas A&M System is one of the largest higher education systems in the nation, consisting of 11 universities, a health science center, eight state agencies, and the RELLIS Campus. ROA.545. Each is a stand-alone legal entity with its own duly appointed president and leadership team. ROA.546.  Chancellor Sharp does not have direct oversight or

involvement in the day-to-day operations or decisions of any component university. ROA.547. That is left to each component university's president. ROA. 546. Chancellor Sharp also does not have a general "veto power" over the daily decisions of any university president, such as President Wendler. ROA.547.

The A&M System Chancellor is instead responsible for general management of the A&M System and its Central Administration Office, which in turn is tasked with system-wide planning, coordination, and execution of Board of Regents' policies. ROA.545. Chancellor Sharp is also tasked with representing the A&M System in all areas of public affairs, including before the state Legislature. ROA.546. He advises the Board of Regents on the overall goals, basic policies, and operating budgets for the A&M System. ROA. 546. And Chancellor Sharp cannot take actions against a university president without approval of the Board of Regents, which can only act through a majority vote in an open meeting after appropriate notice of the meeting has been provided. ROA.547.

**B. Dr. Christopher Thomas.**

Dr. Thomas is the Vice President for Student Affairs at West Texas A&M University and reports directly to President Wendler. ROA.217, 539. He took over this role in December 2022. ROA.539. On March 20, 2023, Wendler informed Dr.

Thomas and the other WT vice presidents that Wendler was cancelling Spectrum WT's drag show because Wendler believed the event would discriminate against women. ROA.540. Dr. Thomas was tasked with informing Spectrum WT of the event cancellation shortly before Wendler publicly announced it. ROA.233, 540. Dr. Thomas informed Spectrum WT that it was not Dr. Thomas's decision to cancel the event and that the decision was made solely by Wendler. ROA.233, 540. Dr. Thomas, as a direct report to Wendler, did not have authority to overrule Wendler's decision. ROA.540.

Plaintiffs assert that Dr. Thomas has violated their constitutional rights for "implementing President Wendler's directive canceling Plaintiffs' event and on-campus drag shows generally." ROA.218. This includes that Dr. Thomas somehow personally engaged in unconstitutional viewpoint discrimination by telling Spectrum WT of President Wendler's decision (ROA. 243) and that he may continue to enforce "President Wendler's content- and viewpoint-based prohibition" on drag shows going forward. ROA.248. Yet Spectrum WT events at WT facilities have gone forward without issue since the cancelled drag show, including drag show practice, protests, and numerous other events. ROA.541.

## II.    Procedural History and the District Court's Ruling.

Plaintiffs originally filed this lawsuit before the canceled drag show was scheduled to take place, but then decided against seeking immediate injunctive relief. ROA.851. Plaintiffs filed an Amended Complaint asserting three First Amendment claims for declaratory and injunctive relief against Chancellor Sharp, Dr. Thomas, and President Wendler:[1] viewpoint discrimination, exclusion from a public forum, and prior restraint. ROA.240-253. There are no specific allegations against Chancellor Sharp or Dr. Thomas in Plaintiffs' prior restraint claim. ROA.250-53.

Plaintiffs' amended motion for a preliminary injunction soon followed, based on fear that their future events were allegedly "in imminent peril due to President Wendler's edict." ROA.851. This included several events that have already taken place at WT without issue, including Queer History Night.[2] Plaintiffs sought to preliminarily enjoin Defendants from "enforcing President Wendler's ban on drag

---

[1] These claims were also asserted against each Regent on the A&M System's Board of Regents, but those claims were dismissed by the district court. That dismissal is not being challenged by Plaintiffs on appeal.

[2] instagram.com/wtamuspectrum/

shows in campus facilities." ROA.281-282, 287. Chancellor Sharp and Dr. Thomas opposed Plaintiffs' preliminary injunction motion by filing a motion to dismiss. ROA.518-549, 837-844. These Defendants argued that Plaintiffs were unlikely to succeed on the merits of their claims against them because the district court lacked jurisdiction for three reasons: the claims were not ripe, Plaintiffs lacked standing to sue Chancellor Sharp and Dr. Thomas, and Plaintiffs' claims against them were otherwise barred by sovereign immunity. ROA.518-549, 837-844.

The district court denied Plaintiffs' amended motion for preliminary injunction because they did not demonstrate a substantial likelihood of success on the merits of their claims, and it was "doubtful that Plaintiffs will suffer irreparable harm in the coming months while this issue is litigated." ROA.873. The district court did not analyze Plaintiffs claims against Chancellor Sharp or Dr. Thomas specifically. But the district court also denied Chancellor Sharp and Dr. Thomas's motion to dismiss.[3] ROA.872. The court acknowledged that Plaintiffs' evidence of

---

[3] The Motion was granted in part and denied in part to reflect dismissal of the Texas A&M University System Board of Regents.

harm could very well only be Wendler's email cancelling the drag show, since all of Plaintiffs' other requests to utilize campus facilities since the cancelled event have been approved. ROA.869. But viewing the facts in the light most favorable to Plaintiffs, Wendler's email stated that he would not permit the university to host drag shows moving forward, which was potential evidence of an ongoing violation. *Id.*

The district court found standing against Dr. Thomas because he informed Spectrum WT that the drag show had been cancelled shortly before Wendler made the public announcement, reasoning that Dr. Thomas was likely to enforce any future directives issued by Wendler. ROA.869. As to Chancellor Sharp, the district court found that Wendler is "subject to, and under the authority of" Chancellor Sharp, Tex. A&M Univ. Sys., Sys. Pol'y, 02.05 and that Chancellor Sharp is responsible for supervising the implementation of basic policies and making recommendations to the Board of Regents. Tex. A&M Univ. Sys., Sys. Pol'y, 02.02, ROA.871. Plaintiffs asserted during briefing that Sharp had a "history of involving himself in university free speech matters," citing one instance in 2017 when Sharp responded to the Texas Legislature's demands related to a planned White Lives Matter rally. ROA.871. But since Chancellor Sharp did not intervene here, the

district court found that both Defendants had "some connection" to President Wendler's edict. ROA.872. There was no conclusive evidence showing that Plaintiffs could not prove some set of facts to support their claims against Chancellor Sharp and Dr. Thomas at this early stage of the litigation. ROA.872. The district court denied Chancellor Sharp and Dr. Thomas's assertion of sovereign immunity for the same reasons. ROA. 872 n. 31.

## SUMMARY OF THE ARGUMENT

Plaintiffs sought preliminary injunctions against West Texas A&M University's President Walter Wendler, Vice President for Student Affairs Christopher Thomas, and the Chancellor of the Texas A&M University System John Sharp based on Wendler's March 2023 cancellation of Spectrum WT's drag show and an email Wendler wrote explaining his decision. But Plaintiffs opening brief barely mentions Chancellor Sharp or Dr. Thomas. It instead focuses on Plaintiffs' request for a preliminary injunction against Wendler. Plaintiffs do not explain why they are likely to succeed on the merits of their Section 1983 First Amendment claims against Chancellor Sharp and Dr. Thomas or elucidate how they carried the burden of persuasion on the remaining preliminary injunction requirements for relief against these Defendants. Plaintiffs' failure to adequately

18

brief their requested preliminary injunction against Chancellor Sharp and Dr. Thomas and how the district court erred as it pertains to these Defendants waives these arguments for purposes of this appeal. The district court's decision should be affirmed.

Even if Plaintiffs have not waived their claim of district court error, that court correctly found that Plaintiffs were not entitled to a preliminary injunction against these Defendants. Plaintiffs cannot rely upon their purported likelihood of success on the merits of claims against Wendler to support preliminary injunctions against Chancellor Sharp and Dr. Thomas. And Plaintiffs have not demonstrated a likelihood of success on the merits against Chancellor Sharp or Dr. Thomas for at least three reasons. First, Plaintiffs' claims against these Defendants are improperly based on vicarious liability and are therefore unlikely to succeed. Plaintiffs have not identified how each of these individuals, through his or her own actions, is violating Plaintiffs' First Amendment rights.

Next, the district court held it was plausible that Plaintiffs may be able to prove some set of facts demonstrating standing against these Defendants, but they are unlikely to do so as the case proceeds. Plaintiffs have not demonstrated an injury-in-fact fairly traceable to Chancellor Sharp or Dr. Thomas that will likely be redressed

by an injunction against either of them. The crux of Plaintiff's claims is Wendler's 2023 drag show cancellation and corresponding public statement, which neither Chancellor Sharp nor Dr. Thomas played any role in or had authority to override. Neither has threatened to enforce Wendler's statement going forward. And enjoining either of these Defendants will not redress Plaintiffs' alleged harm but will only be redundant: an injunction against Wendler is the most direct and logical way to stop Wendler from enforcing his public statement in the future.

Finally, Plaintiffs claims are unlikely to succeed against Chancellor Sharp and Dr. Thomas because they are barred by sovereign immunity for the same reasons that Plaintiffs' lack standing against them. Plaintiffs also seek inappropriate affirmative relief against these Defendants that does not fall within the *Ex parte Young* exception to sovereign immunity.

Turning to the remaining preliminary injunction requirements, the district court appropriately found that Plaintiffs had not demonstrated imminent, irreparable harm. Plaintiffs' alleged harm in the form of future cancelled events is entirely speculative, particularly as it pertains to these Defendants. Plaintiffs planned events this school year have gone forward as planned, and Plaintiffs' alleged harms as it pertains to these Defendants is contingent on hypothetical future actions by an

independent third party, Wendler. These events may not transpire as anticipated, and fear of future harm is insufficient to show imminent injury. On balance, the district court did not abuse its discretion in denying Plaintiffs requested preliminary injunction against Chancellor Sharp and Dr. Thomas.

### STANDARD OF REVIEW

A district court's grant of a preliminary injunction is reviewed for abuse of discretion. *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998). Findings of fact are reviewed only for clear error, and legal conclusions are subject to de novo review. *Women's Med. Ctr. of NW Houston v. Bell*, 248 F.3d 411, 418–19 (5th Cir. 2001) (footnotes omitted). Each of the four elements required to support a preliminary injunction presents a mixed question of fact and law. *Id.* Here, the district court's ultimate decision to deny Plaintiffs' preliminary injunction against Chancellor Sharp and Dr. Thomas should be reviewed for an abuse of discretion because the decision as to these two Defendants was not grounded in erroneous legal principles. *Id.*; *Atchafalaya Basinkeeper v. U.S. Army Corps of Eng'rs*, 894 F.3d 692, 696 (5th Cir. 2018). This court will reverse the denial of a preliminary injunction "only under extraordinary circumstances." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). It should not substitute its judgment for that of the district court, or "else that court's

announced discretion would be meaningless." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

ARGUMENT

### I. Plaintiffs Fail to Adequately Brief Their Claims against Chancellor Sharp and Dr. Thomas.

"Failure adequately to brief an issue on appeal constitutes waiver of that argument." *Procter & Gamble Co. v. Amway Corp.,* 376 F.3d 496, 499 n.1 (5th Cir. 2004). Appellants' brief must contain their "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed R. App. P. 28(a)(9)(A); *United States v. Martinez,* 263 F.3d 436 (5th Cir. 2001) (noting the rule); *U.S. v. Thames,* 214 F.3d 608, 611 n. 3 (5th Cir. 2000) (waiver for failure to include argument in statement of issue or body of brief); *L&A Contracting Co. v. S. Concrete Servs.,* 17 F.3d 106 (5th Cir. 1994) (waiver for failure to cite authority); *United States v. Beaumont,* 972 F.2d 553, 563 (5th Cir. 1992) (failure to argue issue adequately); *United States v. Torres–Aguilar,* 352 F.3d 934, 936 n. 2 (5th Cir. 2003) (argument deemed abandoned by appellant "only briefly mentioning it in a footnote of his opening brief without providing any legal citation or analysis").

Here, Plaintiffs' brief on appeal focuses solely on their claims against President Wendler. Nowhere do Plaintiffs discuss the merits of—let alone the likelihood of success of—their First Amendment claims specifically against Chancellor Sharp and Dr. Thomas. Neither Chancellor Sharp nor Dr. Thomas cancelled Plaintiffs event. Neither Chancellor Sharp nor Dr. Thomas have said anything about drag shows, future events by Spectrum WT, or indicated that they will personally cancel future events or drag shows. Plaintiffs do not explain how either Chancellor Sharp or Dr. Thomas will imminently harm Plaintiffs, through his own actions, as required to succeed on a Section 1983 claim. And Plaintiffs do not explain why enjoining Chancellor Sharp or Dr. Thomas—as opposed to President Wendler—from "enforcing *President Wendler's ban* on drag shows in campus facilities" will remedy their claimed harm. ROA.281-282, 287 (emphasis added).

Plaintiffs' brief does not explain the actions by or conduct of Chancellor Sharp or Dr. Thomas that amount to an ongoing First Amendment violation that can be redressed through prospective, injunctive relief. Rather, Plaintiffs make only a literal handful of references to Chancellor Sharp or Dr. Thomas as an afterthought in their briefing, but do not provide contentions, legal citations, arguments, or analysis regarding the claims against these Defendants. Let alone address their standing to

bring claims for prospective relief against these Defendants, which necessarily implicates Plaintiffs' likelihood of success on these claims.

The district court found Plaintiffs' standing was not precluded, but as discussed below it is tenuous at best and supports the district court's decision to deny a preliminary injunction against Chancellor Sharp and Dr. Thomas. Plaintiffs dedicates a single, conclusory sentence to addressing their standing against Chancellor Sharp and Dr. Thomas. They provide no citations to authority, no facts, and no analysis of the issue. Plaintiffs' failure to adequately brief why the district court erred in denying a preliminary injunction against Chancellor Sharp and Dr. Thomas waives these arguments for purposes of the present appeal, and the district court's decision should therefore be affirmed.

## II. The District Court's Denial of Plaintiffs Requested Preliminary Injunction Was Not an Abuse of Discretion.

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs must "clearly carr[y] the burden of persuasion on all four requirements." *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016) (citation omitted); *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Plaintiffs must carry their burden of persuasion on all four requirements as to each defendant they seek to preliminarily enjoin. *Missouri v. Biden*, 83 F.4th 350, 360 (5th Cir. 2023), cert. granted sub nom. *Murthy v. Missouri*, No. 23-411, 2023 WL 6935337 (U.S. Oct. 20, 2023) (analyzing requested preliminary injunction against each official separately and only enjoining some officials). Here, even if Plaintiffs have not waived their arguments regarding preliminary injunctive relief against Chancellor Sharp and Dr. Thomas (which they have), Plaintiffs have failed to show that the district court abused its discretion in denying Plaintiffs requested preliminary injunctions against them.

**A. Plaintiffs are unlikely to succeed on the merits of their claims against Chancellor Sharp and Dr. Thomas.**

Plaintiffs are unlikely to succeed on the merits of their First Amendment claims against Chancellor Sharp and Dr. Thomas for at least three reasons. First, Plaintiffs claims will likely fail because they are based on vicarious liability rather than the individual actions of Chancellor Sharp or Dr. Thomas. Second, Plaintiffs lack standing to bring these First Amendment claims against the Defendants in the first place. Relatedly, Plaintiffs claims are likely barred by sovereign immunity because they do not seek proper prospective, injunctive relief against officials with an enforcement connection to the challenged activity. Plaintiffs requested relief would require improper affirmative action by Chancellor Sharp and Dr. Thomas that is impermissible under the *Ex parte Young* exception to sovereign immunity Plaintiffs' claims necessarily rely upon.

**1. Plaintiffs' Section 1983 claims are improperly based on vicarious liability.**

Section 1983 claims are defendant specific and cannot be based on vicarious liability. "Because vicarious liability is inapplicable to Bivens and § 1983 suits[,]" Plaintiffs "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556

26

U.S. 662, 676 (2009); *Pierce v. Tex. Dep't of Crim. Just.*, 37 F. 3d 1146, 1150 (5th Cir. 1994). A defendant's liability cannot be "predicated on the vicarious liability doctrine of respondeat superior." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). Supervisory officials, such as Chancellor Sharp, "may not be found vicariously liable for the actions of their subordinates under Section 1983." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994). Plaintiffs are attempting to hold Chancellor Sharp and Dr. Thomas liable for Wendler's cancellation decision and Wendler's email. They have not identified any action of Chancellor Sharp or Dr. Thomas independent of Wendler's decision that amounts to an ongoing First Amendment violation.

Plaintiffs do not allege any facts supporting that Chancellor Sharp or Dr. Thomas have individually engaged in viewpoint discrimination, took independent actions that amounted to prior restraints of Spectrum WT's speech, or have individually barred Plaintiffs from engaging in speech in an allegedly public forum. In fact, Plaintiffs do not mention Chancellor Sharp or Dr. Thomas at all within their prior restraint claim. ROA.250-53. Because Plaintiffs' claims against these Defendants are based on vicarious liability, they are unlikely to succeed and the district court's decision should be affirmed.

27

### 2. Plaintiffs lack standing.

A preliminary injunction, like final relief, cannot be requested by a plaintiff who lacks standing to sue. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020), as revised (Oct. 30, 2020). At earlier stages of litigation, the manner and degree of evidence required to show standing is less than at later stages. See *Lujan v. Def's of Wildlife*, 504 U.S. 555, 561 (1992). The district court appeared to acknowledge that whether Plaintiffs had established standing against Dr. Thomas and Chancellor Sharp at this stage was a close call. ROA.872. But it could not conclude that there was "no set of facts" under which Plaintiffs claims against these Defendants could proceed. ROA.872. The unlikelihood of Plaintiffs establishing an appropriate set of facts for purposes of standing as a threshold matter going forward supports the district court's decision denying Plaintiffs requested preliminary injunction.

To have standing, a plaintiff must (1) have suffered an injury-in-fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. Plaintiff must clearly allege facts demonstrating each element of Article III standing. *Spokeo, Inc. v. Robins*,

578 U.S. 330, 338 (2016); see also *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

Here, Plaintiffs have not cited a single case to this Court supporting standing against a Chancellor overseeing 11 universities based on the Chancellor apparently not stepping in to override a university President's decision about a single student event. Plaintiffs have also not provided this Court with any authority showing that they have standing to sue a subordinate employee whose only alleged action was informing Plaintiffs of the cancellation shortly before a public announcement was made. Plaintiffs are unlikely to establish standing to sue these Defendants at the summary judgment phase of litigation, and they have not otherwise shown how the actions of these Defendants amounted to a First Amendment violation.

### a. *Injury-in-Fact.*

Plaintiffs have failed to show a concrete and particularized injury-in-fact by Chancellor Sharp or Dr. Thomas. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). A plaintiff has suffered an injury in fact if he (1) has an "intention to engage in a course of conduct arguably affected with a constitutional interest," (2) his intended future conduct is "arguably ... proscribed by [the policy in question]," and (3) "the threat of future enforcement of the

[challenged policies] is substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014); *Fenves*, 979 F.3d at 330.

Importantly here, Plaintiffs proposed future events are not arguably proscribed by any A&M University System Policy or any formally adopted WT policy or rule. Plaintiffs admit as much in their Complaint, alleging instead that their drag show would be permissible under both A&M System and WT policies and rules. Appellant's Brief at 3, 7, 47-48. Plaintiffs solely allege that President Wendler's email cancelling the 2023 drag show could proscribe future events. But this is not a policy or action attributable to anyone other than President Wendler, and Plaintiffs have not made any allegations or produced any evidence to the contrary. Their alleged injury, if any, is specific to President Wendler and his email, not any policy or rule attributable to Chancellor Sharp or Dr. Thomas.

There is also no substantial threat of future enforcement by Chancellor Sharp or Dr. Thomas. Plaintiffs make no allegations or argument that Chancellor Sharp has done anything to enforce President Wendler's email in the past or has indicated that he will do so in the future. They have alleged no action by him—actual or threatened—whatsoever. While Dr. Thomas was the bearer of bad news in March 2023—so that Spectrum WT did not find out about the event cancellation via

President Wendler's public announcement—Plaintiffs do not allege that he has threatened to independently enforce Wendler's email. To the contrary, the evidence shows that Dr. Thomas knows of no reason why the events Plaintiffs have applied to host on campus would be denied outside of the regular and routine safety assessment conducted for all events. ROA.541.

The district court held that Plaintiffs had sufficiently alleged standing against Dr. Thomas at this stage because he informed Spectrum WT of President Wendler's decision and was likely to enforce any future directives issued by Wendler. ROA.869. But neither Plaintiffs nor the district court pointed to any legal authority finding standing to sue under similar circumstances. ROA. 869. There is no dispute that Dr. Thomas had no input into Wendler's cancellation decision and he had no authority to override the decision of his superior. ROA.233, 540. Dr. Thomas was simply the messenger. Surely if Wendler's executive assistant had delivered the news to Spectrum WT, Plaintiffs would not have standing to sue him or her for alleged ongoing First Amendment violations. Dr. Thomas's title should not be outcome determinative in the standing analysis, and Plaintiffs are not likely to succeed on the merits of their First Amendment claims against him.

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes," as federal courts "do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Put another way, "federal courts do not issue advisory opinions." *Id.* Federal courts' jurisdiction is limited to actual controversies; they do not "anticipate a question of constitutional law in advance of the necessity of deciding it." *Liverpool, N.Y. & Phil. S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885). "[P]leadings must be something more than an ingenious academic exercise in the conceivable." *United States v. Students Challenging Regul. Agency Procs.* (SCRAP), 412 U.S. 669, 688 (1973). Plaintiffs must do more than "imagine circumstances in which [they] could be affected" by an action in the future. *Id.* at 688–89. And because Plaintiffs are seeking prospective relief, their injury "must be certainly impending to constitute injury in fact"; "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (quotations omitted). Past wrongs can serve as evidence of "the likelihood of a future injury but do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 375 (5th Cir. 2021) (quotation omitted).

32

Plaintiffs identify no certainly impending injury or threat of injury. The district court dismissed Plaintiffs' claim against Wendler for cancelling the 2023 drag show, and their other three claims seek an impermissible advisory opinion regarding the legality of what Wendler may possibly do in the future. Plaintiffs have offered nothing more than speculative future injuries attributable to Wendler and his email. Plaintiffs point to no facts giving rise to a probable, imminent risk of harm posed by Chancellor Sharp or Dr. Thomas. Plaintiffs do not allege facts demonstrating that these Defendants, individually, will disallow Plaintiffs' future events. And Plaintiffs' "subjective fear[s]" do "not give rise to standing." *Clapper*, 568 U.S. at 418.

Plaintiffs' have not shown a chilling effect resulting from Wendler's email (let alone an action by these Defendants), either. The future events Plaintiffs mention in their Amended Complaint have all been pursued and have gone forward. ROA.541 at ¶ 11 (testifying that he is "not aware of any reason" that Plaintiffs' "upcoming events will not be permitted to be held on-campus"). Plaintiffs' speculation about whether any future event may be cancelled cannot support their standing—much less a preliminary injunction against Chancellor Sharp or Dr. Thomas. The district court's denial of Plaintiffs' preliminary injunction should be affirmed.

***b.   Traceability.***

Plaintiffs cannot impute any alleged injury posed by Wendler to Dr. Thomas or Chancellor Sharp, and they cannot otherwise trace any alleged injury to these two Defendants. The complained of injury must be traceable to the named Defendant because standing to sue one defendant does not, on its own, confer standing to sue a different defendant. *Daves v. Dallas Cnty., Tex.*, 22 F.4th 522, 542 (5th Cir. 2022).

Standing is "substantially more difficult to establish" when the defendant's challenged action depends upon the decision of a third party. *California v. Texas,* 141 S. Ct. 2104, 2117 (2021) (internal quotation marks and citation omitted). Traceability is not satisfied when the injury is the result of a third party's independent action that was not "produced by determinative or coercive effect" by the defendant. *Bennett v. Spear,* 520 U.S. 154, 168–69 (1997). The Supreme Court has consistently refused to "endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

Here, Plaintiffs alleged harm is not traceable to Chancellor Sharp or Dr. Thomas. Plaintiffs repeatedly describe their harm as traceable to "President Wendler's prohibition." There are no allegations or evidence demonstrating that Chancellor Sharp coerced Wendler into cancelling the drag show and issuing his

email. And the only "coercive effect" between Wendler and Dr. Thomas runs in the opposite direction: Wendler made the decision to cancel the show and had Dr. Thomas deliver the news to Spectrum WT.

While Plaintiffs do not flush out their arguments for standing against Chancellor Sharp, elsewhere in their brief they comment that he has "authority over President Wendler" pursuant to Texas A&M University System Policy 02.02. Appellant's Brief at 7. The district court concluded that standing was plausible based on this allegation. ROA.871. But traceability is not satisfied by Chancellor Sharp allegedly having authority over Wendler. Under those policies the Chancellor has certain responsibilities for managing the overarching A&M University System "under the direction of the Board of Regents[,]" and none of those responsibilities include micro-managing the daily decisions and activities at any component university. Tex. A&M Univ. Sys., Sys. Pol'y, 02.02, 02.05.[4] Rather, the A&M University System policies stress institutional independence of component

---

[4] All policies can be found at: https://www.tamus.edu/legal/policy/policy-and-regulation-library/

universities and each institution's right to manage its own affairs through its chosen administrators and employees. Tex. A&M Univ. Sys., Sys. Pol'y, 02.01.

Additionally, Plaintiffs elsewhere allude to Chancellor Sharp "often interven[ing] in free speech controversies within the A&M System" but refusing to do so here as a basis for maintaining claims against the Chancellor. Appellant's Brief at 7. "Often" is apparently one time, when the Texas Legislature demanded that Texas A&M University address a White Lives Matter rally planned on campus in the wake of the Charlottesville, Virginia tragedy. Appellant's Brief at 7. Yet the very policy Spectrum WT relies on as its sole basis for Sharp's "authority" over Wendler states that he is to represent the System before the Legislature. Tex. A&M Univ. Sys., Sys. Pol'y, 02.02. It says nothing about stepping in at an individual campus when a public interest group sounds an alarm over that campus's president deciding not to permit a particular student group reservation of a campus building.

Turning to Dr. Thomas, Plaintiffs cannot trace any future injury to Dr. Thomas informing them that the 2023 drag show had been cancelled. Dr. Thomas reports to the President, cannot overrule his decision, and played no part in President Wendler's decision or his email announcing that decision. ROA.540-41. He is not

aware of any reasons why Plaintiffs planned events for this school year will not go forward. ROA.541.

Plaintiffs have not argued or shown the likelihood of success on the merits of their claims given their tenuous standing to assert these claims against Chancellor Sharp and Dr. Thomas in the first place. Absent allegations that Chancellor Sharp or Dr. Thomas have threatened to cancel Plaintiffs' upcoming events or proactively enforce Wendler's email, any injury from Wendler's email is solely traceable to Wendler. Cf. *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (holding that plaintiffs' purported injuries must "be traced to 'allegedly unlawful conduct' of the defendant") (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

### c. *Redressability.*

Plaintiffs have standing to sue Chancellor Sharp and Dr. Thomas only if they can redress Plaintiff's alleged harm—that is, Plaintiffs' harm can be remediated by a judgment rendered against these Defendants. See *E.T. v. Paxton*, 19 F.4th 760, 766 (5th Cir. 2021); see also *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672–73 (5th Cir. 2022). "Remedies . . . operate with respect to specific parties" and the court enjoins the acts of the official, not the statute or policy at issue. *California*, 141 S. Ct. at 2115 (quotation omitted). "The redressability requirement limits the relief that a

plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries." *Stringer v. Whitley*, 942 F.3d 715, 720(5th Cir. 2019). "Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)).

Here, an injunction against Chancellor Sharp, Dr. Thomas, or both will not remedy Plaintiff's alleged harm because these Defendants do not pose a continuing injury or threatened future injury to Plaintiffs. Plaintiff's alleged harm is attributable to Wendler's decision and Wendler's email. Only an injunction against Wendler, if substantiated, can redress it. Injunctions against these Defendants would be superfluous and likely overbroad. An injunction "is overbroad if it is not 'narrowly tailored to remedy the specific action which gives rise to the order' as determined by the substantive law at issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (quoting *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)). That a "plaintiff's remedy must be tailored to redress the plaintiff's particular injury" recognizes a federal court's "constitutionally prescribed role ... to vindicate the

individual rights of the people appearing before it." *Gill v. Whitford*, 138 S. Ct. 1916, 1933–34 (2018).

Plaintiffs repeatedly identify the specific action giving rise to this lawsuit as solely attributable to Wendler. Dr. Thomas does not have authority to overrule the President's actions, so he cannot redress any injury Plaintiffs allege stemming from Wendler's statement. See ROA.540 at ¶ 2–5. The same is true of Chancellor Sharp who does not possess "general 'veto power' over the daily decisions of university presidents within the A&M System." ROA.547. (Declaration of W. Hamilton) at ¶ 8. The district court acknowledged as much, stating that it could very well be that Plaintiffs only evidence of harm was Wendler's email cancelling the drag show. ROA.869. An injunction encompassing these Defendants who played no role in Wendler's decision would therefore be overly broad.

Since the requested injunction against Chancellor Sharp and Dr. Thomas would not redress Plaintiffs alleged injuries, they are unlikely to succeed on the merits of their claims against these Defendants at the summary judgment phase for lack of standing. The district court's denial of Plaintiffs' requested preliminary injunction against them should be affirmed.

### 3. Chancellor Sharp and Dr. Thomas are likely entitled to sovereign immunity.

The district court denied Chancellor Sharp and Dr. Thomas's motion to dismiss based on sovereign immunity for the same reasons he found that Plaintiffs had met the low bar for demonstrating standing at this early stage of the proceeding. ROA.872. The district court merely found "it is plausible" that Plaintiffs may prove some set of facts showing Chancellor Sharp and Dr. Thomas have some connection sufficient to confer standing on Plaintiffs and overcome sovereign immunity—not that it was likely. ROA.872. Sovereign immunity, like standing, is a significant hurdle that Plaintiffs must overcome with evidence as this case continues to progress. These threshold jurisdictional issues make it unlikely that Plaintiffs will succeed on the merits of their claims against Chancellor Sharp or Dr. Thomas.

Absent a waiver, sovereign immunity bars suit against states in federal court regardless of the remedy sought. See, e.g., *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The applicable exception to sovereign

40

immunity here is the *Ex parte Young* doctrine, which applies to claims seeking "prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013).The state official sued "must have some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *City of Austin v. Paxton*, 943 F.3d 993, 997–98 (5th Cir. 2019) (cleaned up); see also *Air Evac EMS Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 517 (5th Cir. 2017); *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). This analysis has significant overlap with the redressability and traceability standing analyses. See *City of Austin*, 943 F.3d at 1003.

For the same reasons Plaintiffs lack standing against Chancellor Sharp and Dr. Thomas, their claims are likely barred by sovereign immunity, rendering Plaintiffs unlikely to succeed on the merits of their claims. Plaintiffs cannot obtain a judgment for any action or inaction of Chancellor Sharp or Dr. Thomas related to the March 2023 cancellation because such retrospective relief is barred by sovereign immunity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 113 S. Ct. 684, 688 (1993). Rather, "a complaint must allege that the defendant is violating federal

law, not simply that the defendant has done so." *NiGen Biotech, L.L.C. v. Paxton,* 804 F.3d 389, 394 (5th Cir. 2015).

Plaintiffs' opening brief does not explain how Chancellor Sharp or Dr. Thomas have personally engaged in ongoing viewpoint discrimination, prior restraint, or exclusion from a public forum in violation of the First Amendment. Plaintiffs have not alleged and will not be able to establish that these Defendants are connected to any speculative injury that may potentially result from Wendler's email in the future because neither Chancellor Sharp nor Dr. Thomas is tasked with approving campus events, neither has an enforcement connection to Wendler's independent decision and statement, and neither have threatened to enforce Wendler's statement going forward.

Moreover, Plaintiffs claims are unlikely to succeed on the merits because they seek unavailable affirmative relief that is barred by sovereign immunity. *Ex parte Young* does not allow a federal court to order an official to exercise sovereign power by taking an official act. *Zapata v. Smith*, 437 F.2d 1024, 1026 (5th Cir. 1971); see *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 242 (5th Cir. 2020) (citation omitted). That is because "if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of," then the underlying fiction of *Ex parte*

*Young* does not apply because the order "will require affirmative action by the sovereign." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 691 n.11 (1949); see also, e.g., *Richardson*, 978 F.3d at 242; *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011); *Zapata*, 437 F.2d at 1025-26. As the Supreme Court has recognized, "seeking to obtain an order requiring [an agency director] to withdraw" an official action—in that case, "advice to the federal agencies"—is an order that "would require . . . affirmative action." *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam).

Here, Plaintiffs are not asking Chancellor Sharp or Dr. Thomas to cease taking an action. They want them to do something. Plaintiff's request that these Defendants take actions to override Wendler such as rescinding Wendler's public statement and countermanding his decisions. This is an improper request for affirmative relief rather than a request to cease unconstitutional conduct and does not fall within the *Ex parte Young* exception. Since Plaintiffs' claims are likely barred by sovereign immunity, they are unlikely to succeed on the merits of their claims against these Defendants. The district court's order denying the preliminary injunction should be affirmed.

## III.    Plaintiffs Have Not Shown Imminent Irreparable Harm if Chancellor Sharp and Dr. Thomas Are Not Enjoined, and the Balance of the Equities Supports the District Court's Decision.

A preliminary injunction should not be issued simply to prevent the possibility of some remote future injury. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction requires a showing of "irreparable harm" that is *likely*, not merely possible. *Id.* Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with the characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). And the threatened harm must be "imminent." *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). "While the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury, invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury." *Missouri,* 83 F.4[th] at 392-93 (cleaned up) (quotations and citations omitted).

Plaintiffs have not demonstrated that they will likely suffer imminent, irreparable injury if Chancellor Sharp and Dr. Thomas are not enjoined. As previously discussed in the context of standing, Plaintiffs' injury is premised on a fear of future injury that has not yet materialized and that is far from imminent.

*Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). Irreparable harm to support a preliminary injunction cannot "rest[] upon 'contingent future event that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Ag. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). The district court properly held that Plaintiff's had not shown a likelihood of irreparable harm while this litigation plays out. ROA. 873. This is particularly true regarding Plaintiffs' claim against Chancellor Sharp and Dr. Thomas. As discussed above, Plaintiffs claimed harm from these Defendants is entirely speculative and contingent on hypothetical future events such as the actions of an independent third party—Wendler. Plaintiffs' various events this school year have gone forward as scheduled, and Dr. Thomas has testified that he is unaware of any reason why the events will not go forward as planned. ROA.541.

Because Plaintiffs have not demonstrated to this Court that they will suffer imminent, irreparable harm absent a preliminary injunction against Chancellor Sharp or Dr. Thomas, the balance of the equities supports the district court's decision. The district court did not analyze the remaining preliminary injunction factors, but it did not abuse its discretion in doing so given the lack of irreparable

harm and Plaintiffs' weak showing of likely success on the merits of their claims

against Chancellor Sharp and Dr. Thomas.

### PRAYER

This Court should affirm the district court's denial of Plaintiffs' amended

motion for preliminary injunction.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney
General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Division Chief, General Litigation
Division

*/s/ Allison M. Collins*

ALLISON M. COLLINS
Assistant Attorney General
Texas Bar No. 24127467
Allison.Collins@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667

*Counsel for A&M Defendants- Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this brief was prepared with Microsoft Word and uses Equity Text A Tab, which is a proportionally spaced typefaces, in 14-point height for body text and 12-point text for footnotes. I further certify that the portions of the brief subject to Tex. R. App. P. 9.4(i)(1) contain 7,030 words, as determined by Word's word-count function.

/s/ *Allison M. Collins*
ALLISON M. COLLINS
Assistant Attorney Genera

**CERTIFICATE OF SERVICE**

On December 13, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ *Allison M. Collins*
ALLISON M. COLLINS
Assistant Attorney General