NO. 23-10994

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

SPECTRUM WT, BARRETT BRIGHT, and LAUREN STOVALL,

*Plaintiffs-Appellants,*

v.

WALTER WENDLER, DR. CHRISTOPHER THOMAS; JOHN SHARP;
ROBERT L. ALBRITTON; JAMES R. BROOKS; JAY GRAHAM; TIM
LEACH; BILL MAHOMES; ELAINE MENDOZA; MICHAEL J.PLANK;
CLIFF THOMAS; DEMETRIUS L. HARRELL, JR.; MICHAEL A.
HERNANDEZ, III,

*Defendants-Appellees.*

## APPELLANTS' REPLY TO BRIEF OF APPELLEES JOHN
## SHARP AND CHRISTOPHER THOMAS

On Appeal from the United States District Court for the
Northern District of Texas, Civil Action No. 2:23-CV-48
Hon. Matthew J. Kacsmaryk Presiding

JT Morris
   *Counsel of Record*
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
700 Pennsylvania Ave. S.E.,
Suite 340
Washington, D.C. 20003
Tel:  (215) 717-3473
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

Adam Steinbaugh
Jeffrey D. Zeman
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
510 Walnut St.
Suite 900
Philadelphia, PA. 19106
Tel:  (215) 717-3473
adam@thefire.org
jeff.zeman@thefire.org

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

INTRODUCTION ......................................................................... 1

ARGUMENT .................................................................................. 4

I.     Sharp and Thomas Evade the Merits of Plaintiffs' First
       Amendment Claims, Even Though They Are the Focus
       of the District Court's Ruling. ........................................... 4

II.    Thomas and Sharp's "Waiver" Argument Is Wrong........................ 5

III.   Plaintiffs Have Standing as to Sharp and Thomas. ........................ 8

       A.    Plaintiffs have shown an ongoing Article III
             injury-in-fact........................................................... 10

       B.    Plaintiffs have shown a threatened injury-in-fact. ............. 12

       C.    Because Thomas has authority over student
             events, Plaintiffs have standing as to him. ........................ 16

       D.    Because of Chancellor Sharp's authority over
             President Wendler and campus matters, Plaintiffs
             have standing as to him........................................... 19

IV.    For the Same Reasons Plaintiffs Have Standing,
       Thomas and Sharp Lack Sovereign Immunity............................. 24

V.     An Injunction Against Thomas and Sharp Will Stop
       Irreparable Harm to Plaintiffs' First Amendment
       Rights. ................................................................................. 27

CONCLUSION ................................................................................ 30

CERTIFICATE OF SERVICE ............................................................. 32

CERTIFICATE OF COMPLIANCE ...................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
  851 F.3d 507 (5th Cir. 2017)............................................................ 25, 26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 29

*Austin v. Univ. of Fla. Bd. of Trustees*,
  580 F. Supp. 3d 1137 (N.D. Fla. 2022).......................................... 14, 15

*Bennett v. Spear*,
  520 U.S. 154 (1997) .............................................................................. 23

*California v. Texas*,
  141 S. Ct. 2104 (2021)........................................................................... 18

*CAMP Legal Def. Fund, Inc. v. City of Atlanta*,
  451 F.3d 1257 (11th Cir. 2006)............................................................ 14

*Coleman v. Houston Indep. Sch. Dist.*,
  113 F.3d 528 (5th Cir. 1997)................................................................ 29

*Doe v. Taylor Indep. Sch. Dist.*,
  15 F.3d 443 (5th Cir. 1994).................................................................. 29

*Elrod v. Burns*,
  427 U.S. 347 (1976)............................................................................... 29

*Ex parte Young*,
  290 U.S. 123 (1908)......................................................................... 3, 25

*Fed. Election Comm'n v. Cruz*,
  596 U.S. 289 (2022)......................................................................... 18, 22

*Freedom of Religion Foundation v. Abbott*,
  955 F.3d 417 (5th Cir. 2020)...................................................... 7, 12, 25

*Get Outdoors II, LLC v. City of San Diego*,
  506 F.3d 886 (9th Cir. 2007)................................................................ 14

*Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves,*
  601 F.2d 809 (5th Cir.1979) .................................................. 11

*Jackson v. Wright,*
  82 F.4th 362 (5th Cir. 2023) ..................................... 3, 16, 22

*K.P. v. LeBlanc,*
  627 F.3d 115 (5th Cir. 2010) .......................................... 3, 26

*Lujan v. Def's of Wildlife,*
  504 U.S. 555 (1992) ......................................................... 9, 10

*Missouri v. Biden,*
  83 F.4th 350 (5th Cir. 2023) ..................................... 12, 14, 18

*Mitchell v. Scott,*
  95 F.3d 1148 (5th Cir. 1996) ............................................... 30

*Murthy v. Missouri,*
  No. 23-411, 2023 WL 6935337 (U.S. Oct. 20, 2023) ........... 12

*Nebraska Press Ass'n v. Stuart,*
  427 U.S. 539 (1976) ............................................................. 20

*NiGen Biotech, LLC v. Paxton,*
  804 F.3d 389 (5th Cir. 2015) ............................................... 26

*Pierce v. Tex. Dep't of Crim. Just.,*
  37 F. 3d 1146 (5th Cir. 1994) .............................................. 29

*Rollins v. Home Depot USA,*
  8 F.4th 393 (5th Cir. 2021) ............................................... 5, 6

*Russell v. Lundergan-Grimes,*
  784 F.3d 1037 (6th Cir. 2015) ............................................. 22

*Speech First v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) ...................................... passim

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ............................................... 9, 10, 13

*Three Expo Events, LLC v. City of Dallas*,
  907 F.3d 333 (5th Cir. 2018) .......................................................... 9, 11

*United States v. Olano*,
  507 U.S. 725 (1993) .............................................................................. 5

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ............................................................................ 23

*Warth v. Seldin,*
  422 U.S. 490 (1975) ............................................................................ 10

*Yeargin Constr. Co. v. Parsons & Whittemore Ala. Mach. &*
  *Servs. Corp.*,
  609 F.2d 829 (5th Cir. 1980) .............................................................. 27

## Other Authorities

Kate McGee & James Barragán, "Texas A&M suspended
  professor accused of criticizing Lt. Gov. Dan Patrick in
  lecture," Tex. Trib. (Jul. 25, 2023)
  https://www.texastribune.org/2023/07/25/texas-a-m-
  professor-opioids-dan-patrick ............................................................ 24

Michael Hardy, "Country Revival," Texas Monthly (July
  2017) https://features. texasmonthly.com/editorial/country-
  revival ................................................................................................ 21

Shannan Najmabadi, "Texas House Calls on Texas A&M
  Chancellor to Halt White Nationalist Rally," Tex. Trib.
  (Aug. 14, 2017), https://www.texastribune.org/2017/08/14/
  texas-house-calls-texas-m-chancellor-stop-white-
  nationalist-rally-occu ........................................................................ 21

Tex. A&M Univ. Sys., Sys. Pol'y 02.02, Office of the
  Chancellor ........................................................................ 7, 19, 21, 23

Tex. A&M Univ. Sys., Sys. Pol'y 02.05, Presidents of Sys.
  Member Univs. .................................................................................. 19

iv

## INTRODUCTION

This appeal is about a drag show ban threatening Plaintiffs' First Amendment right to perform a drag show scheduled for March 2024. It is not about standing or sovereign immunity, as Defendants John Sharp and Christopher Thomas claim. The facts prove why. *See* ROA.871–72 (denying Thomas and Sharp's motion to dismiss on standing and sovereign immunity).

Since March 2023, West Texas A&M University officials have censored Plaintiffs, a recognized student organization and its undergraduate leaders at the public university. Days before Plaintiffs were scheduled to perform a PG-13 charity drag show in a campus public forum, University President and Defendant Walter Wendler unilaterally cancelled it. With a published edict, Wendler decried drag performance as offensive to women and declared, "West Texas A&M will not host a drag show." Vice President of Student Affairs Thomas, who oversees and manages all student activities, enforced Wendler's edict against Plaintiffs. So too did Defendant Sharp play a part as Texas A&M System Chancellor. Despite system policy giving Sharp direct responsibility for Wendler and the authority to stop his censorship, Sharp stood behind it.

Plaintiffs intend to hold a campus drag show on March 24, 2024. But the past is likely to repeat. Nine months after issuing his edict, President Wendler has refused to rescind it, boasting in a media interview that he "wouldn't have done anything differently." ROA.623 at 25:00–27:47. Far from denouncing Wendler's ongoing censorship, Chancellor Sharp departed from his history of intervening in campus speech controversies, indicating he would sooner exercise his authority to uphold the campus drag show ban rather than end it. And Vice President Thomas, as before, will likely enforce Wendler's edict banning drag shows from campus and thwart Plaintiffs' upcoming performance.

Given Sharp's and Thomas's role in censoring Plaintiffs' expression, the district court rightly focused its analysis (though erroneous) on the merits of Plaintiffs' First Amendment claims. ROA.873. Yet below and here, Sharp and Thomas have refused to address those First Amendment questions. They even argue that Plaintiffs, not they, have insufficiently briefed the issues. They are wrong. Plaintiffs explained below and explain in this Court why enjoining Sharp and Thomas is warranted.

While Sharp and Thomas strain to distance themselves from President Wendler's edict, they are not helplessly watching Wendler

trample the First Amendment. Their roles, their authority, and their acts closely connect them with the ongoing violations of Plaintiffs' First Amendment rights, even if President Wendler made the initial decision to muzzle Plaintiffs' protected expression. That meets Article III standing, especially because the drag show ban is imperiling Plaintiffs' First Amendment right to perform the same show in March 2024. *Speech First v. Fenves*, 979 F.3d 319, 336 (5th Cir. 2020) ("[p]ast enforcement of speech-related policies can assure standing. . . ."); *Jackson v. Wright*, 82 F.4th 362, 367–69 (5th Cir. 2023) (concluding plaintiff had standing against university board members with "direct governing authority over" campus officials allegedly violating First Amendment rights). And that same connection to the campus drag show ban strips Sharp and Thomas of sovereign immunity under *Ex parte Young*. *Jackson*, 82 F.4th at 367–69; *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Ex parte Young*, 290 U.S. 123, 157 (1908)).

In the same way, Sharp and Thomas are inextricably linked to the irreparable harm that Plaintiffs will suffer absent an injunction. The facts leave one conclusion: Defendants will maintain the viewpoint-driven ban on campus drag shows, including Plaintiffs' March show.

Preventing that irreparable First Amendment harm requires an injunction not only against Wendler, but also against those who will and who are likely to enforce his censorship, like Sharp and Thomas. Anything less will leave open the door to more censorship of Plaintiffs' protected expression.

## ARGUMENT

## I. Sharp and Thomas Evade the Merits of Plaintiffs' First Amendment Claims, Even Though They Are the Focus of the District Court's Ruling.

The district court's Memorandum Opinion and Order confirms that this case centers on the First Amendment, not standing or sovereign immunity. The district court denied Sharp and Thomas's Rule 12(b)(1) motion to dismiss on standing and sovereign immunity under the same facts that govern standing and sovereign immunity here. ROA.870–72. In assessing the likelihood-of-success factor, the district court said nothing on standing and sovereign immunity. ROA.873. Rather, it focused on the First Amendment merits of Plaintiffs' claims. *Id.*

For all that, Sharp and Thomas refuse to defend the district court's First Amendment analysis, erroneous as it is. Their brief is silent on it. *See* Br. of Appellees John Sharp and Christopher Thomas (Defs. Br.) 11–

46. Even more, they fail to address Plaintiffs' thoroughly briefed First Amendment arguments, including those that cover all Defendants, not just President Wendler. *See id*; *see also* ROA.527–37.

As Plaintiffs' arguments show, this Court should find the district court erred on the First Amendment questions controlling the likelihood-of-success factor. Should the Court do so, it should also hold the district court abused its discretion and reverse the denial of the preliminary injunction not only as to President Wendler, but also as to Sharp and Thomas, as both have the authority to once again stifle Plaintiffs' protected expression.

## II.    Thomas and Sharp's "Waiver" Argument Is Wrong.

Sharp and Thomas mistake both law and fact in asserting that Plaintiffs "waived" any arguments against them on appeal. Defs. Br. 22–24. To start, Sharp and Thomas confuse waiver and forfeiture. Waiver is "the intentional relinquishment or abandonment of a known right." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) (quoting *United States v. Olano*, 507 U.S. 725 (1993)) (cleaned up). Plaintiffs have not intentionally abandoned a known right against Sharp or Thomas, and Defendants point to no statement from Plaintiffs showing otherwise. *But*

*c.f.,* Appellants' Br. 67 n. 13 (intentionally waiving arguments as to standing against the Board of Regents Defendants).

What Sharp and Thomas really contend is that Plaintiffs forfeited arguments concerning their claims against Sharp and Thomas. A party only forfeits an argument "by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal." *Rollins*, 8 F.4th at 397. Because Plaintiffs rebutted Defendants' standing arguments and otherwise addressed their claims as to Sharp and Thomas in the district court,[1] Sharp and Thomas's forfeiture claim rests on an inadequate-briefing argument. But the cases Sharp and Thomas marshal are those where a party's brief failed to raise an issue entirely, included a lone sentence or footnote on an issue, or offered no facts or authority. Defs. Br. 22 (citing cases). Here, Plaintiffs briefed their arguments pointing to both facts and authority as Fed. R. Civ. P. 28(a)(8)(A) requires. ROA.243, ROA.248, ROA.301–02, ROA.608–11; Appellants' Br. 6–7, 9–10, 13, 66–68. And just as Plaintiffs refuted Sharp and Thomas's arguments below, they refute them on appeal.

---

[1] *E.g.,* ROA.241-53; ROA.259 ROA.300; ROA.601-11; ROA.613-15; ROA.619

Plaintiffs' brief details Vice President Thomas's role and responsibilities in cancelling Plaintiffs' 2023 performance, and how he will again enforce Wendler's ban by cancelling Plaintiff's March 2024 performance. Appellants' Br. 6, 68. Plaintiffs also identify Texas A&M system policy establishing Chancellor Sharp's authority over President Wendler and his refusal to denounce or override Wendler's edict, despite evidence of Sharp intervening in past free speech disputes within the Texas A&M system. *Id.* at 7, citing, among others, Tex. A&M Univ. Sys., Sys. Pol'y 02.02, Office of the Chancellor, §§ 1.12, 2.1; ROA.218 ¶ 18; ROA.235 ¶ 120; ROA.243 ¶ 158. Plaintiffs also explain how Thomas and Sharp are propping up President Wendler's censorship, and detail how both are contributing to Plaintiffs' irreparable injuries. Appellants' Br. 13, 68. And Plaintiffs identify this Court's decision in *Freedom From Religion Foundation v. Abbott*, 955 F.3d 417, 424–25 (5th Cir. 2020) as supporting subject matter jurisdiction. Detailing fact, policy, and law supporting an argument is not the cursory, unsupported reference tantamount to forfeiture.

To be sure, Plaintiffs' principal brief centers on the First Amendment violations resulting from President Wendler's viewpoint-

driven decision. And for good reason: The district court's errors centered on the First Amendment merits of Plaintiffs' claims, not whether Plaintiffs had standing to bring them. Although Sharp and Thomas complain that Plaintiffs' standing discussion is brief (Defs. Br. 24), it is not Plaintiffs' burden to challenge the district court's correct conclusions on the uncontroversial questions of standing and lack of sovereign immunity.

All of this confirms that Plaintiffs have not forfeited their arguments, and the Court should refuse Defendants' arguments on the issue.

## III.    Plaintiffs Have Standing as to Sharp and Thomas.

As they did below, Vice President Thomas and Chancellor Sharp contend that Plaintiffs lack standing to sue them. Defs. Br. 28–39; ROA.527–37. But their responsibilities, authority, and roles in the ongoing censorship of Plaintiffs' protected expression show otherwise. The district court rightly found that the facts establishing Sharp and Thomas's authority over matters at West Texas A&M—including matters concerning free expression—defeated their motion to dismiss on standing. ROA.870–72. Those same facts show Plaintiffs have standing

against them for a preliminary injunction, as "[a]t earlier stages of litigation . . . the manner and degree of evidence required to show standing is less than at later stages." *Speech First*, 979 F.3d at 329 (citing *Lujan v. Def's of Wildlife*, 504 U.S. 555, 561 (1992)).

A plaintiff has standing if (1) he has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury has a sufficient connection to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (finding standing on First Amendment challenge). And when a plaintiff sues for a First Amendment violation based on denied use of a public forum, standing "is not a complicated case . . . but a very simple one." *Three Expo Events, LLC v. City of Dallas*, 907 F.3d 333, 341–42 (5th Cir. 2018) (reversing dismissal for lack of standing).

That is why standing is "very simple" here: Defendants are maintaining a prior restraint on Plaintiffs' access to campus public forums because Wendler doesn't like the viewpoints he believes Plaintiffs' performance will express. Appellants' Br. 36–66; *see also* Br. of Appellee Walter Wendler ("Wendler Br.") 39 (acknowledging that university

officials "review" the content of student events during the permit process). This gag on Plaintiffs' expression meets the injury-in-fact requirement—an injury traceable to both Sharp and Thomas. Thus, a preliminary injunction against them is necessary to redress Plaintiffs' injuries.

### A.   Plaintiffs have shown an ongoing Article III injury-in-fact.

Plaintiffs have alleged and shown First Amendment injuries that satisfy Article III. *See* Appellants' Br. 16–66. The constitutional injury-in-fact requirement asks whether the plaintiff has a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation omitted). To satisfy Article III, an injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). Both allegations of ongoing injury and allegations of threatened injury can show an injury-in-fact. *Driehaus*, 573 U.S. at 158.

There is an ongoing ban on campus drag shows at West Texas A&M. As President Wendler announced in his March 20, 2023 email, "West Texas A&M University will not host a drag show on campus" and a "harmless drag show" is "[n]ot possible". ROA.265–67. Even more, his

edict informed students, staff, and administrators that his personal criteria for what is "inappropriate" controls Plaintiffs' right to use campus venues for expressive activity. *Id.* Those clampdowns on protected expression are currently impeding Plaintiffs' ability to plan their March 2024 campus drag show at Legacy Hall, a campus public forum. *E.g.*, ROA.237 ¶ 130(b); ROA.272–73; ROA.327–32 ¶¶ 6–16; ROA.343–83. That more than meets Article III's injury-in-fact requirement. *See Three Expo Events*, 907 F.3d at 341–42; *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 818 (5th Cir.1979) (whether a plaintiff "is seriously interested in disobeying, and the defendant seriously intent on enforcing, the challenged measure," informs the "case or controversy" requirement).

Sharp and Thomas insist President Wendler's edict is a one-off act and claim Plaintiffs' injury-in-fact is purely speculative. They are wrong. Defs. Br. 32–33. Above all, they ignore that Wendler has not rescinded his unequivocal campus drag show ban—and that Chancellor Sharp has not reversed or even denounced Wendler's actions. ROA.235 ¶ 119; *see generally* ROA.538–49. Those refusals to override Wendler's unconstitutional campus drag show ban establishes an injury-in-fact. *See*

*Freedom From Religion Found.*, 955 F.3d at 424–25 (concluding an ongoing case or controversy existed based on a non-rescinded letter from the Texas governor leading to a potential First Amendment violation).

Sharp and Thomas also downplay the viewpoint-based campus drag show ban as inert because it is not set forth in "any A&M University System Policy or any formally adopted WT policy or rule." Defs. Br. 30. But that does not negate standing. Whether by formal rule, policy, or the acts and omissions of those with authority like Wendler, Sharp, and Thomas, if government officials even informally stifle protected expression under the color of state law, the result is an injury-in-fact to those who want to exercise their First Amendment rights. *See, e.g.*, *Missouri v. Biden*, 83 F.4th 350, 388 (5th Cir. 2023), cert. granted sub nom. *Murthy v. Missouri*, No. 23-411, 2023 WL 6935337 (U.S. Oct. 20, 2023) (affirming standing against government officials who pressured social media companies through "informal oversight" and other methods to moderate content).

## B.    Plaintiffs have shown a threatened injury-in-fact.

Not only have Plaintiffs established an ongoing injury-in-fact, but they have also established a threatened injury satisfying Article III. For

a threatened injury, Plaintiffs must show (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the "intended future conduct is arguably proscribed by the statute"; and (3) that "the threat of future enforcement is substantial." *Driehaus*, 573 U.S. at 161–64 (citations omitted) (cleaned up). Plaintiffs meet all three elements.

First, Plaintiffs have started planning and intend to put on the same drag show at Legacy Hall in March 2024 as the one triggering Wendler's edict in 2023. ROA.229–30 ¶¶ 76–83, ROA.237 ¶ 130(b). As Plaintiffs explain, that is First Amendment protected expression. Appellants' Br. 16–36. Second, President Wendler's viewpoint-based drag show ban—which Thomas enforces and Sharp has essentially backed— proscribes Plaintiffs' "intended future conduct." ROA.265–67. Third, Wendler has not rescinded his ban on drag shows or otherwise indicated that he will not cancel Plaintiffs' next drag show. ROA.235 ¶ 119. Instead, he proclaimed soon after Plaintiffs sued that he "wouldn't have done anything any differently." ROA.623 at 25:00–27:47. Those facts establish a threatened injury-in-fact. *Driehaus*, 573 U.S. at 161–64; *see*

*also Biden*, 83 F.4th at 369 (affirming standing where "there is no evidence to suggest that the government's meddling has ceased.")

The prior restraint here underscores the threatened injury.[2] For Article III standing, "[p]rior restraint claims are unique" because "the *threat* of the prior restraint itself constitutes the injury-in-fact." *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 895 (9th Cir. 2007). So "when a plaintiff has applied for a permit in the past and intends to apply for a permit in the future, whether an administrator has yet to exercise their unbridled discretion to deny the permit is 'immaterial because it is the existence, not the imposition, of standardless requirements that causes [the] injury.'" *Austin v. Univ. of Fla. Bd. of Trs.*, 580 F. Supp. 3d 1137, 1159 (N.D. Fla. 2022) (quoting *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1275 (11th Cir. 2006)).

Here, the prior restraint imposes even more than just a threat of standardless, viewpoint-based requirements that Defendants and other university staff have the discretion to wield against Plaintiffs' protected

---

[2] Sharp and Thomas assert that "Plaintiffs do not mention Chancellor Sharp or Dr. Thomas at all within their prior restraint claim." Defs. Br. 27. But they overlook that Plaintiffs' prior restraint claim is against all Defendants in their official capacity, including Sharp and Thomas. ROA.250–53.

expression. Defendants have already wielded those requirements to impose and maintain a ban on that protected expression. Appellants' Br. 61–66. In all cases, there is a prior restraint stifling Plaintiffs' right to perform their March 2024 drag show. And that only underpins Plaintiffs' standing here. *See Speech First*, 979 F.3d at 336 ("[p]ast enforcement of speech-related policies can assure standing . . . ."); *Austin*, 580 F. Supp. 3d at 1159.

No matter how Defendants obscure whether West Texas A&M will cancel Plaintiffs' March 2024 drag performance at the last minute like they did before, they cannot deprive Plaintiffs of standing by playing "will we or won't we." In front of news cameras, President Wendler said he'd do it all again if given another opportunity. ROA.623 at 25:00–27:47. In the district court, no Defendant contradicted that pledge. And in his just-filed brief here, Wendler references his "rejection of the March 2023 drag show, and rejection of future drag shows" and the "possibility of future rejections on the same basis[.]" Wendler Br. 30; *see also*, *id*. 32, 39–41. All of this shows the threat of censorship is substantial and not speculative, meeting Article III's injury-in-fact requirement.

**C.    Because Thomas has authority over student events, Plaintiffs have standing as to him.**

As Plaintiffs explained in their principal brief, Vice President Thomas carried out President Wendler's unconstitutional edict and will continue to do so. Appellants' Br. 6, 68; *see also* ROA.540. That alone belies Thomas's arguments on standing, as Thomas has at least a "scintilla of enforcement" causing an injury that can be redressed by enjoining Thomas from further enforcement. *Jackson*, 82 F.4th at 367–69. The district court correctly recognized this, too. ROA.871.

Nor is Thomas a mere "messenger." Defs. Br. 31. Instead, as Thomas confirmed in his declaration, he is (i) "responsible for oversight and management of all matters related to student issues and affairs [and] activities," and (ii) he must carry out President Wendler's directives. ROA.539–40 ¶¶2–5. Those facts assure standing against Thomas. *Speech First*, 979 F.3d at 336 ("[p]ast enforcement of speech-related polices can assure standing. . . .").

Although Vice President Thomas claims he "knows of no reason why" he would partake in cancelling Plaintiffs' March 2024 on-campus show (Defs. Br. 31, 37), the facts refute his claim. For one thing, President Wendler has not rescinded his edict banning drag shows at West Texas

A&M. Thomas also omits a key point: Until just eleven days before Plaintiffs' March 31, 2023 drag show, all signs pointed to the show going forward at Legacy Hall. *See* ROA.232–33 ¶¶ 99–102. In fact, Plaintiffs received tentative approval from Thomas's department only to have President Wendler direct Thomas to cancel Plaintiffs' 2023 show, deciding his own views eclipse the First Amendment. *Id.* Thus, together with Wendler's pledge that he would not "do anything differently," there is a substantial threat that Wendler will again impede Plaintiffs' March 2024 show at the eleventh-hour, compelling Thomas to again deny Plaintiffs access to a campus public forum for protected expression.

Even if Wendler does not directly order Thomas to cancel Plaintiffs upcoming performance, Thomas will have little choice but to enforce the ongoing ban and cancel it. Thomas's authority over all student activities means he is chief among the "officials" Wendler says should be "given the first opportunity to review" Plaintiffs' March 2024 event. Wendler Br. 39. To that end, President Wendler's viewpoint-driven edict declaring that West Texas A&M "will not host" any drag show and his claim that drag shows are a form of unlawful harassment signal to Thomas that he must not let Plaintiffs' show go on.

For these reasons, Plaintiffs' ongoing and threatened injuries are fairly traceable to Vice President Thomas, as they stem from Thomas's "application or threatened application of an unlawful enactment. . . ." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 297 (2022). While Thomas insists that Plaintiffs lack standing because their claims turn on the actions of "third party" President Wendler, that argument fails for three reasons. *See* Defs. Br. 34. First, Thomas will have a direct role in cancelling Plaintiffs' March 2024 show, just as he did in 2023, because his duties encompass "all matters related to student . . . activities." ROA.539 ¶ 2. Second, Wendler is not an independent third party; he is Thomas's superior. ROA.540 ¶ 5. Third, even if Wendler's continuing edict is an independent "third party" decision, it is enough to show standing for Thomas, because Wendler is "likely to react in predictable ways" by once again censoring Plaintiffs' March 2024 show because he disagrees with its viewpoint. *Biden*, 83 F.4th at 369–70 (quoting *California v. Texas*, 141 S. Ct. 2104, 2117 (2021)).

For these reasons, a preliminary injunction against Thomas from enforcing the drag show ban or the viewpoint-based criteria in Wendler's edict is necessary to redress Plaintiffs' First Amendment injuries.

Enjoining Thomas will also provide a backstop to safeguard Plaintiffs'
First Amendment rights should President Wendler ignore a preliminary
injunction.

> **D. Because of Chancellor Sharp's authority over
> President Wendler and campus matters, Plaintiffs
> have standing as to him.**

Like Vice President Thomas, Chancellor Sharp's responsibilities
and authority belie his arguments against standing. *See* Appellants' Br.
7. Start with Sharp's duties under Texas A&M System policies. He "is
responsible to the board for the general management and success of the
system, and is . . . delegated authority to do all things necessary to fulfill
such responsibility. . . ." Tex. A&M Univ. Sys., Sys. Pol'y 02.02, Office of
the Chancellor, § 2.1 (https://policies.tamus.edu/02-02.pdf). That
authority includes "responsibility for . . . the chief executive officer (CEO)
of each academic member of the system," including President Wendler.
*Id.* § 1.12. Indeed, system policy states that presidents like Wendler
"serve under the direction of the chancellor." Tex. A&M Univ. Sys., Sys.
Pol'y 02.05, Presidents of Sys. Member Univs.
(https://policies.tamus.edu/02-05.pdf).

Those policies prove Plaintiffs' point that Sharp "is President

Wendler's superior and has the power and duty to stop President Wendler from continuing to violate Plaintiffs' constitutional rights . . . ." ROA.218 ¶ 18. While the declaration of Billy Hamilton, the deputy chancellor and chief financial officer for the Texas A&M University system, claims Chancellor Sharp lacks immediate power over President Wendler's day-to-day decisions, his testimony—which university policy disproves—misses the point. *See* ROA.548 ¶¶ 8–9. A drag show ban has *persisted* at West Texas A&M since March 2023. And so has the viewpoint-based prior restraint on Plaintiffs' right to use campus public forums.

Those continuing muzzles on protected expression are not day-to-day decisions. Defendants' drag show ban is an ongoing prior restraint, the "most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). They have enforced and are maintaining that prior restraint against students at a public university, where officials "must be especially vigilant against assaults on speech in the Constitution's care." *Speech First*, 979 F.3d at 339. Yet Sharp has refused to exercise his authority to stop these First Amendment violations and "do all things necessary" to ensure "success of

the system." Tex. A&M Univ. Sys., Sys. Pol'y 02.02, § 2.1. In fact, Sharp offered no declaration below distancing himself from President Wendler's acts, let alone any other statement denouncing Wendler's viewpoint-driven edict banning drag shows. *See generally* ROA.538–49.

Likewise, Sharp's history of involving himself in university free speech matters contradicts the hands-off picture he now paints. In December 2016, noted white supremacist Richard Spencer was scheduled to speak at Texas A&M University. But Chancellor Sharp did not censor Spencer's talk. Rather, he and then-president Michael Young supported "Aggies United," a counter-speech event at Kyle Field.[3] On the other hand, Chancellor Sharp has also shown a willingness to block expressive events on campus. When Spencer was scheduled to speak again at Texas A&M in 2017, Sharp was key to cancelling the event.[4]

That past involvement in campus speech reveals Sharp's authority to facilitate the ongoing drag show ban at West Texas A&M, as the

---

[3] ROA.610 (citing Michael Hardy, "Country Revival," Texas Monthly (July 2017) https://features. texasmonthly.com/editorial/country-revival [Permalink: https://perma.cc/DCK5-C56C]).

[4] ROA.611 (citing Shannan Najmabadi, "Texas House Calls on Texas A&M Chancellor to Halt White Nationalist Rally," Tex. Trib. (Aug. 14, 2017), https://www.texastribune.org/2017/08/14/texas-house-calls-texas-m-chancellor-stop-white-nationalist-rally-occu [Permalink: https://perma.cc/4M5S-XEZC]).

district court correctly concluded. ROA.871–72. And it underscores why Plaintiffs meet Article III's case or controversy requirement for Sharp— even more so given Sharp's direct authority over President Wendler and "all things necessary" to ensure West Texas A&M's success. *E.g.*, *Jackson*, 82 F.4th at 367–69 (concluding plaintiff had standing against public university board members who had "direct governing authority over the UNT officials that are allegedly continuing to violate" the plaintiff's rights, "including authority to countermand the decisions of the subordinate UNT officials."); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047–49 (6th Cir. 2015) (denying motion to dismiss a First Amendment challenge on Article III grounds, as secretary of state had authority for the challenged law and showed a willingness to enforce it).

On the same basis, Plaintiffs' injuries-in-fact are traceable to Chancellor Sharp. *See* Defs. Br. 34–36. Sharp has effectively authorized the "application or threatened application" of Wendler's unlawful edict against Plaintiffs' next drag show. *See Cruz*, 596 U.S. at 297. And even if Sharp has not directly caused Plaintiffs' injuries, an "injury may be indirect" so long as it is "fairly traceable to the defendant's acts or omissions." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S.

252, 261 (1977). As the district court concluded in rejecting Sharp's standing arguments, even though Sharp "did not make the decision to cancel" the March 2023 drag show, "he does hold the authority to permit or deny future ones." ROA.872. The district court was correct.

Like Thomas, Sharp also claims that Plaintiffs lack standing because their injury results from the actions of a "third party." Defs. Br. 34–35. And like Thomas, he is wrong. Again, Wendler is no third party. He is Chancellor Sharp's ward, as Texas A&M system policy commands. Tex. A&M Univ. Sys., Sys. Pol'y 02.02, Office of the Chancellor, § 1.12. Even if the Court looks to the "determinative or coercive effect upon the action of someone else" guideline Sharp identifies to assess traceability through a third-party's act, Plaintiffs meet it. Defs. Br. 34 (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). If the person responsible for President Wendler and having the ultimate authority to end Wendler's censorship has effectively ratified it, as Sharp has, that only encourages Wendler to maintain his present course—creating precisely that determinative effect on Wendler. Thus, Wendler has every reason to believe Sharp will back him if he once again banishes Plaintiffs' protected expression from a campus public forum.

With that in mind, an injunction against Sharp will redress Plaintiffs' First Amendment injuries and ensure Sharp does not encourage or even coerce West Texas A&M staff to censor Plaintiffs' campus drag show. It will also ensure Chancellor Sharp does not keep up the campus drag ban at West Texas A&M, even if President Wendler decides to relent and obey the Constitution. This is no mere hypothetical. Just recently, Sharp initiated the investigation of a professor, at the lieutenant governor's request, who criticized the lieutenant governor.[5] If anything, that event is just another example showing Sharp is more than willing to exercise his authority over expression on campus. An injunction against Sharp is needed to fully redress the harm to Plaintiffs' expressive freedoms, and the Court should reverse.

## IV.  For the Same Reasons Plaintiffs Have Standing, Thomas and Sharp Lack Sovereign Immunity.

The district court rightly denied Thomas and Sharp's motion to dismiss on sovereign immunity. ROA.872 n. 31. Because of the "significant overlap between standing and *Ex parte Young*'s

---

[5] Kate McGee & James Barragán, "Texas A&M suspended professor accused of criticizing Lt. Gov. Dan Patrick in lecture," Tex. Trib. (Jul. 25, 2023), https://www.texastribune.org/2023/07/25/texas-a-m-professor-opioids-dan-patrick [Permalink: https://perma.cc/8W3K-3GAD].

applicability," the same facts that establish Plaintiffs' standing also show why Defendants are not entitled to sovereign immunity. *See Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 513–14 (5th Cir. 2017).

Sovereign immunity does not bar claims against state officials sued in their official capacity for prospective relief over ongoing violations of federal law. *Ex parte Young*, 209 U.S. at 159. Even though Plaintiffs have made out an ongoing First Amendment violation that only prospective relief can remedy, Sharp and Thomas insist that *Ex parte Young* does not apply. The Court should reject their arguments for the same reasons it should reject their arguments on standing given the "significant overlap" in analyses. *See Air Evac EMS*, 851 F.3d at 513–14.

For *Ex parte Young* to apply, "a suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Freedom From Religion Found.*, 955 F.3d at 424 (citing *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 394–95 (5th Cir. 2015)). A plaintiff must simply show "some connection" between a state official and the challenged enforcement. *LeBlanc*, 627 F.3d at 124.

Under that standard, neither Sharp nor Thomas have sovereign immunity. *Ex parte Young* applies to Plaintiffs' claims against Vice President Thomas. He is responsible for enforcing President Wendler's directives, like the viewpoint-based ban on drag shows. And as shown, he will enforce that directive again. That meets the "some connection" requirement.

So too does *Ex parte Young* authorize Plaintiffs' claims for prospective relief against Chancellor Sharp. Sharp argues that he has sovereign immunity "[f]or the same reasons Plaintiffs lack standing . . . ." Defs. Br. 41. But he offers no other argument in support of sovereign immunity. Nor can he, because Sharp is connected to the ongoing and threatened censorship of Plaintiffs' protected expression. *See* Section III.D, *supra*. And in any case, because Plaintiffs have standing against Sharp, sovereign immunity is no bar here. *Air Evac EMS*, 851 F.3d at 513–14.

Lastly, Thomas and Sharp miscast Plaintiffs' requested relief as "affirmative relief that is barred by sovereign immunity." Defs. Br. 42–43. But Plaintiffs are not asking for a mandatory injunction. They are asking for an injunction *prohibiting* Defendants from "enforcing

President Wendler's ban on drag shows in campus facilities generally available for student group use" or otherwise "enforcing any of the viewpoint- and content-discriminatory prohibitions" contained in Wendler's edict. ROA.281–83 (preliminary injunction motion); ROA.286–87 (proposed order on that motion). At bottom, Plaintiffs are asking to preserve the status quo that existed before President Wendler's March 20, 2023 email and Defendants' acts carrying out and maintaining that edict—that is, the "last uncontested status" between the parties preceding the controversy. *Yeargin Constr. Co. v. Parsons & Whittemore Ala. Mach. & Servs. Corp.*, 609 F.2d 829, 831 (5th Cir. 1980).

Defendants offer no reasons why sovereign immunity bars an injunction seeking to preserve the status quo before Wendler issued his edict and to preserve First Amendment freedoms, and so the Court should cast aside that argument.

## V.   An Injunction Against Thomas and Sharp Will Stop Irreparable Harm to Plaintiffs' First Amendment Rights.

As Plaintiffs made clear in their amended verified complaint, they intend to hold a PG-13 drag show on March 24, 2024, at Legacy Hall at West Texas A&M University. ROA.237 ¶ 130(b). But President Wendler has refused to revoke his edict that "West Texas A&M will not host a drag

show" because he finds drag shows offensive to women. ROA.235 ¶ 119, ROA.265–67. His edict pledged that the university "will not" host a drag show because a "harmless" show is never possible, and he renewed that pledge even after Plaintiffs sued him. ROA.623 at 25:00–27:47.

Despite all of that, Sharp and Thomas still insist that "Plaintiffs' injury is premised on a fear of future injury that has not yet materialized and that is far from imminent." Defs. Br. 44. In other words, Sharp and Thomas simply ignore the realities of the ongoing campus drag show ban that threatens Plaintiffs' weeks-away performance and the protected expression it embodies. And while Sharp and Thomas suggest that "drag show practice, protests, and numerous other events" tolerated on campus show a lack of harm, they miss the point. *Id.* 14. None of those involve the protected expression associated with drag *shows*—including the specific message Plaintiffs wanted to convey in March 2023, and want to convey in March 2024. *See* Appellants' Br. 20, 26–28. Instead, that disparity emphasizes how Defendants are preoccupied with Plaintiffs' expression and message, not their conduct (as President Wendler's briefing now contends). *E.g.*, Wendler Br. 11–21.

The imminent harm Plaintiffs face warrants a preliminary injunction, including against Sharp and Thomas. They both play a part in the ongoing and threatened violations of Plaintiffs' First Amendment rights that underscore irreparable harm here. *See* Section III; *supra*; Appellants' Br. 68; *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

To that end, Sharp and Thomas's roles in violating Plaintiffs' First Amendment rights show that this is not a case about vicarious liability, despite what they otherwise argue. Defs. Br. 26–28. Of course, *respondeat superior* is no bar to Vice President Thomas because he is not President Wendler's superior. And all the cases Defendants rely on involve the unavailability of vicarious liability in Section 1983 or *Bivens* damages claims against individual capacity defendants.[6]

---

[6] Defs. Br. 26–27 (*Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*Bivens* damages claim); *Pierce v. Tex. Dep't of Crim. Just.*, 37 F. 3d 1146, 1150 (5th Cir. 1994) (personal capacity Section 1983 claim); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997) (same); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994) (same). The Court has suggested that the unavailability of vicarious liability against individuals in Section 1983 cases extends to injunctive relief, although it is unclear if it extends to official capacity claims seeking a prospective injunction. *Mitchell v. Scott*, 95 F.3d 1148 (5th Cir. 1996) (per curiam) ("the district court's denial of injunctive relief was not an abuse of discretion because a defendant cannot be held liable under § 1983 on a theory of vicarious liability. . . .").

In any case, Plaintiffs do not seek a preliminary injunction against Sharp and Thomas to hold them to account for a disconnected third-party's action. Plaintiffs seek an injunction against Sharp and Thomas to prevent irreparable harm caused by their roles in violating Plaintiffs' First Amendment rights. And they have met their burden on all the preliminary injunction factors against both Sharp and Thomas. Prompt reversal is needed to prevent more irreparable harm to Plaintiffs' First Amendment freedoms.

## CONCLUSION

For all these reasons and the reasons explained in Plaintiffs' principal brief, the Court should reverse the district court's denial of Plaintiffs' preliminary injunction motion, including as to Defendants Sharp and Thomas.

Dated: January 3, 2024          Respectfully,

/s/ JT Morris
JT Morris
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
700 Pennsylvania Ave., S.E., Ste. 230
Washington, D.C. 20003
Tel: (215) 717-3473
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

Adam Steinbaugh
Jeffrey D. Zeman
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut St., Suite 900
Philadelphia, PA. 19106
Tel:   (215) 717-3473
adam@thefire.org
jeff.zeman@thefire.org

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

This certifies that on January 3, 2024, in compliance with Rules 25(b) and (c) of the Federal Rules of Appellate Procedure, the undersigned served the foregoing via the Court's ECF filing system on all registered counsel of record.

/s/ JT Morris
JT Morris
Attorney for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. App. P. 32(a)(7)(B) because this brief contains 5,904 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Local Rule 32.2.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Local Rule 32.1 and the type style requirements of proportionally spaced typeface using 14-point Century Schoolbook font for text and 12-point Century Schoolbook font for footnotes.

Dated: January 3, 2023                    /s/ JT Morris
                                           JT Morris
                                           Attorney for Plaintiffs-Appellants