NO. 23-10994

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

SPECTRUM WT; BARRETT BRIGHT; and LAUREN STOVALL,

*Plaintiffs-Appellants*,

v.

WALTER WENDLER; DR. CHRISTOPHER THOMAS; JOHN SHARP; ROBERT L. ALBRITTON; JAMES R. BROOKS; JAY GRAHAM; TIM LEACH; BILL MAHOMES; ELAINE MENDOZA; MICHAEL J. PLANK; CLIFF THOMAS; DEMETRIUS L. HARRELL, JR.; and MICHAEL A. HERNANDEZ, III,

*Defendants-Appellees.*

## APPELLANTS' REPLY TO BRIEF FOR
## DEFENDANT-APPELLEE WALTER WENDLER

On Appeal from the United States District Court for the Northern District of Texas, Civil Action No. 2:23-CV-48
Hon. Matthew J. Kacsmaryk Presiding

JT Morris
   *Counsel of Record*
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
700 Pennsylvania Ave. S.E.,
Suite 340
Washington, D.C. 20003
Tel: (215) 717-3473
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

Adam Steinbaugh
Jeffrey D. Zeman
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
510 Walnut St.
Suite 900
Philadelphia, PA. 19106
Tel: (215) 717-3473
adam@thefire.org
jeff.zeman@thefire.org

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................iii

INTRODUCTION ..................................................................... 1

ARGUMENT ............................................................................ 3

I.    Wendler Did Not Ban Conduct—He Banned Drag
      Performances, Which Are Protected Expression. ........................... 3

      A.    Drag shows are a form of stage performance, and thus
            inherently expressive. ................................................. 3

            1.    The context of Plaintiffs' stage performance
                  demonstrates it is expressive even without
                  explanatory speech. ........................................... 4

            2.    The audience does not need to infer a specific
                  message for performance to be expressive. .................. 7

            3.    Wendler's edict shows he understands Plaintiffs'
                  show is expressive. ............................................ 8

      B.    The Court should reject Wendler's unsupported and
            after-the-fact "lewd conduct" excuse. ............................... 9

II.   Wendler's Words Prove He Is Censoring Based on Viewpoint. ..... 11

III.  Wendler's Prior Restraint Imperils Student Expression
      Where It Is Most Protected. .......................................... 14

      A.    Although Wendler's brief concedes each element of a
            prior restraint, he fails to rebut the "heavy
            presumption" of unconstitutionality. ............................... 14

      B.    Wendler's prior restraint meets no interest in deterring
            conduct, instead facilitating viewpoint- and content-
            discrimination. ...................................................... 17

      C.    The bar on prior restraints fully applies to university
            administrators wanting to halt "divisive" expression in
            the name of "tolerance." ........................................... 19

IV.    Legacy Hall Is a Designated Public Forum Under University
       Policy and Practice, Which Wendler Ignores. ............................... 23

       A.    University policy and practice establish Legacy Hall as
             a designated public forum. ...................................................... 23

       B.    Wendler's ban is subject to strict scrutiny even if
             Legacy Hall is a limited public forum. ................................... 26

V.     Wendler's Silence on Strict Scrutiny Concedes His Ban
       Fails It. ............................................................................................. 29

       A.    Wendler's blanket ban on drag shows serves no
             compelling interest. ................................................................. 29

       B.    Wendler's briefing shows his ban is not narrowly
             tailored. ..................................................................................... 32

VI.    Wendler's Admission That He Will Continue Enforcing the
       Drag Show Ban Negates His Other Arguments. ............................ 33

CONCLUSION ............................................................................................ 34

CERTIFICATE OF SERVICE ................................................................... 36

CERTIFICATE OF COMPLIANCE ......................................................... 37

# TABLE OF AUTHORITIES

## Cases

*Ark. Educ. Television Comm'n. v. Forbes,*
    523 U.S. 666 (1998) ................................................................. 28

*Brown v. Entm't Merchs. Ass'n,*
    564 U.S. 786 (2010) ................................................... 29, 30, 31

*Carico Invs., Inc. v. Tex. Alcoholic Bev. Comm'n,*
    439 F. Supp. 2d 733 (S.D. Tex. 2006) ................................... 18

*Chiu v. Plano Indep. Sch. Dist.,*
    260 F.3d 330 (5th Cir. 2001) .......................................... 25, 32

*Christian Legal Soc. v. Martinez,*
    561 U.S. 661 (2010) ......................................................... 27, 28

*City of Lakewood v. Plain Dealer Publ'g Co.,*
    486 U.S. 750 (1988) ................................................. 11, 19, 33

*Clark v. Cmty. for Creative Non-Violence,*
    468 U.S. 288 (1984) ............................................................... 4

*Cohen v. California,*
    403 U.S. 15 (1971) ............................................................... 21

*Coll. Republicans at S.F. State Univ. v. Reed,*
    523 F. Supp. 2d 1005 (N.D. Cal. 2007) ............................... 22

*Davis v. Monroe Cnty. Bd. of Educ.,*
    526 U.S. 629 (1999) ............................................................. 31

*Flores v. Bennett,*
    635 F. Supp. 3d 1020 (E.D. Cal. 2022) ............................... 22

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale,*
    901 F.3d 1235, 1244 (11th Cir. 2018) ................................... 6

*Freedman v. Maryland,*
    380 U.S. 51 (1965) ......................................................... 16, 17

*Freedom from Religion Found. v. Abbott,*
    955 F.3d 417 (5th Cir. 2020) ........................................................ 33, 34

*Gay Student Servs. v. Tex. A&M Univ.,*
    737 F.2d 1317 (5th Cir. 1984) ...................................................... 15, 20

*Giovani Carandola, Ltd. v. Bason,*
    303 F.3d 507 (4th Cir. 2002) ............................................................... 8

*Hays Cnty. Guardian v. Supple,*
    969 F.2d 111 (5th Cir. 1992) ............................................................. 27

*Healy v. James,*
    408 U.S. 169 (1972) ............................................................. 19, 20, 21

*Holloman ex rel. Holloman v. Harland,*
    370 F.3d 1252 (11th Cir. 2004) ........................................................... 5

*Hornbeck Offshore Servs., L.L.C. v. Salazar,*
    713 F.3d 787 (5th Cir. 2013) ............................................................. 16

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
    515 U.S. 557 (1995) ........................................................................ 7, 8

*Iancu v. Brunetti,*
    139 S. Ct. 2294 (2019) ...................................................................... 13

*Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.,*
    993 F.2d 386 (4th Cir. 1993) .......................................................... 9, 12

*Justice for All v. Faulkner,*
    410 F.3d 760 (5th Cir. 2005) .......................................................... 24, 28

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022) ........................................................................ 8, 9

*Matal v. Tam,*
    582 U.S. 218 (2017) .................................................................. passim

*Minn. Voters All. v. Mansky,*
    138 S. Ct. 1876 (2018) ..................................................................... 23

*Papish v. Bd. of Curators of the Univ. of Mo.*,
410 U.S. 667 (1973) *(per curiam)* ............................................. 21, 28, 30

*Pro-Life Cougars v. Univ. of Hous.*,
259 F. Supp. 2d 575 (S.D. Tex. 2003) .................................................. 20

*Robinson v. Hunt Cnty.*,
921 F.3d 440 (5th Cir. 2019) .................................................................. 12

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
515 U.S. 819 (1995) .......................................................... 12, 28, 32, 33

*Rumsfeld v. FAIR*,
547 U.S. 47 (2006) ......................................................................... 5, 7

*Sable Commc'ns of Cal., Inc. v. FCC*,
492 U.S. 115 (1989) .............................................................................. 30

*Se. Promotions, Ltd. v. Conrad*,
420 U.S. 546 (1975) ....................................................................... passim

*Shuttlesworth v. City of Birmingham*,
394 U.S. 147 (1969) .............................................................................. 16

*Speech First, Inc. v. Fenves*,
979 F.3d 319 (5th Cir. 2020) .................................................... 21, 23, 31

*Trump v. Hawaii*,
138 S. Ct. 2392 (2018) .......................................................................... 12

*United States v. O'Brien*,
391 U.S. 367 (1968) ......................................................................... 6, 7

*United States v. Stevens*,
559 U.S. 490 (2010) .............................................................................. 14

*United States v. Virginia*,
518 U.S. 515 (1996) .............................................................................. 10

*Voting for America, Inc. v. Steen*,
732 F.3d 382 (5th Cir. 2013) ................................................................... 6

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
   576 U.S. 200 (2015) .......................................................................... 24, 26

*Widmar v. Vincent*,
   454 U.S. 263 (1981) ........................................................................ 28, 29


## Statutes

Tex. Educ. Code § 51.9315(g) ...................................................... 28


## Other Authorities

Cameron Ehsan,
   *Stanford President Renews Commitment to Academic Freedom
   Amid Law School Controversy*, Stanford Daily (Apr. 3, 2023), .......... 21

Lewis Carroll,
   *Jabberwocky, in Jabberwocky and Other Poems* 17 (Courier
   Dover Publications 2001) (1871) ............................................. 8

W. Tex. A&M Univ.,
   *Mission Statement* ................................................................ 22

## INTRODUCTION

West Texas A&M President Walter Wendler wrote down his reasons for banning drag shows at the university, but he declines to stand by them here. That's because his confession lays bare what he refuses to acknowledge now: The student drag performance he cancelled is expressive and he cancelled it because he thinks it is "divisive" and "demeaning" to others. His words, and his refusal to rescind them, are more than enough to establish a viewpoint-based prior restraint—a most pernicious ongoing First Amendment violation.

Wendler argues that nobody who bought a ticket to see a drag performance on stage—the place reserved for expressive activity for a millennia—would think it was expressive. His argument mirrors the district court's error, overlooking the expressive nature of stage performance, Supreme Court precedent, and his own words. And when Wendler's self-defeating argument fails, the bottom falls out. All roads lead to strict scrutiny, yet he makes little effort to meet his heavy burden of proving the viewpoint-based prior restraint is constitutional.

Instead, President Wendler now insists he acted to prevent lewd conduct. But he thwarted Plaintiffs' drag show before he could ever see

it. Nor did he once reference "lewd" (or anything similar) in his written rationale or any other contemporaneous record. The Court should reject Wendler's post hoc excuse. At any rate, a desire to curb conduct never justifies a prior restraint on expression, as the Supreme Court made clear decades ago. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554–55 (1975).

In essence, President Wendler all but implores the Court, "Trust me, I'm a university administrator," claiming unfettered discretion to police expression in a campus forum open to students and the public for expressive activity. As recent history shows, being censor-in-chief is a goal for many university officials. Thankfully, the First Amendment foils that threat, guaranteeing that students' expressive freedoms, not university officials' power grabs, endure.

President Wendler's brief leaves little doubt. He will censor Plaintiffs' upcoming drag show set for March 22, 2024.[1] To end the ongoing harm to Plaintiffs' expressive freedoms and restore the First Amendment at West Texas A&M, the Court should promptly reverse the district court's denial of Plaintiffs' preliminary injunction motion.

---

[1] The March 24, 2024 date in Plaintiffs' principal brief is a scrivener's error.

## ARGUMENT

### I.  Wendler Did Not Ban Conduct—He Banned Drag Performances, Which Are Protected Expression.

Trying to escape First Amendment scrutiny, Wendler claims drag shows are "conduct only." Br. of Walter Wendler ("Wendler Br.") 21. He is wrong. Drag shows, like all stage performance, are inherently expressive—after all, performers take the stage to express themselves to the audience. And Wendler's post-lawsuit excuse that the drag show ban targets conduct, not expression, conflicts with his contemporaneous edict explaining his disdain for the "show," "performance," and "artistic expression." ROA.265–67.

#### A.  Drag shows are a form of stage performance, and thus inherently expressive.

Wendler insists that if he cannot identify a specific message from a theatrical performance unless someone explains it to him, it is not expressive. Not only does his argument flout decades of precedent, but it ignores that drag shows are an inherently expressive performance that viewers understand communicate something, even if they cannot agree on exactly what.

1.   *The context of Plaintiffs' stage performance demonstrates it is expressive even without explanatory speech.*

As *Southeastern Promotions v. Conrad* establishes, stage performance "usually is the acting out . . . of the written word, and frequently mixes speech with live action and conduct," entitling it to protection under the First Amendment. 420 U.S. at 554–55. That Plaintiffs' drag show is stage performance—same as ballet, music theater, or improv—is enough to merit First Amendment protection. *Id.* Wendler acknowledges that *Southeastern Promotions* is "binding," but suggests the Court ignore it because it is not a "school campus" case. Wendler Br. 20. Yet whether in a theater on campus or off, stage performance is expressive because the audience understands the performers are communicating something. *Southeastern Promotions* controls here.

The context of drag shows, including Plaintiffs' show, cements why the First Amendment protects them. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984) (looking to whether "in context," conduct "would reasonably be understood by the viewer to be communicative"). If a reasonable observer, in context, "would interpret [conduct] as *some* sort of message," the First Amendment protects that

4

expressive conduct, even if the observer does not "infer a *specific* message." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004).

Here, observers would understand that Plaintiffs' drag show is expressive. Performers would appear on stage—the traditional *situs* of expression since ancient Greece—in eye-catching clothing and makeup, with lighting and music. ROA.222–23 ¶¶ 40(c), (i); ROA.227 ¶¶ 63–66; ROA.230 ¶¶ 81–82; ROA.232 ¶¶ 99–100. An emcee would announce performers to an audience having purchased a ticket to view an event promoted as raising LGBTQ+ awareness. ROA.227 ¶ 63; ROA.232 ¶¶ 94–97. With these cues, the audience would know Plaintiffs' drag show communicates *some* message, and not as Wendler argues, just "wear[ing] certain clothes." Wendler Br. 1.

Wendler ignores that context, instead erroneously leaning on *Rumsfeld v. FAIR,* just as the district court did. Appellants' Br. 29–30. Pointing to *FAIR*, Wendler argues that "that conduct can[not] be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." Wendler Br. 12 (quoting 547 U.S. 47, 65–66 (2006)) (cleaned up). But he merely repeats a truism: Stating the reason for

conduct does not make that conduct expressive. *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1244 (11th Cir. 2018) (explanatory speech alone "cannot create expressive conduct," but other "context still matters"). Nobody would think the absence of military recruiters in *FAIR* communicated something unless someone told them.

But viewers do not need an explanation to know stage performances like drag, ballet, or interpretive dance communicate something. That is why *Voting for America, Inc. v. Steen* fails to support Wendler's arguments. Wendler Br. 14 (citing 732 F.3d 382, 388 (5th Cir. 2013)). *Steen* upheld a regulation on the delivery of voter registration forms, even though the forms were collected during voter registration drives, because it was a "regulat[ion of] conduct only." 732 F.3d at 392.

By contrast, Wendler's action bans stage performance—something inherently expressive—not "conduct only." *See Se. Promotions*, 420 U.S. at 554–55 (prior restraint on stage performance necessarily swept conduct intertwined with speech). So even if Wendler intended to target conduct, his prohibition reaches "'speech' and 'nonspeech' elements . . . combined in the same course of conduct," *United States v. O'Brien*, 391 U.S. 367, 376 (1968), but fails the scrutiny applied to such

regulations for two reasons. First, censoring *all* drag shows is far "greater than is essential" to whatever Wendler's interest may be. *Id.* at 377; *see also Se. Promotions*, 420 U.S. at 554–55. Second, Wendler's edict shows the prohibition is far from "unrelated to the suppression of free expression." *O'Brien*, 391 U.S. at 377.

> 2. *The audience does not need to infer a specific message for performance to be expressive.*

Wendler insists that if he does not know what *specific* message he can derive from Plaintiffs' performance, it is not protected expression. Wendler Br. 16–17 (citing *FAIR*, 547 U.S. at 66). His argument merely rehashes the district court's error in concluding that expressive conduct must "obviously convey or communicate a discernable, protectable message" to merit First Amendment protection. ROA.854. As Plaintiffs explain in their principal brief, that reasoning defies settled Supreme Court precedent. Appellants' Br. at 21–24 (discussing, among others, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995)).

Imagine if Wendler's demand for a single, specific message held. It would deprive a host of artistic performance and expressive conduct of constitutional protection. Football fans know the coach is praying, not

tying his shoe, when he kneels at midfield, even if his particularized message is known only to his Creator. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 533 (2022). The ballet or flamenco dancer is undoubtedly artistic expression, but few viewers could distill the dance into an articulable message, let alone agree on it. *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 517 (4th Cir. 2002). And what is the message of the purposefully incomprehensible, but "unquestionably" expressive Jabberwocky?[2] *Hurley*, 515 U.S. at 569. If everyone agreed on the meaning of art and entertainment—be it painting, interpretive dance, or movies—there would be no need for critics.

### 3. Wendler's edict shows he understands Plaintiffs' show is expressive.

Wendler's edict expounds on his belief that drag shows communicate an inappropriate message. He calls them a "performance" that "portray[s] women as objects"; a "demeaning" and "divisive" form of "slapstick sideshow" used to "stereotype," and "mock[]" "womanhood" for

---

[2] "'Twas brillig, and the slithy toves / Did gyre and gimble in the wabe: / All mimsy were the borogoves, / And the mome raths outgrabe." Lewis Carroll, *Jabberwocky, in Jabberwocky and Other Poems* 17 (Courier Dover Publications 2001) (1871), https://www.poetryfoundation.org/poems/42916/jabberwocky.

the "amusement of others." ROA.265–67. One cannot "portray," "stereotype," "mock," or "amuse" others except through expression.

Wendler's edict proves his understanding that Plaintiffs' show is expressive. And it also shows his answer to *Iota Xi* is wrong. Wendler Br. 20–21. There, the Fourth Circuit rejected a university's claim that a fraternity's "Ugly Woman Contest" was not expressive, calling the claim "self-defeating" because the administration interpreted the event as conveying "that racial and sexual themes should be treated lightly." *Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386, 392 (4th Cir. 1993). Wendler's edict mirrors the concession in *Iota Xi,* interpreting drag shows as sending a "[d]emeaning" message of "diminishment" about women. ROA.266–67.

## B. The Court should reject Wendler's unsupported and after-the-fact "lewd conduct" excuse.

Plaintiffs discredited Wendler's after-the-fact justifications for censorship. Appellants' Br. 44–47, 56–57, 64–65. Yet Wendler still pushes them, (1) ignoring his own words, (2) ignoring his Vice President's contradictory testimony, and (3) distorting the record. The Court should refuse Wendler's post-lawsuit excuses and hold him to his viewpoint-driven words. *Bremerton Sch. Dist*, 597 U.S. at 543 n.8 ("[G]overnment

justifications for interfering with First Amendment rights must be genuine, not hypothesized or invented post hoc in response to litigation") (cleaned up) (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)).

First, with "every word chosen carefully," ROA.623 at 25:00–27:47, Wendler's edict never mentions "lewd" or the university's conduct code. ROA.265–67; *see* Wendler Br. 22. In addition, if Wendler had been targeting conduct, he would have cancelled drag show practice along with the show, instead of now boasting that he allowed Plaintiffs to practice in campus venues. Wendler Br. 41.

Second, while Wendler points to concerns about harassment against women, *id.* at 22, his edict's preoccupation with avoiding "harassment" through "humor" underscores that Wendler was targeting expression. Indeed, it aligns with Vice President Thomas's declaration that Wendler "informed us" his decision was "based on his belief that the event would discriminate against women based on sex." ROA.540 ¶ 4.

Third, Wendler distorts his words in now claiming that his edict refers to "lewd" conduct. He represents that his edict objects to "exaggerating aspects of sexuality." Wendler Br. 3 & n.1. But Wendler's

true words reflect concern with how drag performances portray *gender*, not lewdness:

> As a *performance* exaggerating aspects of *womanhood* (sexuality, *femininity, gender), drag shows stereotype women in cartoon-like extremes. . . .*

ROA.265 (emphasis added).

Rejecting Wendler's post hoc excuses is vital here, where a prior restraint devoid of objective criteria enables officials to offer "*post hoc* rationalizations" or "shifting or illegitimate criteria." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758 (1988).[3] That is exactly what Wendler is doing to justify a viewpoint-driven prior restraint on protected expression.

## II. Wendler's Words Prove He Is Censoring Based on Viewpoint.

On its face, Wendler's edict thwarts expression to prevent some perceived offense to some segment of students (or to Wendler). ROA.265–67. That violates the First Amendment bar on viewpoint discrimination. *Matal v. Tam*, 582 U.S. 218, 243 (2017) ("Giving offense is a viewpoint.").

---

[3]    Plaintiffs' principal brief cited *Moore v. City of Kilgore*, 877 F.2d 364, 389 (5th Cir. 1989) for this quote, but inadvertently omitted that the quote is from that case's dissent. Appellants' Br. 46. The authority quoted and which Plaintiffs quote above, *Plain Dealer Publishing Co.*, remains good law.

Wendler responds that he did not discriminate based on viewpoint because he did not grasp Plaintiffs' message, and even if he did, his ban is neutral. Wendler Br. 8, 11, 15–16, 33–34. But his response fails for two reasons.

First, viewpoint discrimination occurs when the "rationale" of the action is the "ideology" or "the message [the expression] conveys." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828–29 (1995). This Court recently confirmed that principle: Officials' "subjective judgment that the content" is "offensive or inappropriate" is what controls. *Robinson v. Hunt Cnty.*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Matal*, 582 U.S. at 243). That principle requires not an objective analysis of Plaintiffs' intended message, but one of Wendler's subjective rationale, just as in *Iota Xi*. 993 F.2d at 393.

Thus, Wendler wrongly relies on *Trump v. Hawaii*. Wendler Br. 37 (citing 138 S. Ct. 2392, 2418 (2018)). *Trump* addressed whether prior statements rendered a "facially neutral" immigration policy discriminatory. 138 S. Ct. at 2418. But unlike the "facially neutral" policy in *Trump*, Wendler published a contemporaneous, viewpoint-based

explanation for why he was banning campus drag performances, showing he perceived a message and censored it. ROA.265–67.

Second, Wendler claims that he would deny drag shows whether they "poke fun at the LGBTQ+ community or . . . express solidarity with it," (Wendler Br. 32–33), because in his view, "respect, not ridicule, is the order of the day." ROA.267. But "evenhandedly" protecting "all groups" from offense is still viewpoint discrimination. *Matal*, 582 U.S. at 243. Even Wendler concedes that "'the essence of viewpoint discrimination' is 'the Government's disapproval of . . . *messages* it finds offensive." Wendler Br. 11 (alteration and emphasis in original) (quoting *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) and *Matal*, 582 U.S. at 248 (Kennedy, J., concurring in part)).

Indeed, *Matal* answers why Wendler's edict proves viewpoint discrimination. The Supreme Court held the government violated the First Amendment by refusing an Asian-American rock band a trademark registration for its name, "The Slants," after officials deemed that it disparaged Asian people. 582 U.S. at 228–29. It mattered not that the band intended the name to be empowering; the government's contrary

interpretation of their message as disparaging was still viewpoint-based. *Id.* at 228, 243; *see also id.* at 250–51 (Kennedy, J., concurring).

So too here. Wendler has censored Plaintiffs' expression because he finds it "demeaning" and "mocking." ROA.265–67. The First Amendment demands an injunction to stop Wendler from muzzling an entire category of protected speech just because he considers it offensive.

## III. Wendler's Prior Restraint Imperils Student Expression Where It Is Most Protected.

Sued for imposing the most pernicious form of censorship—a prior restraint—at a public university, Wendler's response is silence. Although his brief acknowledges each element of a prior restraint, he makes no attempt to rebut the "heavy" presumption of unconstitutionality. Instead, he asks for the unfettered discretion to censor at will. But the Constitution does not leave students' expressive rights "at the mercy of *noblesse oblige.*" *United States v. Stevens*, 559 U.S. 490, 480 (2010).

### A. Although Wendler's brief concedes each element of a prior restraint, he fails to rebut the "heavy presumption" of unconstitutionality.

Wendler's edict has stopped Plaintiffs' drag shows, and all others at West Texas A&M, before anyone took the stage. That is a classic prior restraint, "deny[ing] use of a forum in advance of actual expression." *Se.*

14

*Promotions*, 420 U.S. at 553–54 (applying elements of prior restraint to limits on municipal theater production). Even more troubling, the prior restraint sweeps broadly. Not only does it silence drag shows, but it extends to *all* student expression. Wendler Br. 39 (acknowledging administrators must review "any future events").

A prior restraint on student expression carries "a heavy presumption against its constitutionality." *Gay Student Servs. v. Tex. A&M Univ.*, 737 F.2d 1317, 1325 (5th Cir. 1984) (citation and internal quotation marks omitted). Appellants' Br. 61–67. That burden outweighs even the strict scrutiny required to justify criminal penalties on expression. *Se. Promotions*, 420 U.S. at 558–59. But mirroring the district court's error (Appellants' Br. 66), Wendler overlooks the ongoing prior restraint injuring Plaintiffs' expressive freedoms.

Not once has Wendler tried to overcome the "heavy presumption," assuming instead that his ban reaches no expression at all. That is wrong, as Plaintiffs explain. *See supra* Section I. And Wendler offered no prior restraint analysis in the district court,[4] while offering only six words

---

[4]    *Compare* ROA.311–13, and ROA.592–93 (Plaintiffs' briefing on prior restraint in the district court), *with* ROA.414–36, ROA.459, *and* ROA.716 (Wendler's nonresponse).

here ("The district court should be affirmed").[5] Thus, Wendler forfeits any argument on his burden. *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 796 (5th Cir. 2013) (applying forfeiture to appellee).

In fact, rather than contest the prior restraint, Wendler's brief verifies a prior restraint tantamount to a licensing scheme. Students must apply to use the forum. Wendler Br. 1–2, 23. Their events are subject to "review." *Id.* at 39. And Wendler uses his "judgment" to determine whether the event conforms to the campus "environment." *Id.* at 29, 31–32. Even if students satisfy these criteria, like Plaintiffs did, Wendler imposes another hurdle, claiming unfettered and final authority to determine what expression is appropriate for the "campus culture," even in a campus public forum. Wendler Br. 31–32. This echoes his claim below that he can prohibit any "offensive" speech. ROA.447.

Wendler's self-appointment as a campus expression czar is dangerous enough. Even more, his unfettered authority lacks "narrow, objective, and definite standards," as the Supreme Court's decision in *Shuttlesworth v. City of Birmingham* requires. 394 U.S. 147, 150–51 (1969); *see also Freedman v. Maryland*, 380 U.S. 51, 58–59 (1965). For

---

[5]    *Compare* Appellants' Br. 61–67, *with* Wendler Br. 19.

instance, the approval scheme could require that administrators decide an event application "within a specified brief period" or obtain a court order enjoining the event. *Freedman*, 380 U.S. at 58–59. Those safeguards avoid the exact danger the prior restraint poses here: Wendler's ability to veto expressive student events on a whim.

**B.    Wendler's prior restraint meets no interest in deterring conduct, instead facilitating viewpoint- and content-discrimination.**

Wendler has commandeered the approval process for student events to conform campus speech to his preferred values. Ordinarily, that process considers only content-neutral criteria to facilitate the logistics, not content, of student expression. ROA.231 ¶ 89; ROA.236 ¶ 128; ROA.250–51 ¶¶ 195–98. Yet Wendler has turned that process into one that expedites viewpoint- and content-discrimination based on what he deems "demeaning" or "inappropriate," as his ongoing drag show ban illustrates. *See* ROA.265–67. And though Wendler argues after-the-fact that he wants to prevent lewd conduct, that interest does not justify a prior restraint on a student performance he has never seen.

The Supreme Court rejected that same argument in *Southeastern Promotions*. Local officials, concerned that a performance of the

provocative musical "Hair" would feature lewd conduct, denied the performers use of a municipal theatre. 420 U.S. at 550, 554–55. But the Supreme Court struck down the denial as a prior restraint on protected expression. *Id.* at 557–58. That authorities could punish illegal conduct *if* it occurred was even more reason not to prevent the performance. *Id.* at 555.

So too here. The University can enforce constitutional limits on unprotected conduct after it occurs,[6] but it cannot restrict stage performance in anticipation it will occur. *Id.* at 555, 557–58. That rule is especially important given Wendler's concession that "[d]rag performances defy easy categorization," and only "[s]ome are lewd." ROA.446. If officials can "assume" that speech "might" be unlawful, ROA.447, no speech on campus—where keeping discourse free from official edict is critical—is safe. Curbing that danger from censorship-by-speculation is one reason the First Amendment bars prior restraints.

---

[6] The University's policy barring "lewd[] or indecent" behavior, ROA.484, fails to identify what those terms mean, rendering it unconstitutionally vague and overbroad. *Carico Invs., Inc. v. Tex. Alcoholic Bev. Comm'n*, 439 F. Supp. 2d 733, 748–49 (S.D. Tex. 2006) (citing cases and holding a prohibition on "indecent" or "lewd" conduct "both vague and overbroad").

To that end, the *Shuttlesworth* objective-standards requirement exists not only to avoid unfettered censorship, but also to prevent the "*post hoc* rationalizations" that frustrate courts' ability to determine whether an administrator suppressing expression for legitimate or illegitimate reasons. *Lakewood*, 486 U.S. at 758. Without objective standards guiding administrators' authority to grant or deny permission to student events, there is no way to assess Wendler's "post hoc rationalizations" about conduct. Of course, the Court need not assess those at all—Wendler's enduring edict fixates on expression. ROA.265–67.

### C.    The bar on prior restraints fully applies to university administrators wanting to halt "divisive" expression in the name of "tolerance."

In *Healy v. James*, the Supreme Court rejected Wendler's argument that university administrators have broad leeway to impose prior restraints on student speech. 408 U.S. 169, 184 (1972); Wendler Br. 31–33, 39. There, the Supreme Court reasoned that university restrictions on the recognition of student organizations were a "prior restraint," despite the school's interests in preventing misconduct like the "widespread" violence and disorder on campuses in the late 1960s. *Healy*,

408 U.S. at 171. To pass constitutional muster, the Supreme Court stated, administrators must act "consistent with fundamental constitutional safeguards," as the "need for order" did not mean that "First Amendment protections should apply with less force on college campuses than in the community at large." *Id.* at 180.

As a result, President Wendler—like any other public official—bears the "heavy burden" of proving his prior restraint was necessary or restrained by objective standards, after the students' application satisfied administrative requirements. ROA.232–33 ¶¶ 99–101; *see Gay Student Servs.*, 737 F.2d at 1325 (striking down refusal to recognize student group based on ideology as a prior restraint); *Pro-Life Cougars v. Univ. of Hous.*, 259 F. Supp. 2d 575, 583–84 (S.D. Tex. 2003) (granting preliminary injunction against prior restraint on campus public forum that lacked objective standards). Wendler has failed to meet his "heavy burden."

At the same time, President Wendler effectively tells the Court, "trust me," demanding broad deference for administrators to separate the good expression from the bad. Wendler Br. 31–33, 39. While Wendler might fancy himself a campus Comstock, the First Amendment wisely

recognizes that public officials like him cannot make "principled distinctions" between the offensive and inoffensive. *Cohen v. California*, 403 U.S. 15, 25 (1971). This is as true on university campuses as it is in the "community at large." *Healy*, 408 U.S. at 180. Thus, campus officials cannot single out speech they consider "indecent" from that they consider in "good taste" just to censor it. *Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667, 668–70 (1973) (per curiam).

Upholding that principle is as important as ever. As this Court recently observed, "our current national condition" has seen administrators "in a spirit of panicked damage control" trade expressive principles for "hasty and disproportionate punishment." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 339 (5th Cir. 2020). And allowing administrators to determine whether "the juice is worth the squeeze" of free expression is an invitation to abuse.[7] These campus censors regularly retreat into the same vague and infantilizing justifications Wendler gives: that expression might be "harassing" or "divisive" (Wendler Br. 3);

---

[7]    Cameron Ehsan, *Stanford President Renews Commitment to Academic Freedom Amid Law School Controversy*, Stanford Daily (Apr. 3, 2023), https://stanforddaily.com/2023/04/03/stanford-president-renews-commitment-to-academic-freedom-amid-law-school-controversy (administrator questioning whether "the juice was worth the squeeze" in allowing a federal judge to address law students) [Permalink: https://perma.cc/TV8N-6LME].

contrary to some ephemeral "educational purpose" (*id.* at 31); or unsafe for coddled young adults (*id.* at 35).[8]

In higher education, it is student speech—not administrators' authority—that is unfettered. *Coll. Republicans at S.F. State Univ. v. Reed*, 523 F. Supp. 2d 1005, 1015–16 (N.D. Cal. 2007) (acknowledging the "special significance" free expression at universities, unlike primary and secondary schools.) As recent history shows, any other outcome will embolden public university officials to silence unpopular speech on campus, whether it is drag shows or pro-life advocacy.[9] For these students, the First Amendment is the last line of defense against administrators cowed by students, faculty, lawmakers, donors, social media, and squeaky wheels. This case provides an opportunity for the Court to affirm its "especially vigilant" protection of students' expressive

---

[8]    Universities do not serve *exclusively* educational functions. Instead, they are a microcosm of the broader community. The student center housing Legacy Hall reflects that, which the University describes as students' "Living Room" and opens to students' expressive events. ROA.221–24 ¶¶ 33–34, 36–41; *see also* W. Tex. A&M Univ., *Mission Statement*, https://www.wtamu.edu/student-life/jbk-student-center/jbk-about-us.html [Permalink: https://perma.cc/W8WJ-MRTS].

[9] *E.g., Flores v. Bennett*, 635 F. Supp. 3d 1020 (E.D. Cal. 2022), *aff'd*, No. 22-16762, 2023 WL 4946605 (9th Cir. Aug. 3, 2023).

freedom. *Speech First*, 979 F.3d at 339. Plaintiffs ask the Court to do so and reverse.

## IV. Legacy Hall Is a Designated Public Forum Under University Policy and Practice, Which Wendler Ignores.

Wendler concedes that policy and practice control the classification of a forum, but he overlooks both here to argue—for the first time—that Legacy Hall is a limited public forum. Wendler Br. 23–29. Not so. The University opens Legacy Hall to students and the public for expressive use, without limitations on content. Because both policy and practice show that Legacy Hall is a designated forum open to student performances, Wendler's content- and viewpoint-based ban must meet strict scrutiny. *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). And even if Legacy Hall is instead a limited public forum, Wendler's ban must still meet strict scrutiny, not the least because it is viewpoint-driven.

### A. University policy and practice establish Legacy Hall as a designated public forum.

A forum's classification turns on the government's "policy and practice" and the venue's "compatibility with expressive activity." Wendler Br. 27 (quoting *Walker v. Tex. Div., Sons of Confederate*

*Veterans, Inc.*, 576 U.S. 200, 215–16 (2015)). Plaintiffs identified both university policies broadly designating campus indoor venues for expressive use by students and the public, and practices confirming that Legacy Hall is dedicated for expressive activity. Appellants' Br. 47–48. But Wendler fails to engage those policies and practices.

Instead, Wendler insists that *traditional* public forum status should not be extended to a university theater. Wendler Br. 25–26. But that has no bearing on whether Legacy Hall is a *designated* public forum. And if Wendler is implying that Legacy Hall cannot be a designated public forum, this Court's precedent shows he is wrong.

When the University opens a venue to expressive activity with only "minimal" limits on speech, that "broad . . . guarantee of expressive freedom" establishes a designated—not limited—public forum. *Justice for All v. Faulkner*, 410 F.3d 760, 768–69 (5th Cir. 2005). So when University policy applies a broad guarantee of expressive freedom to its "land and buildings" (ROA.272–73), its venues are designated public fora. *See Justice for All*, 410 F.3d at 766 & n.8 (forum classification is particular to a given space, not one classification for "an entire university campus"). And that includes Legacy Hall.

The University also holds out and uses Legacy Hall as a theater for student *and* public use, underscoring its status as a designated public forum. ROA.221 ¶¶ 32–34. In fact, the University promotes the hall for "events with live bands or live music" or to otherwise "entertain" people— for "events like[] concerts, press conferences, proms and weddings." *Id.* And students and the public use Legacy Hall for a range of expressive performances, including past drag shows, illustrating this space's "compatibility with the speech at issue." *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001) (citation omitted).

For example:

- Male ("Big Man on Campus") and female ("Miss Black & Gold") beauty pageants in Legacy Hall (ROA.345–50);

- The 2017-2019 "Mr. and Ms. West Texas Drag Show" performances in Legacy Hall and the 2012 "Buff-a-Woah" drag show in the JBK Student Center (ROA.355–60);

- The annual "University SING" performance competition in Legacy Hall (ROA.361–67);

- A local church group's "Community Night of Worship and Prayer" in Legacy Hall (ROA.370–73);

- A local high school's "Casino Night" dance in Legacy Hall (ROA.387);

- Magic show (ROA.404), galas for local organizations (ROA.369; ROA.389), and musical performances by opera singers and rock bands alike (ROA.383; ROA.379).

In sum, Legacy Hall is a designated public forum open to a wealth of expressive performances, including those like drag shows that use loud music, lights, and other theatrical features.

### B. Wendler's ban is subject to strict scrutiny even if Legacy Hall is a limited public forum.

A limited public forum is a designated forum reserved to particular speakers or subjects. *Walker*, 576 U.S. at 215. But because Legacy Hall is open for public use and not limited to any particular subject, it is not a limited public forum. Again, University policy and practice disproves Wendler's claim that Legacy Hall is "not open to the general public." Wendler Br. 9; *supra* Section IV.A. The University promotes the venue as open to the public for events, and the record shows many times that non-students have used Legacy Hall for expressive activities. ROA.221 ¶¶ 32–34; ROA.369; ROA.371; ROA.375; ROA.377; ROA.381.

Nor is Legacy Hall a public forum limited to particular subjects. University policy makes it open to "any special event." ROA.269. And it is in practice, too, as the hall hosts events like worship services, concerts, and beauty pageants. Thus, Wendler's genre-specific ban on campus drag

shows does not convert the venue into a limited forum, as the forum's classification turns on "*consistent* practice, not each exceptional regulation that departs from the consistent practice." *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 118 (5th Cir. 1992).

Wendler misrelies on *Christian Legal Society v. Martinez* ("*CLS*"). *See* Wendler Br. 23 (citing 561 U.S. 661 (2010)). *CLS* analyzed a student group's exclusion from a narrow type of forum—recognition of student organizations—that neither side disputed was a limited public forum. *See* 561 U.S. at 679. By contrast, all signs point to Legacy Hall being a designated public forum open to *anyone,* not just students. Wendler offers no authority extending *CLS* to anything but a limited public forum for recognizing student organizations. *See* Wendler Br. 23–25.

The facts in *CLS* diverge even further from those here. The student group in *CLS* sought "not parity with other organizations, but a preferential exception from [University] policy" that required registered organizations "to open eligibility for membership and leadership to all students." 561 U.S. at 668–69. But Plaintiffs seek no preferential exception. They simply seek parity with all other recognized student groups (and the public) under university policy and practice dedicating

Legacy Hall to expressive activity. Texas policy demands that parity, too, barring universities from "deny[ing] [student] organization[s] any benefit generally available to other student organizations" because of its viewpoint. Tex. Educ. Code § 51.9315(g).

That disparity highlights another reason why *CLS* does not help Wendler: His edict "singles out" drag performers because he finds their message offensive, unlike the policy the Supreme Court found neutral in *CLS*. 561 U.S. at 685. That viewpoint discrimination echoes the unconstitutional actions in *Papish* and *Rosenberger*, not the policy in *CLS*. *Papish*, 410 U.S. at 667–70; *Rosenberger*, 515 U.S. at 829. So even if Legacy Hall is a limited public forum, Wendler's viewpoint-based ban must fall. All the more because it triggers strict scrutiny by excluding drag performers "who fall[] within the class to which" Legacy Hall "is reserved." *Justice for All*, 410 F.3d at 766–67 (quoting *Ark. Educ. Television Comm'n. v. Forbes*, 523 U.S. 666, 677 (1998)); *see also Widmar v. Vincent*, 454 U.S. 263, 269–270 (1981). Wendler fails to meet that demanding standard.

**V.    Wendler's Silence on Strict Scrutiny Concedes His Ban Fails It.**

Here, all roads lead to strict scrutiny. Wendler's ban is a prior restraint, so it must satisfy strict scrutiny. *See supra* Section III(A). It is a content-based limit on expression in a designated public forum, so it must satisfy strict scrutiny. *See supra* Section IV(B). Even if Legacy Hall is limited to certain speakers, Wendler's ban must satisfy strict scrutiny because it is viewpoint-discriminatory and because Plaintiffs and their performance fall squarely within the forum's purpose. *See supra* Sections II, IV(B). Yet Wendler makes no effort to show that the ban is "necessary to serve a compelling state interest" and narrowly tailored to achieve that purpose. *Widmar*, 454 U.S. at 270.

**A.    Wendler's blanket ban on drag shows serves no compelling interest.**

Because Wendler ignores that his ban is a prior restraint in a designated public forum, it is hard to pinpoint an interest he believes requires his ban. That alone falls well short of "specifically identify[ing] an 'actual problem' in need of solving," as strict scrutiny requires. *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2010) (citation omitted). Wendler offers a hodgepodge of justifications, but none present so

compelling a problem to warrant a content-based prior restraint, let alone one based on Wendler's preferred ideology.

To start, Wendler does not suggest that drag performances fall into a categorical exception to the First Amendment, including obscenity. *See id.* at 790–94 (surveying the categorical exceptions in explaining why an interest in protecting children does not justify restricting video games). Nor does Wendler try to defend the district court's conclusion that he can curtail Plaintiffs' protected expression to shield minors from "sexualized" speech. *See* ROA.854–55. And for good reason: Public officials cannot curtail adults' speech to childproof society. *See* Appellants' Br. 56–59 (citing, among others, *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 127–28 (1989)).

That principle doesn't wilt on a public university campus. *Papish*, 410 U.S. at 667–70 (holding that "conventions of decency" cannot justify campus censorship, over dissent's qualms, at 676, about "lewd" speech). While Wendler quibbles with whether *Papish* bears on expressive conduct (Wendler Br. 19), he misses the point. College officials cannot stifle students' expression, whether on the printed page or on the stage, on the basis that it is "vulgar," "lewd," or "indecent." *Id.*

Likewise, Wendler's defense of censorship because he thinks Plaintiffs' expression will "harass women" fails. ROA.266. Muzzling expression that offends or disparages is unconstitutional viewpoint discrimination, even assuming it flows from an interest in curbing harassment. *See Matal*, 582 U.S. at 243; *Speech First*, 979 F.3d at 337, 337 n.16 (doubting that an interest in preventing harassment is enough to restrict student expression, even if it meets the "severe, pervasive, and objectively offensive" standard set forth *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). That interest in preventing harassment is especially weak with expression in front of a willing audience in an enclosed space, like Plaintiffs' drag performance.

This leaves only Wendler's unsupported, after-the-fact argument that he wanted to prevent lewd conduct. But that is not an "'actual problem' in need of solving." *Brown*, 564 U.S. at 786. Only *if* misconduct occurs can the University enforce its policy against it. As *Southeastern Promotions* affirms, concerns about potential lewd conduct do not justify a prior restraint on theatrical performance. 420 U.S. at 555.

### B.    Wendler's briefing shows his ban is not narrowly tailored.

Wendler makes no attempt to argue that his ban is narrowly tailored to any interest. Nor does he address how his ban is underinclusive, like it not reaching other expression that might "denigrate or demean" women. *See* Appellants' Br. 59–60. Instead, his brief reveals means short of a ban on drag performances that could address any interest, like punishing misconduct only *if* it occurs. Wendler Br. 36 (citing interest in penalizing "lewd, or indecent" conduct).

Because Wendler identifies no need for his ban, no compelling interest supporting it, and no argument it is narrowly tailored, it fails strict scrutiny. And that holds even if Legacy Hall is limited to certain speakers or content. *Chiu*, 260 F.3d at 347. In excluding one genre of performance from Legacy Hall's stage while allowing any other, Wendler fails to "respect the lawful boundaries" of the forum. *Rosenberger*, 515 U.S. at 829. For that reason, Wendler is violating the First Amendment even under a less demanding "reasonable" restriction standard for limited public forums. *See id.* Indeed, the prior restraint is unreasonable, lacking the required "neutral criteria" also required in limited public forums to avoid the dangers of "unbridled discretion." *Freedom from*

*Religion Found. v. Abbott*, 955 F.3d 417, 427–29 (5th Cir. 2020) (citing *Lakewood*, 486 U.S. at 758, 760). And of course, Wendler's ban is viewpoint-discrimination, prohibited in any forum. *Rosenberger*, 515 U.S. at 829.

## VI. Wendler's Admission That He Will Continue Enforcing the Drag Show Ban Negates His Other Arguments.

Wendler argues that a preliminary injunction is unnecessary and barred by sovereign immunity because it would not address an "ongoing" violation of law. Wendler Br. 40. But Wendler confesses he will again censor Plaintiffs when they seek to hold the same event on March 22, 2024 that Wendler cancelled in March 2023. In a media interview, Wendler pledged that he would not do "anything any differently." ROA.623 at 25:00–27:47. Here, he defends his rationale and acknowledges his "rejection of future drag shows." Wendler Br. 32. And Wendler justifies it all through a claimed final authority on University policy, with the power to "assess" the content of planned shows and deny Plaintiffs' "application" to hold their show. Wendler Br. 1–2, 23, 36, 39, 41.

In short, Wendler confirms that he subjects student events to an ongoing system of prior restraints where he is the ultimate arbiter. That

is more than enough to establish irreparable harm and a balance of the equities in Plaintiffs' favor. So too does it show an ongoing violation of Federal law for which sovereign immunity is no shield. *Freedom from Religion Found.*, 955 F.3d at 424–25.

## CONCLUSION

President Wendler has appointed himself censor-in-chief, aiming to cleanse campus "culture" of expression he dislikes. The First Amendment does not tolerate this brazen abuse of power. The Court should reverse, end the ongoing harm to Plaintiffs' expressive freedoms, and restore the First Amendment at West Texas A&M.

Dated: January 16, 2024

Respectfully,

/s/ JT Morris
JT Morris
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
700 Pennsylvania Ave., S.E., Ste. 230
Washington, D.C. 20003
Tel: (215) 717-3473
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

Adam Steinbaugh
Jeffrey D. Zeman
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION

510 Walnut St., Suite 900
Philadelphia, PA. 19106
Tel:   (215) 717-3473
adam@thefire.org
jeff.zeman@thefire.org

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

This certifies that on January 16, 2024, in compliance with Rules 25(b) and (c) of the Federal Rules of Appellate Procedure, the undersigned served the foregoing via the Court's ECF filing system on all registered counsel of record.


/s/ JT Morris
JT Morris
Attorney for Plaintiffs-Appellants

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. App. P. 32(a)(7)(B) because this brief contains 6,492 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Local Rule 32.2.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Local Rule 32.1 and the type style requirements of proportionally spaced typeface using 14-point Century Schoolbook font for text and 12-point Century Schoolbook font for footnotes.


Dated: January 16, 2024          /s/ JT Morris
                                                   JT Morris
                                                   Attorney for Plaintiffs-Appellants