NO. 23-10994

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

SPECTRUM WT; BARRETT BRIGHT; and LAUREN STOVALL,

*Plaintiffs-Appellants,*

v.

WALTER WENDLER; DR. CHRISTOPHER THOMAS; JOHN SHARP;
ROBERT L. ALBRITTON; JAMES R. BROOKS; JAY GRAHAM; TIM
LEACH; BILL MAHOMES; ELAINE MENDOZA; MICHAEL J.
PLANK; CLIFF THOMAS; DEMETRIUS L. HARRELL, JR.; and
MICHAEL A. HERNANDEZ, III,
*Defendants-Appellees.*

## APPELLANTS' OPPOSED MOTION FOR
## INJUNCTION PENDING APPEAL

### Expedited Consideration Requested by February 29, 2024

On Appeal from the United States District Court for the
Northern District of Texas, Civil Action No. 2:23-CV-48
Hon. Matthew J. Kacsmaryk Presiding

JT Morris
  *Counsel of Record*
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave. S.E.,
Suite 340
Washington, D.C. 20003
Tel: (215) 717-3473
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

Adam Steinbaugh
Jeffrey D. Zeman
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
510 Walnut St.
Suite 900
Philadelphia, PA. 19106
Tel: (215) 717-3473
adam@thefire.org
jeff.zeman@thefire.org

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PARTIES

The cause number and style of the case is No. 23-10994, *Spectrum WT v. Wendler* (USDC Civ. No. 2:23-CV-48, Northern District of Texas).

The undersigned counsel of record certifies that the following listed persons or entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellants**
Spectrum WT
Barrett Bright
Lauren Stovall

**Attorneys for Plaintiffs-Appellants**
JT Morris
Conor T. Fitzpatrick
Foundation for Individual Rights and Expression
700 Pennsylvania Ave. SE, Suite 340
Washington, DC 20003

Adam Steinbaugh
Jeffrey Daniel Zeman
Foundation for Individual Rights and Expression
510 Walnut St., Suite 900
Philadelphia, PA 19106

**Defendants-Appellees**
Dr. Walter Wendler
Dr. Christopher Thomas
John Sharp

Robert L. Albritton
James R. Brooks
Jay Graham
Michael A. Hernandez, III
Tim Leach
Bill Mahomes
Elaine Mendoza
Michael J. Plank
Cliff Thomas
Demetrius L. Harrell, Jr.

**Attorneys for Defendants-Appellees**
Allison Marie Collins
Joseph N. Mazzara
Heather Lee Dyer
Charles Kenneth Eldred
Amy S. Hilton
Christopher D. Hilton
Drew Anne Beglau
Monroe David Bryant, Jr.
Munera A-Fuhaid
Zachery Berg
Office of the Attorney General of Texas
P.O. Box 12548
Capitol Station
Austin, TX 78711

**Other Interested Parties**
West Texas A&M University
Texas A&M University System

**Amici Curiae**
Secular Student Alliance
American Civil Liberties Union of Texas
Equality Texas
SMU Dedman School of Law First Amendment Clinic

**Attorney for Amicus Curiae Secular Student Alliance**
Samuel T. Grover
Freedom From Religion Foundation, Inc.
P.O. Box 750
Madison, Wisconsin 53701

**Attorneys for Amici Curiae American Civil Liberties Union of Texas and Equality Texas**
Brian Klosterboer
Chloe Kempf
Thomas Buser-Clancy
Adriana Piñon
American Civil Liberties Union Foundation of Texas
P.O. Box 8306
Houston, TX 77288

**Attorneys for Amicus Curiae Southern Methodist University Dedman School of Law First Amendment Clinic**
Peter Steffensen
SMU Dedman School of Law First Amendment Clinic
P.O. Box 750116
Dallas, TX 75275-0116

Thomas S. Leatherbury
Thomas S. Leatherbury Law, PLLC
Cumberland Hill School Building
1901 North Akard Street
Dallas, TX 75201-2305

Respectfully,

/s/ JT Morris
JT Morris
*Counsel of Record for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION AND NATURE OF EXIGENCY ................................. 1

BACKGROUND ...................................................................... 3

Spectrum WT has a message to share. ....................................... 3

West Texas A&M opens Legacy Hall to students and the public for
    expressive activities. ......................................................... 4

Spectrum WT's first drag show meets the university's criteria, but
    President Wendler cancels it and bans all drag shows.................. 5

Plaintiffs sue to stop Defendants' First Amendment violations............. 5

Spectrum WT plans a March 2024 drag show at Legacy Hall................ 6

Wendler defends the drag ban in the media and the courts.................. 7

The district court declines to expedite relief pending appeal. ............... 7

ARGUMENT.......................................................................... 8

I.    The First Amendment Protects Plaintiffs' Drag Shows................. 9

    A.    The First Amendment protects stage performance of all
        kinds. ..................................................................... 9

    B.    Because Plaintiffs' drag shows are inherently
        expressive, the First Amendment protects them. ................. 11

    C.    The context of Plaintiffs' PG-13 drag shows
        underscores why they are protected expression. ................. 14

    D.    *Rumsfeld v. FAIR* does not weaken First Amendment
        protection for drag shows. ............................................ 16

    E.    First Amendment protection for drag performance is
        just as robust at public universities. ................................ 17

II.    Because the First Amendment Protects Drag Performance, Plaintiffs Are Likely to Succeed on the Merits of Their Appeal. .............................................................. 19

    A.    The drag show ban is an unconstitutional prior restraint................................................................. 19

    B.    Defendants are engaging in viewpoint discrimination........ 21

    C.    Excluding Plaintiffs' drag show from campus public forums violates the First Amendment................................ 22

    D.    Defendants cannot meet strict scrutiny. ............................ 23

III.    Plaintiffs Will Suffer Irreparable Harm Absent Immediate Relief. .................................................................. 26

IV.    The Public Interest Favors an Injunction Pending Appeal. ......... 26

V.    Plaintiffs Request a Ruling by February 29, 2024. ....................... 27

CONCLUSION ................................................................. 27

CERTIFICATE OF CONFERENCE ....................................... 29

CERTIFICATE OF SERVICE ................................................ 29

CERTIFICATE OF COMPLIANCE ....................................... 30

# TABLE OF AUTHORITIES

## Cases

*Barnes v. Glen Theatre, Inc.,*
    501 U.S. 560 (1991)....................................................................... 12

*Bethel Sch. Dist. No. 403 v. Fraser,*
    478 U.S. 675 (1986)....................................................................... 18

*Brown v. Entm't Merchs. Ass'n,*
    564 U.S. 786 (2010)................................................................. 10, 13

*Canady v. Bossier Par. Sch. Bd.,*
    240 F.3d 437 (5th Cir. 2001) ...................................................... 14

*Christian Legal Soc. v. Martinez,*
    561 U.S. 661 (2010)....................................................................... 25

*Christian Legal Soc'y v. Walker,*
    453 F.3d 853 (7th Cir. 2006) ...................................................... 26

*Clark v. Cmty. for Creative Non-Violence,*
    468 U.S. 288 (1984)................................................................. 11, 14

*Cohen v. California,*
    403 U.S. 15 (1971)................................................................... 13, 24

*Elrod v. Burns,*
    427 U.S. 347 (1976)....................................................................... 26

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale,*
    901 F.3d 1235 (11th Cir. 2018) .................................................. 14

*Friends of Georges, Inc. v. Mulroy,*
    _ F. Supp. 3d _, 2023 WL 3790583 (W.D. Tenn. June 2, 2023) .......... 10

*Gay Student Svcs. v. Texas A&M Univ.,*
    737 F.2d 1317 (5th Cir. 1984) ................................................. 2, 20

*HM Fla.-ORL, LLC v. Griffin,*
    _ F. Supp. 3d _, 2023 WL 4157542 (M.D. Fla. June 23, 2023) ........... 10

*Holloman ex rel. Holloman v. Harland*,
370 F.3d 1252 (11th Cir. 2004) .......................................................... 13

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
515 U.S. 557 (1995)........................................................................ 11, 12

*Imperial Sovereign Ct. of Mont. v. Knudsen*,
_ F. Supp. 3d _, 2023 WL 6794043 (D. Mont. Oct. 13, 2023)............. 10

*Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*,
993 F.2d 386 (4th Cir. 1993) ......................................................... 22, 25

*Justice for All v. Faulkner*,
410 F.3d 760 (5th Cir. 2005) ............................................................... 22

*Kennedy v. Bremerton Sch. Dist.*,
142 S. Ct. 2407 (2022) ......................................................................... 12

*Martin v. Parrish*,
805 F.2d 583 (5th Cir. 1986) ............................................................... 18

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*,
584 U.S. 617 (2018)............................................................................... 9

*Matal v. Tam*,
582 U.S. 218 (2017)........................................................................ 2, 21

*McCauley v. Univ. of the V.I.*,
618 F.3d 232 (3d Cir. 2010) ................................................................ 19

*McCoy v. La. State Bd. of Educ.*,
332 F.2d 915 (5th Cir. 1964) ................................................................. 3

*Neb. Press. Ass'n v. Stuart*,
427 U.S. 539 (1976).............................................................................. 19

*Norma Kristie, Inc. v. City of Oklahoma City*,
572 F. Supp. 88 (W.D. Okla. 1983) ................................................. 9, 10

*Papish v. Bd. of Curators of the Univ. of Mo.*,
410 U.S. 667 (1973)....................................................................... 17, 18

*U.S. v. Playboy Ent. Grp.,*
   529 U.S. 803 (2000)................................................................ 24

*Reed v. Town of Gilbert, Ariz.,*
   576 U.S. 155 (2015)................................................. 19, 23, 24

*Robinson v. Hunt County,*
   921 F.3d 440 (5th Cir. 2019) ............................................ 21

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
   592 U.S. 14 (2020)............................................................ 8, 26

*Schad v. Borough of Mount Ephraim,*
   452 U.S. 61 (1981)......................................................... 10, 17

*Se. Promotions v. Conrad,*
   420 U.S. 546 (1975)................................................ 2, 9, 19, 21

*Shuttlesworth v. City of Birmingham,*
   394 U.S. 147 (1969)............................................................. 21

*Speech First, Inc. v. Fenves,*
   979 F.3d 319 (5th Cir. 2020) ....................................... 17, 26

*Tagami v. City of Chicago,*
   875 F.3d 375 (7th Cir. 2017) ............................................ 15

*Texas v. Johnson,*
   491 U.S. 397 (1989)......................................................*passim*

*United States v. Schwimmer,*
   279 U.S. 644 (1929)............................................................... 2

*Widmar v. Vincent*
   454 U.S. 263 (1981)................................................ 22, 23, 24

*Zalewska v. County of Sullivan,*
   316 F.3d 314 (2d Cir. 2003) ............................................. 15

**Statutes**

28 U.S.C. § 1657(a) ................................................................. 1

Tex. Educ. Code § 51.9315(g) ...................................................... 4

**Rules**

Fed. R. App. P. 8(a)(2) ............................................................. 1, 8

5th Cir. R. 27 ........................................................................ 1

5th Cir. R. 27.4 ..................................................................... 1

N.D. Tex. Civ. L.R. 7.1(e)–(f) .................................................... 8

Under Fed. R. App. P. 8(a)(2), 28 U.S.C. § 1657(a), and Fifth Circuit Rules 27 and 27.4, Plaintiffs-Appellants move for an injunction pending appeal, and request a ruling by **February 29, 2024**. Plaintiffs moved for an injunction pending appeal in the district court on January 31, 2024. But the district court declined to expedite the motion, effectively failing to afford the relief requested. In this appeal from a denial of a preliminary injunction, Plaintiffs now seek immediate relief from this Court to protect their constitutional rights.

## INTRODUCTION AND NATURE OF EXIGENCY

Immediate action is needed from this Court to stop government censorship at a public university campus. Before Plaintiffs even took the stage for a PG-13 charity drag show in March 2023, West Texas A&M President and Defendant Walter Wendler canceled it. In a written edict explaining his decision, Wendler banned drag performances from campus, decrying them as "artistic expression which denigrates . . . women," all while admitting the "law of the land" compelled him not to censor Plaintiffs. ROA.265–67.

In his recent brief on appeal, Wendler declared his "rejection of future drag shows." Doc. 94, Wendler Br. 32. His words confirm that

1

Defendants will again spurn the Constitution and cancel Plaintiffs' annual drag show set for March 22, 2024, in a campus venue open to students and the public. All because Wendler thinks the performance's message will "demean" and "mock[]" others. ROA.265–67.

But as the Supreme Court reminded us, even with "[s]peech that demeans . . . the proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we hate.'" *Matal v. Tam*, 582 U.S. 218, 246 (2017) (plurality opinion) (quoting *United States v. Schwimmer*, 279 U.S. 644, 655 (1929) (Holmes, J., dissenting)). The Supreme Court upheld that formative constitutional principle when striking down a viewpoint-driven prior restraint over a stage performance that the First Amendment squarely protects. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 549–52 (1975). And this Court upheld that principle when striking down a viewpoint-driven prior restraint that public university censors imposed on a student group. *Gay Student Servs. v. Texas A&M Univ.*, 737 F.2d 1317, 1325 (5th Cir. 1984).

The Court should uphold that principle here, too, and grant an injunction pending appeal against Defendants' viewpoint- and content-based prior restraint on their protected stage performance. Plaintiffs are

likely to prevail on their appeal. The district court erred in denying Plaintiffs a preliminary injunction and concluding that drag shows—stage performances no less expressive under the Constitution than ballets or concertos—lack First Amendment protection.

Swift relief is critical. This Court has enjoined school officials pending appeal before, when a delay would effectively deny university students their "constitutional rights for another school term or longer." *McCoy v. La. State Bd. of Educ.*, 332 F.2d 915, 917 (5th Cir. 1964). The Court should do that here, so that Defendants cannot deny Plaintiffs' First Amendment right to take the stage next month.

Plaintiffs ask the Court to enjoin Defendants, pending appeal, from denying Plaintiffs' use of campus facilities, including Legacy Hall, based on the content, viewpoint, or message of Plaintiffs' planned March 22, 2024 drag show performance.

## BACKGROUND

**Spectrum WT has a message to share.**

Spectrum WT is a recognized student organization at West Texas A&M focused on "rais[ing] awareness of the LGBT+ community" and "promot[ing] diversity, support, and acceptance on campus and in the

surrounding community." ROA.215 ¶¶ 10–11. To spread its message, it hosts events, like proms, movie nights, and discussions about LGBTQ+ history. ROA.216 ¶ 13. Plaintiff Barrett Bright is a senior at West Texas A&M and Spectrum WT's President. ROA.216 ¶ 14.

**West Texas A&M opens Legacy Hall to students and the public for expressive activities.**

West Texas A&M policy, meeting Texas law, prohibits "deny[ing] [a student] organization any benefit generally available to other student organizations" because of the "political, religious, philosophical, ideological, or academic viewpoint expressed by the organization or of any expressive activities of the organization." ROA.340; Tex. Educ. Code § 51.9315(g). One of those benefits is reserving university facilities for events. ROA.220–21 ¶¶ 28, 32–34. The facilities include Legacy Hall, a performance venue that both student organizations and the public have regularly used for expressive activity—including drag shows, beauty pageants for men and women, singing competitions, concerts, and dances. ROA.220–21 ¶¶ 33–34, 40.

**Spectrum WT's first drag show meets the university's criteria, but President Wendler cancels it and bans all drag shows.**

In November 2022, Spectrum WT reserved Legacy Hall for its first annual PG-13 drag show, with ticket proceeds to benefit an LGBTQ+ suicide prevention charity. ROA.229–31 ¶¶ 74, 85–86, 91–93. University staff supported Spectrum WT's efforts throughout the facility request process, helping it navigate the steps to move forward with the drag show. ROA.230–33 ¶¶ 86–94, 99–100. Spectrum WT received "Tentative Confirmation" for its event on February 27, 2023, and was prepared to complete the final steps to hold the event. ROA.230–33 ¶¶ 91, 99–101.

On March 20—just 11 days before the show—President Wendler canceled it. ROA.233–34 ¶ 105; ROA.265–67. Wendler published an edict proclaiming that "West Texas A&M will not host a drag show." ROA.265. Declaring that a "harmless drag show" was "[n]ot possible," Wendler decried drag as a "demeaning" and "divisive" form of "slapstick sideshow" used to "stereotype," and "mock[]" "womanhood." ROA.265–67.

**Plaintiffs sue to stop Defendants' First Amendment violations.**

On March 24, 2023, Plaintiffs sued to enjoin Defendants' ban. ROA.16. Plaintiffs also moved for a temporary restraining order and preliminary injunction. ROA.126–27. As the March 31 show date neared

without a TRO ruling, Plaintiffs made the difficult decision to move the event off-campus so their charity show could go on. ROA.236 ¶¶ 122–126.

**Spectrum WT plans a March 2024 drag show at Legacy Hall.**

Almost a year ago, Spectrum WT applied to hold a second annual drag show on March 22, 2024. Ex. A, Decl. of Barrett Bright ("Bright Decl."), ¶ 17. Just like the 2023 performance, Spectrum WT is planning a PG-13 performance in Legacy Hall and it is meeting the requirements to perform at the campus venue. *Id.* ¶¶ 17–28.

Seeking to prevent Defendants from imperiling the upcoming March 2024 drag show, Plaintiffs amended their complaint on April 18, 2023, ROA.212–75, and their preliminary injunction motion, two days later. ROA.281–409. The district court denied Plaintiffs' motion on September 21, 2023, effectively holding that Plaintiffs' drag shows lack First Amendment protection. ROA.849–74. It also stated it was "doubtful that Plaintiffs will suffer irreparable harm in the coming months while this issue is litigated." ROA.873.

Plaintiffs timely appealed on September 26, 2023, and moved to expedite the appeal in this Court in the hopes of securing injunctive relief before their upcoming March 22, 2024 show. Doc. 1, 12. The Court denied

the motion. Doc. 22. The merits appeal is fully briefed but has not been set for oral argument.

**Wendler defends the drag ban in the media and the courts.**

After blocking Plaintiffs' 2023 drag show, President Wendler revealed in a television interview his determination to ban campus drag shows: "I wouldn't have done anything any differently." ROA.623 at 25:11–27:50. And most recently, Wendler echoed his ongoing resolve, acknowledging to this Court his "rejection of future drag shows." Doc. 94, Wendler Br. 32. Wendler claimed he and other "officials" (presumably Defendants Vice President Christopher Thomas and Chancellor John Sharp) have unfettered authority to "assess" the content of students' planned events and deny Plaintiffs' "application" to host any future event. *Id.* at 1–2, 23, 36, 39, 41.

**The district court declines to expedite relief pending appeal.**

On January 31, 2024, Plaintiffs moved for an injunction pending appeal in the district court under Fed. R. Civ. P. 62(d). Ex. B. Plaintiffs informed the district court that if it did not grant relief, they would seek an injunction pending appeal in this Court by February 9, 2024. *Id.* The district court declined to expedite the motion, stating it would follow the

usual briefing timeline under local rules. Ex. C. Given the 21 days afforded Defendants to respond and the 14 days for Plaintiffs to reply, the district court likely would not rule until March 7 at the earliest. *Id.; see also* N.D. Tex. Civ. L.R. 7.1(e)–(f). That timeline would prevent Plaintiffs from seeking meaningful relief from this Court or the Supreme Court before March 22 if the district court stands by its prior decision. *See infra* Section V.

## ARGUMENT

This Court may grant an injunction during a pending appeal when, as here, the moving party initially, but unsuccessfully, petitioned the district court for the requested relief. Fed. R. App. P. 8(a)(2).

Plaintiffs are entitled to an injunction pending appeal because they demonstrate: (1) a likelihood of success on the merits; (2) they will suffer irreparable injury if an injunction is not granted; and (3) the injunction will serve the public interest of vindicating First Amendment rights. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 16–20 (2020) (granting an injunction pending appeal, assessing each factor, and finding "[t]here can be no question that the challenged restrictions, if enforced, will cause irreparable harm" to First Amendment freedoms).

## I. The First Amendment Protects Plaintiffs' Drag Shows.

The Supreme Court has "long recognized" the First Amendment's "protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). As Justice Thomas explained, the First Amendment protects "a wide array of conduct that can qualify as expressive, including nude dancing, burning the American flag . . . wearing a black armband, conducting a silent sit-in, refusing to salute the American flag, and flying a plain red flag." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 657 & n.1 (2018) (Thomas, J., concurring) (collecting cases). If the First Amendment protects all of that, it protects Plaintiffs' drag performance, and the district court erred holding otherwise. ROA.858–62.

### A. The First Amendment protects stage performance of all kinds.

When Americans get on stage and express themselves, the First Amendment protects it, even if it is not a government official's cup of tea. *See Se. Promotions*, 420 U.S. at 549–50 (striking down prior restraint on stage performance based on officials' personal values). That protection extends to drag performance. *E.g.*, *Norma Kristie, Inc. v. City of Okla. City*, 572 F. Supp. 88, 91–92 (W.D. Okla. 1983) ("Any inequality in

aesthetic value between [a drag show] and a musical or play is a distinction without a difference.").[1] Like any stage performance, "[d]rag shows express a litany of emotions and purposes, from humor and pure entertainment to social commentary on gender roles." *Woodlands Pride, Inc. v. Paxton*, 2023 WL 6226113, at *14 (S.D. Tex. Sept. 26, 2023).[2]

So whether one views drag performance as political commentary, high art, or slapstick entertainment, the First Amendment protects it. The Supreme Court has "long recognized that" when it comes to First Amendment protection, "it is difficult to distinguish politics from entertainment, and dangerous to try." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011). Likewise, when art meshes with "live entertainment, such as musical and dramatic works," it "fall[s] within the First Amendment guarantee." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981).

---

[1] *See also Friends of Georges, Inc. v. Mulroy*, 2023 WL 3790583 (W.D. Tenn. June 2, 2023); *Imperial Sovereign Ct. of Mont. v. Knudsen*, 2023 WL 6794043 (D. Mont. Oct. 13, 2023); *HM Fla.-ORL, LLC v. Griffin*, 2023 WL 4157542 (M.D. Fla. June 23, 2023); *S. Utah Drag Stars v. City of St. George*, 2023 WL 4053395 (D. Utah June 16, 2023). *Imperial Sovereign, Friends of Georges*, and *HM Fla.-ORL* are on appeal.

[2] Texas has appealed this ruling. *Woodlands Pride, Inc. v. Paxton*, No. 23-20480 (5th Cir. Oct. 3, 2023).

**B.    Because Plaintiffs' drag shows are inherently expressive, the First Amendment protects them.**

First Amendment protection for expressive conduct like drag performance does not turn on genre or the mode of expression but whether it is inherently expressive. *Johnson*, 491 U.S. at 406. If "conduct . . . is intended to be communicative" and "in context, would reasonably be understood by the viewer to be communicative," the First Amendment protects it. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984) (citations omitted). Like any stage performance, Plaintiffs' audience understands their shows are "communicative," and that merits First Amendment protection.

Thus, Plaintiffs are likely to succeed on the merits because the district court departed from that standard in three ways. First, it held for the First Amendment to apply, expressive conduct must "obviously convey or communicate a discernable, protectable message." ROA.854. But the Supreme Court rejected that view: "[A] narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 569 (1995). Thus, even if "an observer" of Plaintiffs' drag show "may not discern that the performers' conduct communicates 'advocacy in favor of

LGBTQ+ rights,'" ROA.861, the First Amendment still protects Plaintiffs' drag shows, just as it protects a ballet or symphony even if some observers may not "discern" the performance's intended message.

Second, the district court concluded First Amendment expression requires an "'overtly political' message." ROA.853. Not so. The Free Speech Clause protects non-political expressive conduct from nude dancing at a strip club to kneeling in prayer. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991); *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 523–24 (2022).

Third, citing *Johnson*, the district court concluded "'campus protest' cases" require expressive conduct to "convey [an] 'intentional and overwhelmingly apparent' message." ROA.853 (citing cases). For one thing, neither *Johnson* nor the other cases it cited concerned a "campus protest," and in any event, the First Amendment is in full force at public universities. *See infra* Section II.E. And if an "intentional and overwhelmingly apparent message" were the standard, *Hurley* would not have affirmed, six years after *Johnson*, that the First Amendment "unquestionably" protects the abstract expression of Pollock, Schoenberg, and Carroll. *Hurley*, 515 U.S. at 569. What matters for First Amendment

protection is if "the reasonable person would interpret [expressive conduct] as *some* sort of message, not whether an observer would necessarily infer a *specific* message." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (silently raising fist during Pledge of Allegiance is expressive conduct).

Still, the district court reasoned "ballet, orchestra, paintings, sculptures," and other non-verbal expression would still be protected without *Hurley* because they "either 'convey a particularized message' or are 'works of fine art.'" ROA.859 n.14. But there is no constitutional difference between dancing on a stage in drag to Bruno Mars versus dancing in a tutu to Tchaikovsky. *See Brown*, 564 U.S. at 796 n.4 (explaining the difference between the "more cultured" Dante and the Mortal Kombat video game is not a "constitutional one[]").

The Founders forever divested government officials from imposing their artistic preferences on the public. *Cohen v. California*, 403 U.S. 15, 25 (1971) (the Constitution "leaves matters of taste and style so largely to the individual" because government officials "cannot make principled distinctions" between what is "palatable" or "distasteful"). Defendants are no exception.

**C.  The context of Plaintiffs' PG-13 drag shows underscores why they are protected expression.**

Any reasonable observer of Plaintiffs' drag show would interpret *some* message from the performance—as Wendler's edict shows. That is especially so considering that "in context," drag shows "would reasonably be understood by the viewer to be communicative." *Clark*, 468 U.S. at 294. Indeed, context is key when assessing First Amendment protection for expressive activity. *Johnson*, 491 U.S. at 405; *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 440 (5th Cir. 2001). For instance, context separates an expressive civil rights sit-in from sitting down and a picket line from walking. *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1241 (11th Cir. 2018).

To that end, the First Amendment squarely protects Plaintiffs' performance. Spectrum WT intends to communicate a message with performers wearing gender non-conforming clothes, on stage, dancing to themed music. Plaintiffs' audience would understand the performance as expressive. Plaintiffs' flyers for the event inform showgoers that it is a pro-LGBTQ+ event, by LGBTQ+ groups, in support of an LGBTQ+ charity. ROA.232 ¶ 94. Plaintiffs' performance is inherently expressive, and the context leaves no doubt.

Indeed, context highlights the district court's error in suggesting that drag shows are a mere "choice of dress." ROA.859 n.15 (citing *Zalewska v. County of Sullivan*, 316 F.3d 314, 320 (2d Cir. 2003)). Context separates an organized, choreographed drag show on stage under bright spotlights from choosing clothes, just as the stage distinguishes Cirque du Soleil from playing on the jungle gym at a park.

The district court also relied on a decision holding that a woman baring her breasts in public is not inherently expressive. ROA.861 (citing *Tagami v. City of Chicago*, 875 F.3d 375, 378 (7th Cir. 2017)). But in *Tagami*, no facts suggested onlookers would know the woman was using nudity to make a point. 857 F.3d at 378. Contrast that with the Supreme Court holding that nude dancing *on a stage* is protected expressive conduct, because live entertainment and mere public nudity are different. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). While Plaintiffs' PG-13 show is nowhere near nude dancing (let alone unprotected obscenity), the constitutional principle applies the same: stage performance is protected expression.

**D.** *Rumsfeld v. FAIR* **does not weaken First Amendment protection for drag shows.**

The district court held *Rumsfeld v. FAIR* means that "without accompanying political speech or dialogue," observers won't understand a drag show is "communicat[ing] . . . LGBTQ+ rights," rendering drag performance unprotected. ROA.860–61 & n.16. But *FAIR* is a compelled-speech case, not one limiting protection for expressive conduct. 547 U.S. 47, 62–65 (2006). True, the Supreme Court in *FAIR* noted that law schools excluding military recruiters was "expressive only because the law schools accompanied their conduct with speech explaining it." *Id.* at 66. But nowhere did it hold that an accompanying explanation divests *inherently expressive* conduct of First Amendment protection. Nor could it—an explanation often augments the message inherently expressive conduct conveys, like an inscription under a painting, or the liner notes of a music album. Johnny Cash's liner notes from *At Folsom Prison* did not divest his album of First Amendment protection. Nor would a painter at a gallery explaining the inspiration for their new work forfeit constitutional protection.

*FAIR* reaffirmed *Johnson*'s recognition that the First Amendment protects "inherently expressive" conduct. *Id.* Live entertainment, music,

and theatre—all intrinsic to drag shows—are inherently expressive. *Schad*, 452 U.S. at 65–66 (collecting cases). Getting on stage and performing *is* expression and has been since the Ancient Greeks took to the Athenian stage.

### E. First Amendment protection for drag performance is just as robust at public universities.

First Amendment protection for drag shows applies with no "less force on college campuses than in the community at large." *Healy v. James*, 408 U.S. 169, 180 (1972). The need to preserve adult college students' ability to "generate, debate, and discuss both general and specific ideas, hopes, and experiences" is why "courts must be especially vigilant against" limits on campus expression. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 339 (5th Cir. 2020) (vacating denial of a preliminary injunction against university harassment policy). The Court should exercise that vigilance here and end the ongoing ban on protected expression at West Texas A&M.

The Supreme Court's holding in *Papish* is instructive. *Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667 (1973) (per curiam). There, campus officials sanctioned a student after she published a campus newspaper with a cartoon on the cover, "depicting policemen raping the

Statue of Liberty and the Goddess of Justice." *Id.* at 667. Rejecting the dissent's rebuke about "lewd" speech, the Court held expression "on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Id.* at 670. If the First Amendment protected the *Papish* cartoon, it surely protects drag shows featuring clothed performers dancing to non-profane music. ROA.229–30 ¶¶ 76–83; Ex. A, Bright Decl. ¶ 19.

The district court erred by departing from *Papish* and turning instead to *Fraser*, a case regulating minors' speech in K–12 schools. ROA.863 (citing *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685 (1986)). The interests of universities and their adult students differ from elementary schools and their pupils. That's why the "teachings of *Tinker*, *Fraser*, *Hazelwood*, *Morse*, and other decisions involving speech in public elementary and high schools, cannot be taken as gospel in cases involving public universities."[3] *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 247 (3d

---

[3] This Court has once cited *Fraser* in the public college employment context, upholding discipline of a professor who cursed at and harassed his students. *Martin v. Parrish*, 805 F.2d 583, 585 (5th Cir. 1986). A narrow decision holding a university may punish an employee for hurling profanities at their students has no bearing here.

Cir. 2010). The captive audience of a K–12 classroom does not compare to a university campus's marketplace of ideas.

## II. Because the First Amendment Protects Drag Performance, Plaintiffs Are Likely to Succeed on the Merits of Their Appeal.

President Wendler's drag show ban violates the First Amendment three times over: It is a prior restraint, it discriminates based on viewpoint, and it discriminates based on content in a designated public forum. Strict scrutiny applies. *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015). And Defendants cannot meet it.

### A. The drag show ban is an unconstitutional prior restraint.

If there were ever a compelling basis for an injunction pending appeal, it is a prior restraint, "the most serious and least tolerable infringement on First Amendment rights." *Neb. Press. Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). President Wendler banned Plaintiffs' performance before they took the stage. That is a classic prior restraint, showing why Plaintiffs are likely to prevail on the merits of their appeal.

President Wendler's stance mirrors that of the censorial officials in *Southeastern Promotions.* 420 U.S. 546. There, a group asked to use a city-operated municipal auditorium to present the rock musical *Hair*. *Id.*

at 547. The auditorium directors denied the application, reasoning the play "was not in the best interest of the community" and the board would only "allow those productions which are clean and healthful and culturally uplifting, or words to that effect." *Id.* at 549. The Supreme Court struck down the officials' censorship as an unconstitutional prior restraint. Likewise, this Court should enjoin the unlawful prior restraint barring Plaintiffs' drag shows from campus forums because Wendler finds their message "mocking" and "derisive." ROA.266.

Indeed, this Court has before struck down a prior restraint flowing from a Texas A&M system administrator's subjective views. In *Gay Student Services v. Texas A&M University*, the administrator refused to recognize an LGBT student group based on his worry the group "would attempt to convey ideas about homosexuality." 737 F.2d at 1322. That was a prior restraint, this Court explained, because the administrator "attempt[ed] to predict in advance the content and consequences" of expression. *Id.* at 1325 (citation omitted).

So too is Wendler's edict an unconstitutional prior restraint, as it "predict[s] in advance" Plaintiffs' expression will be "demeaning" and "inappropriate." ROA.266–67. Even more so, Defendants are

maintaining an unconstitutional prior restraint by "regulating speech contingent on the will" of President Wendler, with no governing standard (much less a constitutional one) in sight. *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280 (5th Cir. 2003). Their ongoing ban on drag shows has no "narrow, objective, and definite standards to guide" officials and overcome the heavy presumption against prior restraints. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969) (citations omitted); *see also Se. Promotions*, 420 U.S. at 559–60 (finding the moral standards used to censor *Hair* failed *Shuttleworth*'s safeguards).

In sum, Defendants are censoring speech before it occurs based on Wendler's subjective moral judgments. That is an unconstitutional prior restraint, and the Court should enjoin it pending appeal.

## B.     Defendants are engaging in viewpoint discrimination.

President Wendler's ban on drag shows because he disagrees with their message—real or perceived—is unconstitutional viewpoint discrimination. "Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination." *Robinson v. Hunt County*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Matal*, 582 U.S. at 243–44).

President Wendler's words leave no doubt: He banned drag shows because he finds their message "derisive, divisive and demoralizing misogyny, no matter the stated intent." ROA.266. That is viewpoint discrimination. *Robinson*, 921 F.3d at 447; *Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386, 392 (4th Cir. 1993) (rejecting as unconstitutional viewpoint discrimination university's attempt to punish fraternity members for hosting an "ugly woman contest"). This Court should enjoin this viewpoint-based censorship at a public university pending appeal.

### C. Excluding Plaintiffs' drag show from campus public forums violates the First Amendment.

President Wendler's drag show ban is also unlawful content discrimination in a designated public forum. When a public university opens a space to student expressive activity, it creates a "designated public forum." *See Justice for All v. Faulkner*, 410 F.3d 760, 769 (5th Cir. 2005). Because West Texas A&M opens facilities like Legacy Hall to students, student organizations, and even the public for performances like theater, music, and dancing, ROA.221 ¶¶ 33–37, "the University must therefore satisfy the standard of review appropriate to content-based exclusions." *Widmar v. Vincent*, 454 U.S. 263, 270 (1981).

Under the First Amendment, "a government . . . has no power to restrict expression because of its message, its ideas, its subject matter, or its content" unless it satisfies strict scrutiny. *Reed*, 576 U.S. at 163 (cleaned up). A ban on drag shows is content based because it singles out a particular type of expression—drag—for "differential treatment," despite leaving similar expression, such as beauty pageants, cheerleading, and competitive dance, untouched. *Id.* at 169. And to survive strict scrutiny, Defendants "must show that [their] regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Widmar*, 454 U.S. at 270.[4] They fail to satisfy each element.

### D. Defendants cannot meet strict scrutiny.

Defendants' viewpoint- and content-based ban of campus drag shows fails strict scrutiny. And *Widmar* shows why. There, the Supreme Court explained that restrictions singling out a Christian student group from facilities "available for . . . registered student groups" was subject to "the most exacting scrutiny." *Id.* at 264–65, 276. Because the university

---

[4] Universities may impose content-neutral time, place, and manner restrictions on expression. Because West Texas A&M is prohibiting drag shows outright, it is content-based censorship.

unlawfully "discriminated against student groups and speakers based on their desire to use a generally open forum to engage in" protected expression, the Supreme Court concluded that the university's stated goal, "achieving greater separation of church and State," was not a compelling interest. *Id.* at 269, 277–78.

In the same way, advancing President Wendler's belief that drag shows promote "misogyny" is not a compelling state interest. ROA.266. Banning drag shows prevents no tangible harm to women. Anyone who might take offense at drag can "effectively avoid further bombardment of their sensibilities simply by averting their eyes." *Cohen*, 403 U.S. at 21. The government cannot wield its strong arm to enforce personal taste. *Id.*

Nor is Defendants' ban on drag shows narrowly tailored or the least restrictive means of furthering their goals. *See U.S. v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000) (content-based regulation must "choose[] the least restrictive means to further the articulated interest") (cleaned up). A content-based law is not narrowly tailored if it leaves untouched a significant amount of expression causing the same problem. *Reed*, 576 U.S. at 172. And Defendants have not banned music, books, or other

expression from campus which might demean women. *See Iota Xi*, 993 F.2d at 393 ("[A] public university has many constitutionally permissible means to protect female and minority students" short of censorship).

Nor can Defendants' censorship rest on a supposed interest in protecting children. *See* ROA.854–55. Plaintiffs' planned drag shows *prohibit* children from attending unless accompanied by a parent. ROA.229 ¶ 80; Ex. A, Bright Decl. ¶ 19. What's more, a supposed interest in protecting minors from PG-13 drag shows also fails narrow tailoring. For example, Defendants do not prevent student organizations from holding events showing PG-13 or R-rated movies if minors are present.

While Defendants might argue *Christian Legal Society Chapter of the University of California v. Martinez* applies, it does not. *See* Doc. 94, Wendler Br. at 32 (citing 561 U.S. 661 (2010)). The student group there sought "not parity with other organizations, but a preferential exemption from [University] policy." *Id.* at 668–69. Plaintiffs simply seek equal treatment with other student groups to engage in protected expression at Legacy Hall, as the First Amendment guarantees. *Widmar*, 454 U.S. at 268.

## III. Plaintiffs Will Suffer Irreparable Harm Absent Immediate Relief.

Plaintiffs have scheduled a drag show in Legacy Hall for March 22, 2024. Ex. A, Bright Decl. ¶¶ 17–23. Without immediate relief, Plaintiff will again suffer First Amendment harm. President Wendler has signaled to the media and even to this Court that he will again impede Plaintiffs' protected expression. ROA.623 at 25:11–27:50; Doc 94, Wendler Br. at 32. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of an injunction pending appeal. *Roman Cath. Diocese*, 592 U.S. at 19 (quoting *Elrod v. Burns* 427 U.S. 347, 373 (1976)) (granting injunction pending appeal).

## IV. The Public Interest Favors an Injunction Pending Appeal.

"[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (citation omitted). On college campuses, "courts must be especially vigilant against assaults on speech in the Constitution's care." *Speech First*, 979 F.3d at 319. President Wendler's appeal to offensiveness is not enough to overcome the public interest in a robust First Amendment.

## V. Plaintiffs Request a Ruling by February 29, 2024.

Plaintiffs request a ruling by February 29 for two reasons. First, a merits decision is unlikely before Plaintiffs' March 22 show. Second, while Plaintiffs requested a merits decision by March 15, 2024 in their October 2023 motion to expedite, Plaintiffs require sufficient time to seek relief from the Supreme Court before the March 22 show, should the Court deny this motion.

## CONCLUSION

For these reasons, Court should enjoin Defendants, pending appeal, from denying Plaintiffs' use of campus facilities, including Legacy Hall, based on the content, viewpoint, or message of Plaintiffs' planned March 22, 2024 drag show performance.

Dated: February 9, 2024      Respectfully,

/s/ JT Morris
JT Morris
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
700 Pennsylvania Ave., S.E., Suite 340
Washington, D.C. 20003
Tel: (215) 717-3473
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

Adam Steinbaugh
Jeffrey D. Zeman
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut St., Suite 900
Philadelphia, PA. 19106
Tel: (215) 717-3473
adam@thefire.org
jeff.zeman@thefire.org

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF CONFERENCE

On January 30, 2024 counsel for Plaintiffs-Appellants conferred with counsel for Appellees, who stated that Appellees oppose the relief requested in this Motion.

Dated: February 9, 2024          /s/ JT Morris
                                                    JT Morris
                                                    Attorney for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

This certifies that on February 9, 2024, in compliance with Rules 25(b) and (c) of the Federal Rules of Appellate Procedure, the undersigned served the foregoing via the Court's ECF filing system on all registered counsel of record.

/s/ JT Morris
JT Morris
Attorney for Plaintiffs-Appellants

# CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limitation of Fed. App. P. 27(d)(2)(A) and the type style requirements of Fed. R. App. 27(d)(1)(E) because it contains 5,181 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Local Rule 32.2.

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Local Rule 32.1 and the type style requirements because it has been prepared in proportionally spaced typeface using 14-point Century Schoolbook font with 12-point Century Schoolbook font for footnotes.

Dated: February 9, 2024

/s/ JT Morris
JT Morris
Attorney for Plaintiffs-Appellants