In the United States Court of Appeals
for the Fifth Circuit

_____

Spectrum WT; Barrett Bright; Lauren Stovall,

*Plaintiffs-Appellants,*

v.

Walter Wendler; Dr. Christopher Thomas; John Sharp;
Robert L. Albritton; James R. Brooks; Jay Graham; Tim
Leach; Bill Mahomes; Elaine Mendoza; Michael J.
Plank; Cliff Thomas; Demetrius L. Harrell, Jr.;
Michael A. Hernandez, III,

*Defendants-Appellees*

_____

On Appeal from the United States District Court for
the Northern District of Texas Case No. 2:23-cv-00048

_____

## CHRISTOPHER THOMAS AND JOHN SHARP'S RESPONSE OPPOSING APPELLANTS' MOTION FOR INJUNCTION PENDING APPEAL

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Division Chief, General Litigation
Division

ALLISON M. COLLINS
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Allison.Collins@oag.texas.gov
*Counsel for Defendants- Appellees*

# Table of Contents

Table of Contents ...................................................................................................... ii

Table of Authorities .................................................................................................. iii

Certificate of Interested Persons ............................................................................... v

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 2

I.  Plaintiffs' Self-Created Exigency. ....................................................................... 2

II. Plaintiffs Do Not Assert That Thomas or Sharp Have Taken Any
    Action, Let Alone any Adverse Action, That Would Support an
    Interim Injunction. ............................................................................................. 3

ARGUMENT ............................................................................................................... 5

I.   Standard of Review............................................................................................. 5

II.  Plaintiffs' Motion Should Be Denied for Failure to Comply with
     Federal Rule of Appellate Procedure 8 .............................................................. 5

III. Plaintiffs Have Not Satisfied Any of the Factors for an Injunction
     Against Sharp or Thomas Pending Appeal.......................................................... 10

     A.  Plaintiffs cannot demonstrate irreparable injury pending appeal
         that is traceable to Sharp or Thomas. .......................................................... 10

     B.  Plaintiffs do not address the likelihood of success on the merits
         against Sharp and Thomas. .......................................................................... 13

     C.  Plaintiffs' requested injunction is overly broad. .......................................... 20

CONCLUSION AND PRAYER FOR RELIEF ........................................................... 21

CERTIFICATE OF SERVICE.................................................................................... 23

CERTIFICATE OF COMPLIANCE.......................................................................... 23

# Table of Authorities

**Cases**

Barber v. Bryant,
    860 F.3d 345 (5th Cir. 2017) ............................................................ 14

Bennett v. Spear,
    520 U.S. 154 (1997) .......................................................................... 15

California v. Texas,
    141 S. Ct. 2104 (2021) ...................................................................... 18

Chacon v. Granata,
    515 F.2d 922 (5th Cir. 1975) ............................................................ 11

City of Austin v. Paxton,
    943 F.3d 993 (5th Cir. 2019) ............................................................ 17

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983) ............................................................................ 14

Clapper v. Amnesty Int'l USA,
    568 U.S. 398 (2013) .......................................................................... 14

Daves v. Dallas Cnty., Tex.,
    22 F.4th 522 (5th Cir. 2022) ............................................................ 15

E.T. v. Paxton,
    19 F.4th 760 (5th Cir. 2021) ............................................................ 18

Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,
    528 U.S. 167 (2000) .......................................................................... 14

Gill v. Whitford,
    138 S. Ct. 1916 (2018) ...................................................................... 18

Jackson v. Wright,
    82 F.4th 362 (5th Cir. 2023) ..............................................15, 16, 18

John Doe #1 v. Veneman,
    380 F.3d 807 (5th Cir. 2004) ............................................................ 18

Lujan v. Def's of Wildlife,
    504 U.S. 555 (1992) .......................................................................... 14

Mazurek v. Armstrong,
    520 U.S. 968 (1997) .......................................................................... 11

Missouri v. Biden,
    83 F.4th 350 (5th Cir. 2023) ............................................................ 11

Morris v. Livingston,
    739 F.3d 740 (5th Cir. 2014) ............................................................ 17

Nat'l Ass'n for the Advancement of Colored People, NAACP v. Tindell,
    90 F.4th 419 (5th Cir. 2024) ........................................................ 5, 6

Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott,
    734 F.3d 406 (5th Cir. 2013) .............................................................. 9

Richardson v. Tex. Sec'y of State,
    978 F.3d 220 (5th Cir. 2020) ............................................................ 19

Ruiz v. Estelle,
    650 F.2d 555 (5th Cir. 1981) ........................................................ 6, 8

*Scott v. Schedler,*
    826 F.3d 207 (5th Cir. 2016)...............................................................18

*Scripps-Howard Radio v. F.C.C.,*
    316 U.S. 4 (1942)................................................................................11

*Tex. All. for Retired Ams. v. Scott,*
    28 F.4th 669 (5th Cir. 2022)..............................................................18

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020)..............................................................14

*Texas v. U.S. Dep't of Homeland Sec.,*
    88 F.4th 1127 (5th Cir. 2023).............................................................5

*The Woodlands Pride, et al. v. Paxton,*
    Case No. 23-20480 (Oct. 23, 2023).....................................................21

*Va. Off. for Prot. & Advoc. v. Stewart,*
    563 U.S. 247 (2011) ...........................................................................19

*Whole Woman's Health v. Paxton,*
    972 F.3d 649 (5th Cir. 2020) ..............................................................6

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)..........................................................................10, 11

*Zapata v. Smith,*
    437 F.2d 1024 (5th Cir. 1971).............................................................19

**Statutes**
Tex. Health & Safety Code § 769.002......................................................21
Tex. Local Gov. Code § 243.0031.............................................................21
Tex. Penal Code § 43.28(c)......................................................................21

**Other Authorities**
https://www.instagram.com/p/C3dkLCSPcN1/?utm_source=ig_web_button_
    share_sheet (last accessed February 19, 2024)...................................5
https://www.tamus.edu/legal/policy/policy-and-regulation-library/...........................16
Practitioner's Guide to the United States Court of Appeals for the Fifth Circuit, p. 4.
    extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ca5.uscourts.gov/
    docs/default-source/forms-and-documents---clerks-office/documents/
    practitionersguide.pdf (last accessed February 19 2024) ...................9

**Rules**
Fed. R. App. P. 8(a)(2)..........................................................................7, 9

# Certificate of Interested Persons

No. 23-10994

Spectrum WT; Barrett Bright; Lauren Stovall,

*Plaintiffs-Appellants,*

*v.*

Walter Wendler; Dr. Christopher Thomas; John Sharp; Robert L. Albritton; James R. Brooks; Jay Graham; Tim Leach; Bill Mahomes; Elaine Mendoza; Michael J. Plank; Cliff Thomas; Demetrius L. Harrell, Jr.; Michael A. Hernandez, III,

*Defendants-Appellees.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, defendant-appellee, as a governmental party, need not furnish a certificate of interested persons.

/s/ Allison M. Collins
Allison M. Collins
*Counsel for Defendants-Appellees Thomas and Sharp*

## INTRODUCTION

This Court rarely grants an injunction pending appeal from a denied preliminary injunction, and Plaintiffs have not presented this Court with any compelling reason to grant one in this case. This is particularly true given that Plaintiffs have failed to follow the proper procedure for requesting an injunction pending appeal from this Court. Plaintiffs did not secure a ruling on their motion for injunction filed with the district court. Rather, the district court set a briefing schedule in accordance with its local rules, merely refusing Plaintiffs' request for expedited consideration. ECF 114-2 at 46, Plaintiffs' Motion Ex. C. The district court's refusal to rush a decision after Plaintiffs waited over three months to move for interim relief does not amount to "effectively failing to afford [Plaintiffs] the relief requested." ECF 114-1, Plaintiffs' Motion at 1. For this reason alone, Plaintiffs' Motion for Injunction Pending Appeal ("Motion") should be denied.

Plaintiffs' belated Motion amounts to a request for this Court to preview its decision on the merits of Plaintiffs' appeal—an appeal that this Court already deemed inappropriate for expedited consideration. Plaintiffs do not assert any substantial changes in the parties' positions since this Court denied expedited consideration except the predictable passage of time. Plaintiffs do not claim that Dr. Christopher Thomas or Chancellor John Sharp have taken any actions or made any

statements to substantiate the necessity of an interim injunction against either of them. Plaintiffs' reservation for their proposed 2024 drag show continues to proceed through the facilities reservation process as Plaintiffs submit the required documentation. Plaintiffs admittedly have not completed all necessary paperwork for their event to be confirmed. Plaintiffs also have not satisfied any of the requirements for an injunction pending appeal against Thomas or Sharp, so their delayed Motion should be denied.

## FACTUAL BACKGROUND

### I. Plaintiffs' Self-Created Exigency.

Plaintiffs filed an Amended Motion for Preliminary Injunction on April 20, 2023, based on their Amended Complaint. ROA. 281-409. The district court denied Plaintiffs a preliminary injunction on September 21, 2023. ROA.849-874. Then this Court denied Plaintiffs' motion to expedite their appeal from the preliminary injunction denial on October 11, 2023. ECF 22-1. Yet Plaintiffs waited over three months to file a Motion for Injunction Pending Appeal before the district court. ECF 114-2, Plaintiffs' Motion Ex. B. They then demanded that the district court act on the motion within nine (9) days. *Id.* The district court declined to rule within the requested timeframe, indicating that it would abide by its local rules governing motion practice in deciding Plaintiffs' motion. ECF 114-2, Plaintiffs' Motion Ex. C.

The district court ordered Defendants to respond by February 21, 2024. *Id.* The district court indicated that following its local rules was "a longstanding norm and the Court declines to alter it here." *Id.* Unhappy with the district court enforcing its local rules, Plaintiffs filed their motion with this Court on February 9, 2024.[1]

## II.    Plaintiffs Do Not Assert That Thomas or Sharp Have Taken Any Action, Let Alone any Adverse Action, That Would Support an Interim Injunction.

Plaintiffs submitted evidence in support of their Motion, but none of it implicates Thomas or Sharp. Neither Thomas nor Sharp has taken any steps related to Plaintiffs' 2024 drag show that could be considered withholding approval or indicate that approval will be withheld. Rather, any delay in tentatively approving Plaintiffs' March 2024 drag show is attributable to Plaintiffs themselves. Plaintiffs' affidavit admits that they have not completed all necessary documentation for confirmation of their event. Plaintiffs' Motion Ex. A.

Pursuant to WT SAP 24.01.01.W0.01, the Risk Management Office is responsible for conducting risk assessments related to facility use requests. Exhibit A, Declaration of Christopher Thomas at ¶ 4. Risk assessments are a requirement

---

[1] Plaintiffs have since withdrawn their motion in the district court. Trial counsel for Wendler had requested that Plaintiffs take some action related to the motion after Plaintiffs sought relief from this Court, but counsel for Dr. Thomas and Chancellor Sharp did not request that any such action be taken or otherwise comment on this exchange.

for all on-campus events by student groups that have self-disclosed a risk of physical injury to students or attendees. Ex. A at ¶ 4. Plaintiffs submitted a risk assessment on January 5, 2024. ECF 114-2, Plaintiffs' Motion Ex. A-3. The risk assessment was amended on January 31, 2024—the same day Plaintiffs filed their Motion for Injunction pending appeal in the district court and over a week before filing with this Court. Ex. A at ¶6; Ex. A-1. Plaintiffs' amended risk assessment disclosed to WT for the first time that they intended to permit minors to attend the 2024 drag show. Ex. A-1.

Following Plaintiffs' amended risk assessment, Plaintiffs event reservation was moved to "tentative" on February 16, 2024. Ex. A at ¶5. "Tentative" status indicates that there are still certain outstanding items for the event that need to be met before the reservation is "Confirmed," which, in this case, includes proof of insurance and submission of proposed marketing materials if Spectrum WT intends to advertise the event as indicated in their application. Ex. A at ¶5. Additionally, Plaintiffs will be required to submit release forms for each performer and provide other event logistics to WT before the event takes place. Plaintiffs' Motion Ex. A at ¶26, A-1 at 18. Plaintiffs have not completed these steps. Ex. A at ¶¶5, 7; Plaintiffs' Motion Ex. A at ¶26. Plaintiffs' application remains pending. Ex. A at ¶9. Plaintiffs

did begin soliciting drag show participants on social media on February 18, 2024.[2] They have not limited performers to individuals over the age of 18 or indicated that the show will be PG-13 in their participant sign-up forms. *Id.*

## **ARGUMENT**

### I. **Standard of Review.**

This Court evaluates a request for an injunction pending appeal according to the standard for granting or denying a stay pending appeal. *Nat'l Ass'n for the Advancement of Colored People, NAACP v. Tindell*, 90 F.4th 419, 422 (5th Cir. 2024). (citing *Texas v. U.S. Dep't of Homeland Sec.*, 88 F.4th 1127, 1133 (5th Cir. 2023)). The four relevant factors are: (1) whether the moving party has made a strong showing that it is likely to succeed on the merits; (2) whether the moving party will be irreparably injured absent an injunction; (3) whether the issuance of an injunction will substantially injure the other interested parties; and (4) where the public interest lies. *Id.*

### II. **Plaintiffs' Motion Should Be Denied for Failure to Comply with Federal Rule of Appellate Procedure 8.**

Plaintiffs delay in filing a Motion for Injunction Pending Appeal is not the district court's emergency. The district court did not deny or even "effectively

---

[2] https://www.instagram.com/p/C3dkLCSPcN1/?utm_source=ig_web_button_share_sheet (last accessed February 19, 2024).

deny" Plaintiffs' motion. The only relief sought by Plaintiffs and denied by the district court was an expedited decision on a motion filed four months after the district court denied Plaintiffs a preliminary injunction, three months after Plaintiffs were denied an accelerated appeal by this Court, and fifty (days) before Plaintiffs' planned event.

Federal Rule of Appellate Procedure 8(a) provides that an application for stay "must ordinarily be made in the first instance in the district court." The movant must show "that application to the district court for the relief sought is not practicable, or that the district court has denied an application, or has failed to afford the relief which the applicant requested." *Id.* Particularly in instances where the movant offers up new evidence as part of its motion for injunction, the "district court should have the opportunity to rule on the reasons and evidence presented in support" of the motion. *Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981). Such evidence should be "presented to the district judge and should be so considered by him prior to any action by this court." *Id.*

This Court has recently rejected motions for stays pending appeal that were "patently procedurally defective" for failing to first secure a ruling from the district court. *Whole Woman's Health v. Paxton*, 972 F.3d 649, 653 (5th Cir. 2020). In *Whole Woman's Health*, this Court noted that the movant's appeal had been pending for

nearly 1,000 days before a motion for stay was filed directly in the Fifth Circuit, bypassing the district court. *Id.* It cannot be presumed that "the district court would refuse injunctive relief pending an appeal" just because it refused to grant a preliminary injunction in the first instance. *Id.* at 654 (quoting *Bayless v. Martine*, 430 F.2d 873, 879 (5th Cir. 1970)). The movant's "failure to show the impracticability of moving in the district court is sufficient grounds to deny its motion." *Id.* (collecting cases).

Plaintiffs have failed to comply with Federal Rule of Appellate Procedure 8 before filing this motion, and their procedurally defective motion should be denied by this Court. *Whole Woman's Health v. Paxton*, 972 F.3d at 653. Plaintiffs' Motion does not explain why the district court "denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action." Fed. R. App. P. 8(a)(2). Plaintiffs instead assert that the district court "effectively fail[ed] to afford [Plaintiffs] the relief requested" (ECF 114-1 at 1) but the district court did not decide Plaintiffs' motion. ECF 114-2, Plaintiffs' Motion Ex. C. It certainly was not denied, nor can it be presumed that it would have been denied.

The only relief Plaintiffs sought that the district court denied was Plaintiffs' request for expedited consideration of the motion. Plaintiffs cite no case law to substantiate that denial of expedited consideration is the equivalent of "effectively"

denying Plaintiffs' request for interim injunctive relief, particularly given Plaintiffs delay in seeking relief from the district court. To the contrary, the district court instructed Defendants to respond in accordance with the court's local rules, indicating its intent to consider and decide the motion. ECF 114-2, Plaintiffs' Motion Ex. C. The district court's local rules governing motion practice are no secret: they are readily and publicly available. Plaintiffs could have—and should have—filed their motion for injunction with sufficient time to abide by the district court's local rules and receive a timely decision on the motion before moving in this Court, if necessary. Plaintiffs even admit (at 8) that their as-filed motion likely would have been decided by the district court before March 24, 2024. The district court was well within its discretion to reject Plaintiffs' demand for a rushed decision given Plaintiffs' self-created exigency.

Consideration of Plaintiffs' motion first in the district court is particularly warranted here given that Plaintiffs have attached new evidence as part of their motion for injunction. *Ruiz*, 650 F.2d at 567. But Plaintiffs did not give the district court time to consider this evidence—or Defendants time to respond to it per the district court's order—before leapfrogging ahead to this Court. This court should therefore deny Plaintiffs' motion or otherwise hold it in abeyance until the district court has had an opportunity to consider the evidence after full briefing.

Plaintiffs did not argue that it is impracticable to wait for the district court's decision, and any attempt to do so should be rejected. Fed. R. App. P. 8(a)(2). The district court did not issue its decision the day before—or even weeks before—Plaintiffs' 2024 drag show. *See Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (moving for stay in district court was likely impracticable since district court's decision was issued the day before the challenged law was to have taken effect). Instead, like the movant in *Whole Woman's Health*, Plaintiffs inexplicably waited for months to request interim injunctive relief. Plaintiffs provide no explanation for why.

Plaintiffs have known since October 2023 that this Court was not going to consider the merits of their appeal from the district court's denied preliminary injunction on an accelerated basis. ECF 22-1. This necessarily meant Plaintiffs would not receive a decision from this Court before their anticipated March 2024 event: the median time from filing a notice of appeal to issuance of an opinion by this Court was 8.4 months as of June 2023.[3] Yet Plaintiffs waited over three months after their accelerated appeal motion was denied—and until after their appeal was fully briefed to this Court—before moving in the district court for interim injunctive

[3] See Practitioner's Guide to the United States Court of Appeals for the Fifth Circuit, p. 4. extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ca5.uscourts.gov/docs/default-source/forms-and-documents---clerks-office/documents/practitionersguide.pdf (last accessed February 19 2024).

relief. ECF 114-2, Plaintiffs' Motion Ex. B. Given that Plaintiffs have had months since the district court's decision to file their Motion, as well as months since this Court's decision not to accelerate the appeal, Plaintiffs cannot establish that it was impracticable to first seek relief in the district court. Their Motion should be denied.

## III. Plaintiffs Have Not Satisfied Any of the Factors for an Injunction Against Sharp or Thomas Pending Appeal.

As set forth in greater detail in their Appellees' Brief, Plaintiffs have not demonstrated an entitlement to a preliminary injunction against Sharp or Thomas. Plaintiffs present no new evidence pertaining to either of these Defendants in support of their Motion that substantiates the need for interim injunctive relief against either of them. Neither Sharp nor Thomas is mentioned in Plaintiffs' evidence supporting their Motion. And they are referenced only one time in the Motion (at 7) itself to speculate that a reference in Wendler's Appellee's Brief may have included these officials. Sharp and Thomas highlight the primary reasons an injunction pending appeal against them should not be granted below.

### A. **Plaintiffs cannot demonstrate irreparable injury pending appeal that is traceable to Sharp or Thomas.**

A preliminary injunction should not be issued simply to prevent the possibility of some remote future injury. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction requires a showing of "irreparable harm" that is

likely, not merely possible. *Id.* Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with the characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Id.; Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). And the threatened harm must be "imminent." *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). "While the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury, invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury." *Missouri v. Biden*, 83 F.4th 350, 392-93 (5th Cir. 2023) (cleaned up) (quotations and citations omitted).

An injunction is not a matter of right even if irreparable injury might otherwise result to the appellant, but it is an exercise of "judicial discretion" that is largely dependent on the circumstances. *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 10 (1942) (addressing stay of enforcement of an administrative order). Plaintiffs' Motion does not demonstrate that they will suffer irreparable harm fairly traceable to Sharp or Thomas unless an injunction is issued against these officials. The only evidence Plaintiffs cite (at 7) to support irreparable injury are Wendler's statements to the media back in Spring 2023 (which were included in their Amended Complaint) and arguments presented in Wendler's brief filed with this Court on December 28,

2023. Neither of these statements, or any resulting harm, is traceable to Sharp or Thomas. It remains entirely speculative that Plaintiffs will suffer any irreparable harm at the hands of these Defendants.

The district court's holding that it was "doubtful that Plaintiffs will suffer irreparable harm in the coming months while this issue is litigated" has proven correct, particularly as it pertains to Sharp and Thomas. ROA.873. Plaintiffs' Motion does not present evidence that any of their events have been cancelled or impacted by Sharp or Thomas while this appeal has been pending. Such reservations generally fall within the purview of the Division of Student Affairs. Ex. A at ¶3. In fact, Plaintiffs' 2024 drag show was moved to tentative status by Facility's Risk Management on February 16, 2024. Ex. A at ¶5. Any delay in attaining tentative status is attributable to Plaintiffs not completing all necessary steps for confirmation and belatedly amending their risk management documentation. Plaintiffs admittedly amended their required risk assessment on January 31, 2024, to indicate for the first time that minors would be permitted to attend the show. Ex. A at ¶6, Ex. A-1.

There are still steps that Plaintiffs must complete before their event can be confirmed, including providing proof of insurance and submitting proposed marketing materials if Plaintiffs intend to promote and market their event. Ex. A at ¶¶5, 7. The application remains pending, and the event remains subject to

cancellation. Ex. A at ¶¶8, 9. As Plaintiffs acknowledge, they will also have to obtain releases for all performers, provide music lists, and coordinate logistics with facilities. ECF 114-2, Plaintiffs' Motion Ex. A at 7, ROA.232-33.

In light of the tentative confirmation by WT Facilities and Plaintiffs failure to produce any evidence that Sharp or Thomas pose irreparable harm to Plaintiffs' rights pending appeal, Plaintiffs' Motion for interim injunctive relief should be denied against Sharp and Thomas. Any alleged harm is entirely speculative.

## B. **Plaintiffs do not address the likelihood of success on the merits against Sharp and Thomas.**

Plaintiffs make no arguments in their Motion demonstrating that they are likely to succeed on the merits of the official capacity claims specifically asserted against Thomas and Sharp. Neither is mentioned in Plaintiffs' Motion except a single speculative reference (at 7). Plaintiffs' Motion makes no mention of what Thomas or Sharp did or did not do that amounts to an ongoing violation of Plaintiffs' First Amendment rights. And Plaintiffs do not explain how an injunction against Sharp or Thomas will redress Plaintiffs' alleged harm. Plaintiffs' failure to adequately brief these issues, both now and on appeal, warrants denying this Motion.

Plaintiffs are unlikely to succeed on the merits of their claims against Thomas and Sharp because they will be unable to establish standing—or a waiver of the State's sovereign immunity—against either of them at the summary judgment

phase. In the preliminary-injunction context, plaintiffs "must make a clear showing of standing ...." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 178 (5th Cir. 2020). Article III of the U.S. Constitution limits courts to deciding only actual "Cases" or "Controversies," and it is required "that a litigant have standing to challenge the action sought to be adjudicated in the lawsuit." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (quotation omitted). To have standing, a plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision. *Lujan v. Def's of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiffs have failed to show a concrete and particularized injury-in-fact by Sharp or Thomas. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Neither Thomas nor Sharp played a role in Wendler's decision to cancel Plaintiffs' 2023 show, beyond Thomas telling Plaintiffs about his superior's cancellation decision before it was made public. Even if they had, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiffs do not allege facts demonstrating that these Defendants, individually, will disallow Plaintiffs' future events. And Plaintiffs' "subjective fear[s]" do "not give rise to standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013).

Additionally, the complained of injury must be traceable to the named Defendant because standing to sue one defendant does not, on its own, confer standing to sue a different defendant. *Daves v. Dallas Cnty., Tex.*, 22 F.4th 522, 542 (5th Cir. 2022). Traceability is not satisfied when the injury is the result of a third party's independent action that was not "produced by determinative or coercive effect" by the defendant. *Bennett v. Spear,* 520 U.S. 154, 168–69 (1997)). Plaintiffs cannot impute any alleged injury posed by Wendler to Thomas or Sharp, and they cannot otherwise trace any alleged injury to these two Defendants. Neither Sharp nor Thomas coerced Wendler to either cancel Plaintiffs' 2023 drag show or to make a public statement regarding Wendler's rationale for doing so. Rather, Plaintiffs repeatedly describe their harm as traceable to President Wendler.

Plaintiffs do not specify how Sharp or Thomas, by their own actions, have committed an ongoing violation of Plaintiffs' First Amendment rights. Presumably, they believe Sharp can be tied to an alleged ongoing First Amendment violation based on *Jackson v. Wright,* 82 F.4th 362 (5th Cir. 2023). That case is readily distinguishable. *Jackson* involved a First Amendment retaliation claim related to employment where the plaintiff had directly reached out to the Board of Regents requesting that the Board of Regents take action to stop the retaliation, which this Court held was enough for plaintiff to maintain First Amendment claims against the

Board of Regents. *Jackson*, 82 F.4th at 367-68. In sharp contrast, Plaintiffs here did not reach out to Chancellor Sharp before filing a lawsuit claiming that he should have somehow stepped in when President Wendler, tasked with running one university within the Texas A&M University System's (TAMUS) statewide network of nearly twenty state universities and agencies falling within Chancellor Sharp's general purview, cancelled a single student event.

This Court in *Jackson* also did not address standing or sovereign immunity to sue a university system chancellor, as opposed to a Board of Regents. Here, the Chancellor has certain responsibilities for managing the overarching A&M University System "under the direction of the Board of Regents[,]" and none of those responsibilities include micro-managing the daily decisions and activities at any component university. ROA.546-47; Tex. A&M Univ. Sys., Sys. Pol'y, 02.02, 02.05.[4] Rather, TAMUS policies stress institutional independence of component universities and each institution's right to manage its own affairs through its chosen administrators and employees. ROA.546-47; Tex. A&M Univ. Sys., Sys. Pol'y, 02.01.

*Jackson* does not demonstrate that a University System Chancellor has the necessary scintilla of enforcement authority over a component institution's

---

[4] All policies can be found at: https://www.tamus.edu/legal/policy/policy-and-regulation-library/

independent decision to cancel a student event, particularly where Plaintiffs do not attempt to tie that decision to a TAMUS policy. Plaintiffs instead point to Sharp's alleged general authority over component university Presidents. But an official must have more than "the general duty to see that the laws of the state are implemented," or in this case a general duty to oversee component university Presidents. *City of Austin v. Paxton*, 943 F.3d 993, 999-1000 (5th Cir. 2019) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). Sharp is not tasked with managing student events or any of the day-to-day activities at each component institution, and Plaintiffs cannot refute this. ROA.546-57. Plaintiffs instead have generally pointed to Sharp's involvement with First Amendment related issues at TAMUS institutions that stemmed from requests or calls from the Legislature. ROA.871-72. But in stark contrast to Sharp's lack of authority over student events, Sharp is specifically tasked with interfacing with the Legislature. Tex. A&M Univ. Sys., Sys. Pol'y, 02.02.

Plaintiffs' claims against Thomas are similarly unavailing and unlikely to succeed. Dr. Thomas reports to Wendler, cannot overrule his decisions, and played no part in Wendler's decision or his email announcing that decision. ROA.540-41. He is not aware of any reasons why Plaintiffs' planned events for this school year will not go forward. ROA.541. Plaintiffs' 2024 drag show has progressed to tentative status and remains pending. Ex. A at ¶¶ 5, 9. He cannot be held liable for his

superior's decision on the 2023 cancellation, a decision that he has no authority to countermand. *Jackson,* 82 F.4th at 368. Nor can he be held liable for an ongoing violation of Plaintiffs' First Amendment rights simply because he notified Plaintiffs of Wendler's 2023 cancellation before Wendler issued his public statement. This notification does not equate to a "scintilla of enforcement," and Plaintiffs have not cited to any authority holding otherwise.

Finally, Plaintiffs' harm cannot be remedied by an injunction against Sharp or Thomas. See *E.T. v. Paxton*, 19 F.4th 760, 766 (5th Cir. 2021); see also *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672–73 (5th Cir. 2022). "Remedies . . . operate with respect to specific parties" and the court enjoins the acts of the official, not the statute or policy at issue. *California v. Texas,* 141 S. Ct. 2104, 2115 (2021) (quotation omitted). Injunctions against these Defendants would be superfluous and likely overbroad. An injunction "is overbroad if it is not 'narrowly tailored to remedy the specific action which gives rise to the order' as determined by the substantive law at issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (quoting *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)). That a "plaintiff's remedy must be tailored to redress the plaintiff's particular injury" recognizes a federal court's "constitutionally prescribed role ... to vindicate the individual rights of the people appearing before it." *Gill v. Whitford*, 138 S. Ct. 1916, 1933–34 (2018).

Here, an injunction against Sharp or Thomas will not stop Wendler from cancelling Plaintiffs' events or continuing to carry out his public statement related to drag shows, if he is so inclined. Plaintiffs' harm, if any, is redressable by an injunction against Wendler. Injunctive relief against Sharp and Thomas would not be narrowly tailored to redress Plaintiffs' alleged injuries based on the facts as alleged by Plaintiffs.

For the same reasons that Plaintiffs lack standing, Plaintiffs are unlikely to succeed on the merits of their claims because they are barred by sovereign immunity. Additionally, under *Ex parte Young* a court is permitted to "command[ ] a state official to do nothing more than refrain from violating federal law." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011). Plaintiffs' claims against Sharp and Thomas are unlikely to succeed on the merits because they seek unavailable affirmative relief that is barred by sovereign immunity. *Ex parte Young* does not allow a federal court to order an official to exercise sovereign power by taking an official act. *Zapata v. Smith*, 437 F.2d 1024, 1026 (5th Cir. 1971); see *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 242 (5th Cir. 2020) (citation omitted). Namely, Plaintiffs request that these Sharp and Thomas take actions to override Wendler such as rescinding Wendler's public statement and countermanding his decisions. But Plaintiffs simply want to hold Thomas liable for the actions of his superior, and Sharp

liable for a local decision because he did not step in and take an affirmative action. Plaintiffs' requested injunction would require Thomas and Sharp to take affirmative action in contravention of *Ex parte Young*, rendering Plaintiffs' claims of an ongoing violation against both barred by sovereign immunity and unlikely to succeed on the merits. For all these reasons, Plaintiffs' Motion for an injunction pending appeal against Sharp and Thomas should be denied.

## C. Plaintiffs' requested injunction is overly broad.

Plaintiffs ask this Court to "enjoin Defendants, pending appeal, from denying Plaintiffs' use of campus facilities, including Legacy Hall, based on the content, viewpoint, or message of Plaintiffs' planned March 22, 2024 drag show performance." ECF 114-1 at 37. This is necessarily overly broad at this stage of the event approval process, particularly as it pertains to "content." The application status for the 2024 Drag Show is currently listed as "Tentative" following completion of a standard risk assessment. Ex. A at ¶5. "Tentative" status indicates that there are still certain outstanding items for the event that need to be met before the reservation is "Confirmed," including proof of insurance and submission of proposed marketing materials if Spectrum WT intends to advertise the event as indicated in their application. *Id.* Plaintiffs also have not provided a list of performers or music selections, which go to the "content" of Plaintiffs' alleged PG-13 event.

ECF 114-2, Plaintiffs' Motion Ex. A at 7; ROA.232-33.

Plaintiffs' requested injunction would give Plaintiffs a free pass to include whatever "content" they want at a show that will permit minors in the audience—and perhaps minors to perform as well based on Spectrum WT's recent solicitations for performers. This is particularly concerning given the current uncertainty surrounding Senate Bill 12. Senate Bill 12 prohibits sexually oriented performances that fall within certain categories of sexual conduct to take place in front of minors. Tex. Penal Code § 43.28(c); Tex. Health & Safety Code § 769.002; Tex. Local Gov. Code § 243.0031. The constitutionality of Senate Bill 12, as well as a motion to stay the district court's permanent injunction, is currently pending before this Court. *The Woodlands Pride, et al. v. Paxton*, Case No. 23-20480. The uncertain status of Senate Bill 12, combined with the incomplete nature of Plaintiffs' application and lack of details regarding the actual content of Plaintiffs' drag show, renders Plaintiffs' requested injunction pending appeal overly broad. Plaintiffs' Motion should be denied.

## CONCLUSION AND PRAYER FOR RELIEF

Chancellor Sharp and Dr. Thomas respectfully request that the Court deny Plaintiffs' Motion for Injunction pending appeal.

Dated: February 20, 2024

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief - General Litigation Division

 /s/ Allison M. Collins
**ALLISON M. COLLINS**
Texas Bar No. 24127467
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
512.475.4058 (direct)
512.320.0667 (facsimile)
allison.collins@oag.texas.gov

*Attorney for Defendants Sharp and Thomas*

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, a true and correct copy of the foregoing document was transmitted using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ Allison M. Collins*
Allison M. Collins

## CERTIFICATE OF COMPLIANCE

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,880 words, excluding exempted text; and (2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced type-face (14-point Times New Roman) using Microsoft Word (the same program used to calculate the word count).

*/s/ Allison M. Collins*
Allison M. Collins