No. 23-10994

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

SPECTRUM WT; BARRETT BRIGHT; LAUREN STOVALL,

*Plaintiffs-Appellants*

v.

WALTER WENDLER; DR. CHRISTOPHER THOMAS; JOHN SHARP;
ROBERT L. ALBRITTON; JAMES R. BROOKS; JAY GRAHAM; TIM
LEACH; BILL MAHOMES; ELAINE MENDOZA; MICHAEL J. PLANK;
CLIFF THOMAS; DEMETRIUS L. HARRELL, JR.; MICHAEL A.
HERNANDEZ, III,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of Texas,
No. 2:23-CV-48

BRIEF OF *AMICUS CURIAE* FIRST AMENDMENT LAWYERS
ASSOCIATION IN SUPPORT OF PLAINTIFFS-APPELLANTS

Laura Lee Prather
Catherine L. Robb
Michael J. Lambert
**HAYNES BOONE, LLP**
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400
laura.prather@haynesboone.com
catherine.robb@haynesboone.com
michael.lambert@haynesboone.com

*Attorneys for Amicus Curiae First
Amendment Lawyers Association*

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS

Number and Style of Case: No. 2:23-CV-48, No. 23-10994; *Spectrum WT, Barrett Bright, Lauren Stovall* v. *Walter Wendler, Dr. Christopher Thomas, John Sharp, Robert L. Albritton, James R. Brooks, Jay Graham, Tim Leach, Bill Mahomes, Elaine Mendoza, Michael J. Plank, Cliff Thomas, Demetrius L. Harrell, Jr., Michael A. Hernandez, III.*

Pursuit to Fifth Circuit Rules 28.2.1 and 29.2, the undersigned counsel certifies that, in addition to the persons and entities listed in the parties' briefs, the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

### Amicus Curiae

First Amendment Lawyers Association

### Counsel for Amicus Curiae

Laura Lee Prather, Haynes Boone, LLP
Catherine L. Robb, Haynes Boone, LLP
Michael J. Lambert, Haynes Boone, LLP

Dated: December 1, 2025

/s/ Michael J. Lambert
Michael J. Lambert

**Attorney of record for Amicus Curiae First Amendment Lawyers Association**

i

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to <u>Fed. R. App. P. 26.1(a)</u>, the undersigned counsel certifies that The First Amendment Lawyers Association is a non-profit association. It has no parent corporation or publicly held corporation that owns 10 percent or more of its stock.

Dated: December 1, 2025

*/s/ Michael J. Lambert*
Michael J. Lambert

**Attorney of record for Amicus Curiae First Amendment Lawyers Association**

# TABLE OF CONTENTS

Supplemental Certficiate of Interested Persons ........................................................ i

Corporate Disclosure Statement .............................................................. ii

Table of Contents ................................................................................. iii

Table of Authorities ............................................................................. iv

Source of Authority to File ...................................................................1

Statement of Interest of Amicus Curiae....................................................1

Introduction and Summary of Argument....................................................3

Argument..........................................................................................4

I.      The First Amendment protects all viewpoints, including offensive and disfavored ones. ...................................................................4

II.     Affirming the lower court would invite government suppression of disfavored speech and deprive society of critical discussions about matters of public concern. ............................................................6

III.    Given the vital importance of free expression in schools and universities, this Court should reject efforts to restrict protected student speech. ...........................................................................9

Conclusion ......................................................................................11

Certificate of Service ........................................................................13

Certificate Under ECF Filing Standards .................................................14

Certificate of Compliance ...................................................................15

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                              **<u>Page(s)</u>**

*Abrams v. United States*,
    250 U.S. 616 (1919).................................................................................7

*Ashcroft v. Free Speech Coal., Inc.*,
    535 U.S. 234 (2002)..............................................................................1, 6

*Brandenburg v. Ohio*,
    395 U.S. 444 (1969).................................................................................6

*Brooks v. Auburn Univ.*,
    296 F. Supp. 188 (M.D. Ala. 1969) .....................................................10

*Brown v. Entm't Merchants Ass'n*,
    564 U.S. 786 (2011).................................................................................6

*City of Littleton v. Z.J. Gifts D-4, LLC*,
    541 U.S. 774 (2004).................................................................................2

*Cohen v. California*,
    403 U.S. 15 (1971)...............................................................................6, 8

*FCC v. Pacifica Found.*,
    438 U.S. 726 (1978).................................................................................8

*Healy v. James*,
    408 U.S. 169 (1972)...............................................................................10

*Hustler Magazine v. Falwell*,
    485 U.S. 46 (1988)...................................................................................6

*Iancu v. Brunetti*,
    588 U.S. 388 (2019).................................................................................6

*Keyishian v. Bd. of Regents of Univ. of State of N. Y.*,
    385 U.S. 589 (1967)............................................................................3, 10

*Kingsley Int'l Pictures Corp. v. Regents of Univ. of State of N.Y.*,
    360 U.S. 684 (1959).................................................................................5

*Lamont v. Postmaster Gen. of U.S.*,
    381 U.S. 301 (1965)..........................................................................8, 9

*Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*,
    594 U.S. 180 (2021)........................................................................9, 11

*Masterpiece Cakeshop v. Colorado C.R. Comm'n*,
    584 U.S. 617 (2018)..............................................................................2

*Matal v. Tam*,
    582 U.S. 218 (2017)..............................................................................6

*Molpus v. Fortune*,
    432 F.2d 916 (5th Cir. 1970) ..............................................................10

*N.A.A.C.P. v. Button*,
    371 U.S. 415 (1963)..............................................................................8

*Netflix, Inc. v. Babin*,
    88 F.4th 1080 (5th Cir. 2023) ..............................................................5

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)..............................................................................7

*Papish v. Bd. of Curators of Univ. of Missouri*,
    410 U.S. 667 (1973)............................................................................10

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992)..............................................................................6

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995)....................................................................3, 4, 10

*Shelton v. Tucker*,
    364 U.S. 479 (1960)..............................................................................9

*Smith v. People of the State of California*,
    361 U.S. 147 (1959)..............................................................................9

*Snyder v. Phelps*,
    562 U.S. 443 (2011)..............................................................................6

*Stanley v. Georgia*,
    394 U.S. 557 (1969)...................................................................9

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ...................................................................2

*Texas v. Johnson*,
    491 U.S. 397 (1989)................................................................4, 6

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969).................................................................10

*United States v. 12,200-ft Reels of Super 8mm Film*,
    409 U.S. 909 (1972) ...................................................................2

*United States v. Alvarez*,
    567 U.S. 709 (2012)...................................................................6

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000)...................................................................1

*United States v. Skrmetti*,
    605 U.S. 495 (2025).................................................................11

*W. Va. State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943)...................................................................7

*Whitney v. California*,
    274 U.S. 357 (1927)...................................................................8

*Winters v. New York*,
    333 U.S. 507 (1948)...................................................................5

## Statutes

Tᴇx. Eᴅᴜᴄ. Cᴏᴅᴇ § 51.9315(g) ..............................................................11

## Other Authorities

A. Meiklejohn, *Free Speech: And Its Relationship To Self-Government*, 88–89 (1948) .........................................................7

Fed. R. App. P. 29(a) ........................................................................1

## SOURCE OF AUTHORITY TO FILE

Pursuant to Fed. R. App. P. 29(a)(2), counsel for *Amicus Curiae* conferred with counsel for Plaintiffs-Appellants and counsel for Defendants-Appellees about this Brief. Plaintiffs-Appellants consent to the filing of this Brief, and Defendants-Appellees do not oppose the filing of this Brief.

## STATEMENT OF INTEREST OF AMICUS CURIAE

The First Amendment Lawyers Association (FALA) [1] is a non-profit, nationwide association of attorneys devoted to protecting free expression under the First Amendment and who represent businesses and individuals engaged in constitutionally protected expression. For more than a half-century, FALA's members have advocated against all forms of government censorship in courts throughout the United States, Canada, and elsewhere.

FALA members have briefed and argued dozens of landmark free speech cases before the U.S. Supreme Court and thousands of cases before federal appellate courts. *See, e.g., Ashcroft v. Free Speech Coal., Inc.*, 535 U.S. 234 (2002); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000). FALA has a tradition of submitting amicus briefs in courts throughout the country, including to the U.S.

---

[1] Pursuant to Fed. R. App. P. 29(a)(4), FALA certifies that counsel for FALA authored this Brief in whole; that no counsel for a party authored this Brief in any respect; and that no person or entity, other than amicus and its counsel, contributed monetarily to this Brief's preparation or submission.

Supreme Court, on First Amendment issues. *See, e.g., Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617 (2018); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774 (2004); *United States v. 12,200-ft Reels of Super 8mm Film*, 409 U.S. 909 (1972).

Given its objectives and membership, FALA has a substantial interest in ensuring that U.S. policies involving the rights of free expression are properly developed and applied. This is particularly true in cases, like this one, in which government officials are prohibiting disfavored speech and attempting to distort the marketplace of ideas.

The matters asserted in this Brief are relevant to the disposition of this case because this Brief discusses the nation's history of defending disfavored speech, the consequences of this case on the marketplace of ideas and right to receive information, and the importance of protecting free expression in schools and universities.

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

This Brief defends a bedrock First Amendment principle now under threat—that government officials may not suppress speech merely because they dislike its message. That rule is "axiomatic" because viewpoint discrimination is the most "egregious" violation of the First Amendment. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995). For generations, courts have safeguarded this fundamental principle, invalidating government efforts to silence even the most repugnant speech. This Court should do the same.

The First Amendment dictates that the public's understanding of drag performances should evolve through open debate, not official decree. The categorical ban on drag shows at West Texas A&M University flips that constitutional canon on its head. Worse, the ban limits speech in a University setting where speech rights are particularly important:

> Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned. That freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom.

*Keyishian v. Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589, 603 (1967).

By imposing his personal sensibilities onto the community, President Wendler has suppressed protected speech, impoverished public discourse, and denied students and the broader community the right to engage, critique, and learn in a free

3

marketplace of ideas. Such a ban cannot stand.

This Court should reverse and remand for entry of a preliminary injunction to restore the status quo required by the First Amendment and to prevent the broader chill that follows when a single official claims authority to veto protected expression he disfavors.

## **ARGUMENT**

### I.   **The First Amendment protects all viewpoints, including offensive and disfavored ones.**

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger*, 515 U.S. at 828. Discriminating against speech because of its message is presumptively unconstitutional. *Id*. When the government targets a speaker's particular views on a subject, the First Amendment violation is "all the more blatant." *Id*. Such "viewpoint discrimination" against specific ideologies, opinions, or perspectives is the most "egregious form of content discrimination." *Id*. at 829. Thus, it is a "bedrock principle" of the First Amendment that "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

Contrary to settled law, President Wendler prohibited Spectrum from holding a drag performance on campus because he disagreed with the views it would espouse. President Wendler explained in his letter that drag performances should be

permanently banned because they exaggerate "aspects of womanhood," "stereotype women," and "discriminate against womanhood." ROA.265 ("West Texas A&M University will not host a drag show on campus."). Such blatant viewpoint discrimination is per se unlawful and strikes "at the very heart of constitutionally protected liberty." *Kingsley Int'l Pictures Corp. v. Regents of Univ. of State of N.Y.*, 360 U.S. 684, 688–89 (1959).

These concerns are exacerbated when, like here, a government official openly and unapologetically violates constitutional rights in bad faith. In open defiance of "the law of the land," President Wendler stated that he will not allow drag shows on campus, even if they are "a form of free speech or intended as humor." ROA.266-67. This type of bad faith targeting of disfavored speech cannot be tolerated. *See Netflix, Inc. v. Babin*, 88 F.4th 1080, 1085 (5th Cir. 2023) (affirming preliminary injunction preventing a Tyler County prosecutor from pursuing a bad faith prosecution based on disfavored views).

President Wendler is not the first to prioritize his views above those of others. Throughout history, government actors have tried to suppress disfavored views and control public discourse. Courts have responded by repeatedly stepping in to shield speech that, like drag performances, may be unpopular or perceived as valueless at the time yet are "as much entitled to the protection of free speech as the best of literature." *Winters v. New York*, 333 U.S. 507, 510 (1948).

For example, the U.S. Supreme Court has held that the First Amendment protects "immoral" and "scandalous" speech;[2] "disparaging" speech;[3] lying about military service;[4] vile messages such as "God Hates Fags" and "Thank God for Dead Soldiers" expressed outside of military veterans' private funerals;[5] violent video games;[6] virtual child pornography;[7] burning a cross to intimidate others;[8] burning an American flag;[9] suggesting falsely that a religious leader had sex with his mother in an outhouse;[10] wearing a "F*** THE DRAFT" jacket in the corridors of a courthouse;[11] and racist, anti-Semitic language,[12] among others. If these forms of expression are protected, then surely drag performances are as well.

## II.    <u>Affirming the lower court would invite government suppression of disfavored speech and deprive society of critical discussions about matters of public concern.</u>

The guarantee of free speech is rooted in the notion that society benefits from "uninhibited, robust, and wide-open" expression free from unwarranted government

---

[2] *Iancu v. Brunetti*, <u>588 U.S. 388</u> (2019).

[3] *Matal v. Tam*, <u>582 U.S. 218</u> (2017).

[4] *United States v. Alvarez*, <u>567 U.S. 709</u> (2012).

[5] *Snyder v. Phelps*, <u>562 U.S. 443</u> (2011).

[6] *Brown v. Entm't Merchants Ass'n*, <u>564 U.S. 786</u> (2011).

[7] *Ashcroft v. Free Speech Coal.*, <u>535 U.S. 234</u> (2002).

[8] *R.A.V. v. City of St. Paul*, <u>505 U.S. 377</u> (1992).

[9] *Texas v. Johnson*, <u>491 U.S. 397</u> (1989).

[10] *Hustler Magazine v. Falwell*, <u>485 U.S. 46</u> (1988).

[11] *Cohen v. California*, <u>403 U.S. 15</u> (1971).

[12] *Brandenburg v. Ohio*, <u>395 U.S. 444</u> (1969).

restrictions.[13] *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The First Amendment encourages more—not less—speech on a wide array of subjects to ensure a fulsome debate from which the truth ultimately emerges. The pursuit of truth, for both individuals and society as a whole, requires open and vigorous debate in the "marketplace of ideas" over all matters of public concern, including drag performances. *See Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting) ("[T]he ultimate good desired is better reached by free trade in ideas— that the best test of truth is the power of the thought to get itself accepted in the competition of the market . . . . That at any rate is the theory of our Constitution.").

Affirming the lower court ruling would empower a single government official to restrict disfavored expression. This will invite arbitrary censorship of controversial speech across the political spectrum and chill the creation, production, and distribution of expression that may fall out of favor with the government. Although President Wendler may disagree with Spectrum's views, he cannot be allowed to use his position as a government official to stifle Spectrum's speech. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can

---

[13] *See also* A. Meiklejohn, *Free Speech: And Its Relationship To Self-Government*, 88–89 (1948) ("The primary purpose of the First Amendment is, then, that all the citizens shall, so far as possible, understand the issues which bear upon our common life. That is why no idea, no opinion, no doubt, no counter-belief, no relevant information, may be kept from them.").

prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.").

By preventing Spectrum from holding a drag performance on campus, President Wendler deprives society of open discussions on public issues he admits are highlighted during drag performances—"sexuality" "stereotypes," and "sexism." ROA.266-67. Suppressing these subjects stigmatizes them and chokes the "breathing space" needed for First Amendment freedoms to survive. *N.A.A.C.P. v. Button*, 371 U.S. 415, 433 (1963).

Disagreements over public issues—including drag performances—should be openly discussed in the public sphere. *See Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring) ("If there be time to expose through discussion the falsehood and fallacies, . . . the remedy to be applied is more speech, not enforced silence."). How drag performances are viewed will be determined by the public over time. *See Cohen*, 403 U.S. at 25 (the U.S. Constitution "leaves matters of taste and style" to the public). Accordingly, the government should not inject itself into the marketplace of ideas and punish protected speech. *See FCC v. Pacifica Found.*, 438 U.S. 726, 745–46 (1978) ("[T]he government must remain neutral in the marketplace of ideas.").

Further, affirming the lower court would deprive the public of the fundamental right to receive information and ideas. *See Lamont v. Postmaster Gen.*

*of U.S.*, 381 U.S. 301, 308 (1965) (Brennan, J., concurring) (the right to receive information is a "fundamental right"); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (it is "well established that the Constitution protects the right to receive information and ideas"). When the government prohibits a creator of expressive works, like Spectrum, from engaging in its preferred means of expression, that creator—and others—will engage in "self-censorship." *See Smith v. People of the State of California*, 361 U.S. 147, 152–55 (1959). As a result, viewpoints will be silenced, and the public will be without valuable information. *See Lamont*, 381 U.S. at 308 (Brennan, J., concurring) ("The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers.").

To promote a robust marketplace of ideas, this Court should reverse the trial court's decision and remand for entry of a preliminary injunction.

**III.** **Given the vital importance of free expression in schools and universities, this Court should reject efforts to restrict protected student speech.**

This case presents heightened constitutional concerns because it involves speech in the school setting. *See Shelton v. Tucker*, 364 U.S. 479, 487 (1960) ("The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools."). Schools are "nurseries of democracy" that foster the free exchange of ideas and facilitate informed public opinion. *See Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180, 190 (2021). Speech interests are

9

especially important in the university setting, which is "at the center of our intellectual and philosophic tradition." *Rosenberger*, 515 U.S. at 835. The country's future depends on students trained through "wide exposure" to a "robust exchange of ideas" to discover the truth. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 512 (1969).

Because our country is "committed to safeguarding academic freedom," courts have rejected efforts to restrict ideas at public universities by limiting who may teach,[14] who may be invited to speak,[15] which publications to fund,[16] and what organizations to recognize.[17] *See Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667, 670 (1973) (the dissemination of ideas on a university campus—no matter how offensive—"may not be shut off in the name alone of 'conventions of decency'"). This Court should, too, reject President Wendler's efforts to restrict ideas at West Texas A&M by limiting what type of expression is allowed. Courts need not "blindly" trust "so-called experts," like President Wendler, who violate the

---

[14] *Keyishian*, 385 U.S. at 602–03 (striking down loyalty oaths for university faculty as unconstitutional).

[15] *Molpus v. Fortune*, 432 F.2d 916, 917 (5th Cir. 1970) (rejecting university speaker bans); *Brooks v. Auburn Univ.*, 296 F. Supp. 188, 196 (M.D. Ala. 1969) (holding that "State of Alabama cannot … regulate the content of the ideas students may hear" because that is "unconstitutional censorship in its rawest form").

[16] *Rosenberger*, 515 U.S. at 825–29 (denial of funding to Christian student newspaper was unlawful viewpoint discrimination).

[17] *Healy v. James*, 408 U.S. 169, 194 (1972) (rejecting denial of recognition to student political group).

constitutional rights of students and Texas law.[18] *United States v. Skrmetti*, 605 U.S. 495, 530 (2025) (Thomas, J., concurring). President Wendler put his own views ahead of those of the students he purports to serve. Although President Wendler is within his rights as an individual to "disapprove" of Spectrum's speech, as a public official, the First Amendment dictates that he should "defend to the death" Spectrum's right to say it. *Mahanoy*, 594 U.S. at 190 (quoting reference omitted).

## CONCLUSION

For the above reasons, FALA respectfully requests that the Court reverse the denial of Appellants' preliminary injunction motion and remand to uphold Appellants' First Amendment rights.

---

[18] Texas law prohibits public universities from denying a student organization "any benefit generally available to other student organizations at the institution on the basis of a political, religious, philosophical, ideological, or academic viewpoint expressed by the organization or any expressive activities of the organization." TEX. EDUC. CODE § 51.9315(g).

Dated: December 1, 2025

Respectfully submitted,

*/s/ Michael J. Lambert*

Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
State Bar No. 24007924
catherine.robb@haynesboone.com
Michael J. Lambert
State Bar No. 24128020
michael.lambert@haynesboone.com
HAYNES BOONE, LLP
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Telephone: (512) 867-8400

***Attorneys for Amicus Curiae First Amendment Lawyers Association***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of December, 2025, a copy of the above document has been served on counsel for all parties to this proceeding through the court's electronic filing system.

Dated: December 1, 2025

/s/ Michael J. Lambert
Michael J. Lambert

**Attorney of record for Amicus Curiae First Amendment Lawyers Association**

13

## <u>CERTIFICATE UNDER ECF FILING STANDARDS</u>

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) any required privacy redactions have been made, <u>5th Cir. R. 25.2.13</u>; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: December 1, 2025

*/s/ Michael J. Lambert*
Michael J. Lambert

***Attorney of record for Amicus Curiae First Amendment Lawyers Association***

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

This Brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7) because it contains 2,494 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 32.2, which is less than 50 percent of that allotted for Plaintiffs/Appellants' Brief.

This Brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and Fifth Circuit Rule 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font for text and footnotes.

Dated: December 1, 2025

/s/ Michael J. Lambert
Michael J. Lambert

**Attorney of record for Amicus Curiae First Amendment Lawyers Association**