## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

SPECTRUM WT,

*Plaintiff-Appellant,*

v.

WALTER WENDLER, *et al.,*

*Defendants-Appellees.*

**SPECTRUM WT'S REPLY TO DEFENDANTS-APPELLEES'
SUPPLEMENTAL EN BANC BRIEF**

On Appeal from the United States District Court for the
Northern District of Texas, Amarillo Division,
Civil Action No. 2:23-CV-48
Hon. Matthew J. Kacsmaryk Presiding

JT Morris
   *Counsel of Record*
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Suite 340
Washington, D.C. 20003
Tel:  (215) 717-3473
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

Adam Steinbaugh
Jeffery D. Zeman
Sara Berinhout
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
510 Walnut St., Suite 900
Philadelphia, PA 19106
Tel:  (215) 717-3473
adam@thefire.org
jeff.zeman@thefire.org
sara.berinhout@thefire.org

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................iii

INTRODUCTION ...................................................................................... 1

   I.   The First Amendment Protects Stage Performances Like Drag Shows, Even if the Message Is Open to Interpretation.........................2

   II.  Defendants Are Engaging in Viewpoint Discrimination.................4

   III.   Restricting Expression in Advance Based on President Wendler's Subjective Views Is a Prior Restraint....................................7

   IV.   Defendants Cannot Avoid Their Policies and Practices That Establish Legacy Hall as a Designated Public Forum. .........................8

   V.  The Public Interest Favors an Injunction.....................................14

CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Bowman v. White*, 444 F.3d 967 (8th Cir. 2006) ........................................ 9

*Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273 (5th Cir. 2003) ............ 7, 8

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661 (2010) ........................................ 5, 10, 13

*City of Dallas v. Stanglin*, 490 U.S. 19 (1989) ........................................ 4

*Cohen v. California*, 403 U.S. 15 (1971) .................................................... 5

*Concerned Women for Am. Inc. v. Lafayette Cnty.*, 883 F.2d 32 (5th Cir. 1989) ...................................................................................................... 9, 10

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) ..................... 11

*Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992) ........... 10

*Healy v. James*, 408 U.S. 169 (1972) ........................................... 2, 10, 12

*Holloman v. Harland,* 370 F.3d 1252 (11th Cir. 2004) ............................ 3

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.,* 515 U.S. 557 (1995) ....................................................................................................... 3, 4

*Justice for All v. Faulkner*, 410 F.3d 760 (5th Cir. 2005) ....................... 11

*Matal v. Tam*, 582 U.S. 218 (2017) ............................................................ 5

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ...................................... 10

*Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819 (1995) .................................................................................................... 5, 10

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006) ............................................................................................................ 3

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) ........... 7, 8

*Spectrum WT v. Wendler*, 151 F.4th 714 (5th Cir. 2025) ..................... 3, 8

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022)....... 1, 12

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) ................. 1, 14

*Spence v. Washington*, 418 U.S. 405 (1974) ............................................ 6

*Texas v. Johnson*, 491 U.S. 397 (1989) .................................................. 3, 6

*United States v. Schwimmer*, 279 U.S. 644 (1929) ................................ 14

*United States v. O'Brien*, 391 U.S. 367 (1968) ........................................ 6

*Whitney v. California*, 274 U.S. 357 (1927) ............................................ 15

*Widmar v. Vincent*, 454 U.S. 263 (1981) .................................... 10, 11, 12

## INTRODUCTION

Defendants' brief confirms their insistence that West Texas A&M University, acting solely through President Walter Wendler's subjective views of what "ideology" offends, can banish a recognized student group's protected expression from a campus public forum based on his speculative "discrimination" and "harassment" concerns. That view mirrors the speech codes that public universities have for years imposed under a banner of preventing harassment and discrimination—and which courts have routinely invalidated as unconstitutional because "loaded terms" like "discriminatory" inevitably invite campus officials to stifle speech based on viewpoint and content. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1125–27 (11th Cir. 2022); *accord Speech First, Inc. v. Fenves*, 979 F.3d 319, 339–40 & n. 17 (5th Cir. 2020) (collecting cases).

Worse still, Defendants' position rests on several legal errors. Their proffered test for when the First Amendment extends to expressive conduct clashes with Supreme Court precedent and would unravel protection for artistic expression. And they skirt the Supreme Court's cases establishing President Wendler is engaging in unconstitutional viewpoint discrimination by banning drag shows because he believes

their "ideology" might offend others. They also disregard precedent that a reservation process cannot transform a designated public forum into a limited one, any more than requiring parade permits in public streets transforms those traditional public forums into limited ones. These First Amendment principles are not lost on Wendler, who conceded when announcing his campus drag show ban that it defies "the law of the land."

It is more clear than ever that Defendants' preferred speech code is a perilous path to viewpoint discrimination and prior restraint at public universities, where First Amendment protections are "nowhere more vital." *Healy v. James*, 408 U.S. 169, 180 (1972). This Court should reverse and remand with instructions to enjoin Defendants' viewpoint- and content-based prior restraint on drag performances.

## I. The First Amendment Protects Stage Performances Like Drag Shows, Even if the Message Is Open to Interpretation.

Defendants do not dispute Spectrum intends to communicate a message of support for the LGBTQ+ community with a campus drag show. Rather, they claim Spectrum has failed to show "a great likelihood" that viewers would understand that message. Defs. Br. 17. Under

Defendants' view, no art, entertainment, parade, or any other expressive conduct open to interpretation would be safe from the censor's pen.

But the test for First Amendment protection for expressive conduct is not so rigid, as the Supreme Court made clear in *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.,* 515 U.S. 557, 569 (1995). The inquiry is whether a viewer would understand the speaker intends to communicate *something*, as the panel majority rightly held. *Spectrum WT v. Wendler*, 151 F.4th 714, 724–25 (5th Cir. 2025); *see also Holloman v. Harland,* 370 F.3d 1252, 1270 (11th Cir. 2004) (holding under *Hurley*, "when determining whether conduct is expressive, we ask whether the reasonable person would interpret it as *some* sort of message, not whether an observer would necessarily infer a specific message.")

While Defendants paint that test as inconsistent with *Texas v. Johnson*, 491 U.S. 397 (1989) (*see* Defs. Br. 20–21), it is not. In fact, the Supreme Court in *FAIR* cited both *Hurley* and *Johnson* with approval in distinguishing inherently expressive conduct. *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 63–64, 66 (2006). At bottom, some conduct, like stage performance, is so inherently expressive that "a

narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley*, 515 U.S. at 569.

Spectrum's drag performance fits that bill. Ticketed attendees would see performers donning costumes and stage names while dancing to curated music on stage in a venue open to a host of expression. ROA.227–33 ¶¶62–73, 81–82, 99–100; ROA.327–34.[1] That is not akin to "recreational dancing." Defs. Br. 18 (citing *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989)). By contrast, any audience member would know Spectrum intends to express a message. Even President Wendler did not need to see Spectrum's show to know students would engage in "artistic expression" conveying an "ideology" (to which he objects). ROA.265–66.

## II. Defendants Are Engaging in Viewpoint Discrimination.

President Wendler has targeted drag performances based on what he considers their "ideology" on "sexuality, femininity, [and] gender": a "demeaning," "mock[ing]," and disrespectful perspective. *Id*. So despite what Defendants argue on appeal, Wendler is drawing a "distinction between groups based on their message or perspective." *See* Defs. Br. 42

---

[1] *See also* ECF 114-2 at 37, Decl. of Barrett Bright, Ex. A to Appellants' Mot. for an Injunction Pending Appeal (describing Spectrum's planned show as "performers will perform lip-sync dance performances on stage in costume.")

(quoting *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 694 (2010) (*CLS*)). That is textbook viewpoint discrimination. *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 831 (1995).

It makes no constitutional difference if Wendler "supported" Spectrum's goodwill toward the LGBTQ+ community. Defs. Br. 42. What matters is that Wendler insists Spectrum can express supportive messages for that community only in ways he alone considers not demeaning or disrespectful. Yet the First Amendment's demand for viewpoint neutrality does not distinguish between polite and disrespectful speech. Instead, "the Constitution leaves matters of taste and style so largely to the individual." *Cohen v. California*, 403 U.S. 15, 25 (1971). Any other rule would give officials "a convenient guise for banning the expression of unpopular views." *Id*. at 26.

Under the First Amendment, President Wendler can no more halt Spectrum from conveying its message of LGBTQ+ support through a drag show he finds disrespectful than may the Trademark Office reject The Slants message of reclaiming racial stereotypes through a band name deemed disparaging. *See Matal v. Tam*, 582 U.S. 218, 228, 243 (2017).

While Defendants try to distinguish *Matal* because it involved pure speech as opposed to expressive conduct (Defs. Br. 43), *Johnson* readily disposes of their argument: "nothing in our precedents suggests that a State may foster its own view of the flag by prohibiting expressive conduct relating to it." 491 U.S. at 415. Just as the Supreme Court rejected arguments that the government could prohibit flag burning to prevent offense, this Court should reject Wendler's argument that he can prohibit drag shows to prevent offense. *Id.* at 408–09.

Defendants' claim that Wendler's ban targets only non-expressive conduct is wrong (Defs. Br. 43), for all the reasons stated above. Nor is the ban "unrelated to the suppression of free expression." *United States v. O'Brien*, 391 U.S. 367, 377 (1968). Rather, it targets a "performance," "artistic expression," and a "slapstick sideshow," because in Wendler's opinion, it "stereotype[s]," "mock[s]," and "demeans." ROA.265–266. By any measure, that viewpoint-based restriction is "directly related to expression in the context of activity." *Johnson*, 491 U.S. at 410 (quoting *Spence v. Washington*, 418 U.S. 405, 414, n. 8 (1974)).

## III. Restricting Expression in Advance Based on President Wendler's Subjective Views Is a Prior Restraint.

President Wendler's confirmation throughout his brief that West Texas A&M's ban on drag shows rests solely on "his judgment" that the performances will be "denigrating" and "demeaning" to women is effectively a confession. Defs. Br. 1, 2, 37. Because that is precisely the "unconstitutional burden[] on speech classified as [a] prior restraint[]" that results from "regulating speech contingent on the will of an official." *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280 (5th Cir. 2003).

This principle is why *Southeastern Promotions, Ltd. v. Conrad* controls. *Compare* 420 U.S. 546, 554–54 (1975) *with* Defs. Br. 45 (attempting to distinguish *Southeastern Promotions* because it involved a municipal theater rather than a public university stage). In that case, local officials imposed an unconstitutional prior restraint by denying a theatre group access to perform in a city-leased theatre based on the officials' view of what was "clean and healthful, and culturally uplifting." *Se. Promotions*, 420 U.S. at 549, 555. So too with Wendler, who is exercising complete authority to exclude expression from a public forum based on his view about what is demeaning and disrespectful. His subjective assessments are anything but the narrow and objective

criteria the government must follow when imposing a prior restraint on public forums. *Id.* at 553.

Nor is there anything "reasonable" about imposing a blanket ban on a genre of protected speech (*see* Defs. Br. 45) in spaces West Texas A&M has opened to student expression. *See Chiu*, 339 F.3d at 283. That is all the more so because Defendants have provided no evidence that a drag performance will disrupt academic functions or endanger campus safety. *See id.* (holding school officials imposed an unconstitutional prior restraint on a public forum, lacking evidence that expression would cause a substantial disruption). Indeed, throughout their brief, Defendants are careful to say only that Spectrum's show "*might* violate its policies or rules." Defs. Br. 33 (emphasis added); *see also id.* at 38, 39, 43. "Might" cannot justify Defendants' prior restraint. Spectrum En Banc Br. 51–53.

## IV. Defendants Cannot Avoid Their Policies and Practices That Establish Legacy Hall as a Designated Public Forum.

Defendants' policies and regular practice of letting both students and the public use Legacy Hall for an unbounded array of expressive activities establish the venue as a designated public forum, where strict scrutiny applies to content-based regulations like a ban on drag shows. Spectrum En Banc Br. 38–41; *see also Spectrum WT*, 151 F.4th at 727–

29. Defendants argue the university's reservation process renders Legacy Hall a limited public forum. Defs. Br. 30–31. But that is wrong. Whether "a group must obtain permission" to "gain access to" the forum does not alter its classification. *Concerned Women for Am. Inc. v. Lafayette Cnty.*, 883 F.2d 32, 33–35 (5th Cir. 1989); *see also Bowman v. White*, 444 F.3d 967, 972–73, 976–79 (8th Cir. 2006) (holding parts of college campus to be designated public forums, despite requiring use permits for non-university entities).

Defendants' description of the university's reservation process proves it is not intended to limit Legacy Hall to certain topics or speakers. Defs. Br. 30. As they concede, the process addresses content-neutral criteria like "logistical details, including the time, date, and audio-visual needs." *Id.* (quoting ROA.231). In fact, the university's Facility Use Request Procedure is silent on content and speakers. ROA.269–270. And as to Spectrum's planned performances, Spectrum, *not the university*, was setting limits on content and speakers. ROA.229–30 ¶¶ 76–79, 81.

True enough, the Facility Use Request Procedure also states the university "reserves the right to cancel an event and immediately remove access to campus if an event violates the policies and regulations of the

Texas A&M University System." ROA.269; Defs. Br. 30. But that does not diminish the policies and consistent practices that establish Legacy Hall as a designated public forum. Spectrum En Banc Br. 39–41. Even if the university "unwittingly" opened Legacy Hall in the past to groups "hav[ing] little to do with" its academic mission, it cannot now deny Spectrum access to Legacy Hall based on the content of its drag performance. *Concerned Women for Am. Inc.*, 883 F.2d at 34.[2]

In effect, Defendants argue that off-the-cuff enforcement of a campus policy or regulation against a particular speaker or content can transform Legacy Hall into a limited public forum. Yet that is exactly the "self-justifying," "circular reasoning" this Court rejected in *Hays County Guardian v. Supple*, 969 F.2d 111, 117 (5th Cir. 1992). Even more, their argument clashes with Supreme Court holdings that strict scrutiny applies when a public university "singles out" speakers from a public forum "because of their points of view." *CLS,* 561 U.S. at 684–85 (citing *Rosenberger*, *Healy*, and *Widmar v. Vincent*, 454 U.S. 263 (1981)); *see also*

---

[2] *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), does not support Defendants excluding Spectrum from a public forum. Defs. Br. 21. *Moody* affirmed the First Amendment right of private social media platforms to exclude content they do not wish to publish. *Moody*, 603 U.S. at 728. Defendants, conversely, are public officials whom the First Amendment constrains, not empowers.

*Justice for All v. Faulkner*, 410 F.3d 760, 766–67 (5th Cir. 2005) (strict scrutiny applies when university excludes speakers who are part of the class to which a campus forum "is made generally available") (citation omitted). And by trying to differentiate Spectrum's drag show from the host of concerts, beauty pageants, and other recent expressive activities in Legacy Hall, Defendants underscore how they are singling out disfavored expression from the public forum. Defs. Br. 33–34.

Defendants' arguments also highlight why they cannot satisfy the strict scrutiny applicable to singling out Spectrum's drag performance from Legacy Hall. *See Widmar*, 454 U.S. at 270. They make lofty appeals to preserving the "educational environment" and the "expertise and experience of school administrators." Defs. Br. 37. But they provide no evidence Spectrum's drag performances would disrupt the educational environment, or that President Wendler has any concrete reason to believe they will violate university harassment policy.[3] *See* Defs. Br. 39.

_____

[3] West Texas A&M policy defines harassment as "expressive conduct that is so severe and pervasive and objectively offensive that it denies or limits a person's ability to participate in or benefit from an educational program or activity." West Texas A&M Policy No. 08.99.99.W1, "Expressive Activity on Campus" (revised June 2024), https://www.wtamu.edu/_files/docs/about/rules-procedures/08-99-99-W1-Expressive-Activity-on-Campus.pdf ("Expressive Activities Policy"); *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999) (recognizing similar limits for Title IX claims).

This lack of "empirical evidence" is fatal to Defendants' efforts to overcome strict scrutiny. *Widmar*, 454 U.S. at 275. Just as the university in *Widmar* could not single out religious expression from a campus forum based on bare concerns over violating the Establishment Clause, *id.*, Wendler cannot single out drag shows from Legacy Hall based on speculation they "might" violate anti-harassment and anti-discrimination laws and policies. *See also Healy*, 408 U.S. at 175, 190 (university president violated the First Amendment by denying a student group recognition based on his non-evidence-based belief that its "philosophy was antithetical to the school's policies"). That rule makes sense. Otherwise, universities could use policies as a pretext to target disfavored views and content. *See Cartwright*, 32 F.4th at 1125.

While Defendants accuse Spectrum of leaning too heavily on the university's Expressive Activities Policy (Defs. Br. 35 n.6), they ignore a key fact: that policy establishes "[f]reedom of speech and assembly" as "central to the mission of institutions of higher education." Expressive Activities Policy, Rule Summary. Defendants cannot cherry-pick parts of university policy they prefer to enforce while ignoring those that cement the First Amendment rights of its students.

And Defendants point to no university policy allowing them to stop student speech in advance based on concerns over harassment. Nor could they. The Student Handbook confirms that university officials may take only "disciplinary or remedial action" against harassment, following the university's review and adjudication process.[4] Affording Spectrum that process *after* the show might comply with that policy and the Constitution. But President Wendler appointing himself as campus speech czar does not.

This case is not about a university "dangling the carrot of subsidy" in the limited public forum that is a recognized student organization program. *CLS*, 561 U.S. at 683. West Texas A&M gave Spectrum that carrot by granting it recognized student organization status. ROA.215 ¶ 10. Rather, this case is about Defendants "wielding the stick of prohibition" against Spectrum, *CLS*, 561 U.S. at 683, denying it access to a public forum open to all registered student organizations because President Wendler disapproves of the content and message of drag

---

[4] West Texas A&M 2025-2026 Student Handbook, 2.18.D-E (2025), https://www.wtamu.edu/_files/docs/student-support/Student%20Conduct%20/ Student%20Handbook_2025-2026%20_.pdf

performances. The Court should stop Defendants from wielding that censorial stick further.

## V. The Public Interest Favors an Injunction.

An injunction will not, as Defendants suggest, "disincline universities" to maintain public forums for expression. Defs. Br. 47. Public universities did not shut down student meeting spaces after *Widmar*, end student publication funding after *Rosenberger*, or close public forums after courts struck down anti-discrimination speech codes at public universities, *see Fenves*, 979 F.3d at 339–40 & n. 17. Those decisions simply upheld the constitutional rules public university officials must follow when they target protected expression in the name of preventing discrimination or meeting similar institutional goals.

Some may recoil at those rules protecting the "minstrel shows featuring students in blackface" and "Nazi plays" Defendants imagine. Defs. Br. 1. Yet those same rules equally—and vitally—protect the freedom to criticize those shows (including through performance), to urge others not to go, and to persuade them to protest instead. No doubt, "protecting the freedom to express the thought that we hate" is hard. *See United States v. Schwimmer*, 279 U.S. 644, 654–655 (1929) (Holmes, J.,

dissenting). But as the Founders understood, censorship is the wrong path toward confronting fear. Instead, they concluded "the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil counsels is good ones." *Whitney v. California*, 274 U.S. 357, 375 (1927) (Brandeis, J., concurring). That principle has played a crucial role in ending segregation, advancing religious liberty, and securing women's rights, both on and off campus.

No matter one's personal views on Spectrum's drag performance, it has a First Amendment right to take the Legacy Hall stage, and others have the same freedom to disagree with Spectrum's show. In no case does the Constitution permit Defendants to silence either side. The Court should reaffirm that fundamental principle here.

## CONCLUSION

For these reasons, and those Spectrum provided in its principal en banc brief, the Court should reverse and remand.

Dated: January 2, 2026                    Respectfully,

/s/ JT Morris
JT Morris
Conor T. Fitzpatrick
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE, Ste. 340
Washington, D.C. 20003
Tel: (215) 717-3473
jt.morris@thefire.org
conor.fitzpatrick@thefire.org

Adam Steinbaugh
Jeffrey D. Zeman
Sara Berinhout
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
510 Walnut St., Suite 900
Philadelphia, PA 19106
Tel:  (215) 717-3473
adam@thefire.org
jeff.zeman@thefire.org
sara.berinhout@thefire.org

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

This certifies that on January 2, 2026, in compliance with Rules 25(b) and (c) of the Federal Rules of Appellate Procedure, the undersigned served the foregoing via the Court's ECF filing system on all registered counsel of record.

/s/ JT Morris
JT Morris
Attorney for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. App. P. 32(a)(7)(B) because this brief contains 2,951 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Local Rule 32.2.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Local Rule 32.1 and the type style requirements of proportionally spaced typeface using 14-point Century Schoolbook font for text and 12-point Century Schoolbook font for footnotes.

Dated: January 2, 2026

<u>/s/ JT Morris</u>
JT Morris
Attorney for Plaintiff-Appellant